UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -  x

LOCAL 2507, UNIFORMED EMTs, PARAMEDICS & :
FIRE INSPECTORS, Individually and on behalf of its :
current and former members; LOCAL 3621, EMS :
OFFICERS UNION, Individually and on behalf of its : **CLASS ACTION**
current and former members; NYC EMS SUPERIOR : **COMPLAINT**
OFFICERS ASSOCIATION, Individually and on behalf :
of its current and former members; TONYA BOYD, :
CHRISTELL CADET, MARK CARRASQUILLO, : Case No. _____
LIZETTE CLARO, BEVERLY COBB, ALI COUTARD, :
SENCIA DATILUS, LAITRICE EDWARDS, ALICIA :
ELKADI, RONALD FLOYD, KAHLIA GRAHAM, : JURY DEMAND
RICHARD GUZMAN, MAGGIE HOPE, JASMIN : ON ALL COUNTS
HOWARD,    ANGELA    JONES,    RAVIVARMAN :
KAILAYANATHAN,    MELANIE    MORENO-
KETCHUM, JENELLE PIERRE, SIMONE QUASHIE,
JASON   SAFFON,   ALLISON   SHAUGHNESSY,
LAURA   TORRES,   ANDRE   VALDEZ,   LANCE
WINFIELD,    RONALD    WOLFE,    MARYLOU
AURRICHIO on behalf of themselves and all other
similarly-situated individuals,

                              Plaintiffs,

        -against-

CITY OF NEW YORK on behalf of the Fire Department
of the City of New York,

                              Defendant.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -   X


Plaintiffs, by their attorneys, The Kurland Group, having offices at 85 Broad St., 28th Floor,

New York, NY 10004, complaining of the Defendant, allege as follows:

## NATURE OF ACTION

1.    LOCAL 2507, UNIFORMED EMTs, PARAMEDICS & FIRE INSPECTORS,

Individually and on behalf of its current and former members; LOCAL 3621, EMS

OFFICERS UNION, Individually and on behalf of its current and former members; NYC

EMS SUPERIOR OFFICERS ASSOCIATION, Individually and on behalf of its current and former members; TONYA BOYD; CHRISTELL CADET, MARK CARRASQUILLO,  LIZETTE CLARO, BEVERLY COBB, ALI COUTARD, SENCIA DATILUS, LAITRICE EDWARDS, ALICIA ELKADI, RONALD FLOYD, KAHLIA GRAHAM, RICHARD GUZMAN, MAGGIE HOPE, JASMIN HOWARD, ANGELA JONES, RAVIVARMAN KAILAYANATHAN, MELANIE MORENO-KETCHUM, JENELLE PIERRE, SIMONE QUASHIE, JASON SAFFON, ALLISON SHAUGHNESSY, LAURA TORRES, ANDRE VALDEZ, LANCE WINFIELD, RONALD WOLFE, and MARYLOU AURRICHIO; on behalf of themselves and all other similarly-situated individuals (collectively, the "Named Plaintiffs" or "Plaintiffs") bring this action against Defendant City of New York ("City" or "Defendant") on behalf of its agency, the Fire Department of the New York City ("FDNY"), to secure injunctive and monetary relief from discrimination on the basis of sex, gender, and/or race.

2. Plaintiffs allege that Defendant, through their acts and omissions and the acts and omissions of their agency the FDNY, caused discriminatory treatment and impact against them and members of the class they represent by engaging in discriminatory employment practices including but not limited to discriminatory pay practices, suppression of wages, and denial of employment opportunities in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), as amended, 42 U.S.C. § 2000, *et seq.*, the New York State Human Rights Law ("NYSHRL"), New York Executive Law §§ 290, *et seq.*, the New York City Human Rights Law ("NYCHRL"), Administrative Code of the City of New York §§ 8-101, *et seq.*, and Civil Rights Act of 1871, 42 U.S.C. §1983, *et seq.* ("§1983").

## JURISDICTION AND VENUE

3. This Court has subject matter jurisdiction over Plaintiffs' federal claims pursuant to 42 U.S.C. §2000, 28 U.S.C. §1331, 42 U.S.C. §206, and 42 U.S.C. §1983.

4. This Court may exercise supplemental jurisdiction over Plaintiffs' remaining state and local law claims pursuant to 28 U.S.C. §1367.

5. Venue is proper in this District pursuant to 28 U.S.C. §1391(b)(1)(2), as Defendant's principal place of business is in this District and the events giving rise to Plaintiffs' claims occurred in this District.

## JURY DEMAND

6. Plaintiffs demand a trial by jury in this action on each and every one of their claims.

## PLAINTIFFS

7. Plaintiff LOCAL 2507, UNIFORMED EMTs, PARAMEDICS & FIRE INSPECTORS ("Local 2507") represents approximately 4,000 current and former members of the Emergency Medical Services Bureau of the FDNY ("EMS") holding the ranks of Emergency Medical Technician ("EMT") and Paramedic with offices at 150-39 14th Avenue, 2nd Floor, Whitestone, NY 11357.

8. Plaintiff LOCAL 3621, EMS OFFICERS UNION ("Local 3621") represents approximately 500 current and former members of EMS holding the ranks of Lieutenant and Captain with offices at 125 Barclay Street, Suite 743, New York, NY 10007.

9. Plaintiff NYC EMS SUPERIOR OFFICERS ASSOCIATION ("SOA") represents approximately 50 current and former members of EMS holding the ranks of Deputy Chief and Division Chief/Division Commander.

10. Plaintiff Tonya Boyd (Badge No. 9997) is an African-American woman who has been employed by the FDNY since 1997. She began as an EMT. In 2005, she was promoted to Paramedic. In 2007 she was promoted to Lieutenant. In 2011 she was promoted to Captain, and in 2017 she was promoted to Deputy Chief. She was promoted to and has been serving as a Division Commander since May 2022.

11. Plaintiff Christell Cadet (Badge No. 4330) is an African-American woman who has been employed by the FDNY since 2012. She started as an EMT and was promoted to and has been employed as a Paramedic since 2014.

12. Plaintiff Mark Carrasquillo (Badge No. 1121) is Hispanic and he has been employed by the FDNY as an EMT since October 2018.

13. Plaintiff Lizette Claro (Badge No. 9825) is a Latina woman who has been employed by the City since 1989 prior to the merger of EMS into the FDNY. She began as an EMT. In 1995, she was promoted to Lieutenant, and was promoted and has been serving as a Captain since March 2006. She has submitted her request to retire effective February 2, 2023.

14. Plaintiff Beverly Cobb (Badge No. 9805) is an African-American woman who has been employed by the FDNY since 1997. She started as an EMT. In 1999, she was promoted to Paramedic. In 2013 she was promoted to Lieutenant and was promoted and has been serving as a Captain since May 2020.

15. Plaintiff Ali Coutard (Badge No. 4778) is Black and Multi-Racial and has been employed by the FDNY as a Paramedic since 2014.

16. Plaintiff Sencia Datilus (Badge No. 4169) is an African-American woman who has been employed by the FDNY since 2012. She started as an EMT and was promoted and has been serving as a Paramedic since 2016.

17. Plaintiff Laitrice Edwards (Badge No. 9905) is an African-American woman who has been employed by the FDNY since 2006. She began as an EMT. In 2013, she was promoted to Paramedic. In 2014 she was promoted to Lieutenant and to Captain in 2019. She was promoted to and has been serving as a Deputy Chief since June of 2021.

18. Plaintiff Alicia Elkadi (Badge No. 0609) is a woman of color who has been employed by the FDNY since 2006. She began as an EMT and in 2010 she was promoted to Paramedic. She was promoted to and has been serving as a Lieutenant since June of 2019.

19. Plaintiff Ronald Floyd (Badge No. 9812) is African-American and has been employed by the City of New York since 1993. He began as an EMT prior to the merger of EMS into FDNY. In 2011, he was promoted to Lieutenant, and was promoted and has been serving as a Captain since May 2020.

20. Plaintiff Kahlia Graham (Badge No. 9979) is an African-American woman who has been employed by the FDNY since 2006. She began as an EMT. In 2008, she was promoted to Paramedic. She was then promoted to Lieutenant in 2015 and Captain in 2020. She was promoted to and has been serving as a Deputy Chief since May 2022.

21. Plaintiff Richard Guzman (Badge No. 4879) is Hispanic and he was employed by the FDNY as a Paramedic from 2010 until March 2022.

22. Plaintiff Maggie Hope (Badge No. 3511) is a woman who has been employed by the FDNY as an EMT since February 2020.

23. Plaintiff Jasmin Howard (Badge No. 0301) is an African-American woman who has been employed by the FDNY since 2009. She began as a Paramedic and was promoted to and has been serving as a Lieutenant since January 2019.

24. Plaintiff Angela Jones (Badge No. 0332) is an African-American woman who was

employed by the City of New York since 1990.  She began as an EMT before the EMS merger into the FDNY.  In 2000 she was promoted to Paramedic and in 2010 was promoted to Lieutenant.  She retired on April 30, 2021.

25.   Plaintiff Ravivarman Kailayanathan (Badge No. 0153) is Southeast Asian and he has been employed by the FDNY since 2013.  He began as a Paramedic and was promoted to and has been serving as a Lieutenant since September 2022.

26.   Plaintiff Melanie Moreno-Ketchum (Badge No. 0190) is an Hispanic woman who has been employed by the FDNY since 2013.  She began as a Paramedic and was promoted to and has been employed as a Lieutenant since September 2022.

27.   Plaintiff Jenelle Pierre (Badge No. 0390) is an African-American woman who has been employed by the FDNY since 2001.  She began as an EMT.  In 2007, she was promoted to Paramedic and was promoted to and has been serving as a Lieutenant since June 2016.

28.   Plaintiff Simone Quashie (Badge No. 1343) is an African-American woman who has been employed by the FDNY since 2005.  She began as an EMT and was promoted to and has been serving as a Paramedic since August 2022.

29.   Plaintiff Jason Saffon (Badge No. 9851) is African-American he has been employed by the FDNY since 1996.  He began as an EMT.  In 2005, he was promoted to Paramedic and then in 2010 to Lieutenant.  He was promoted to and has been serving as a Captain since September 2015.

30.   Plaintiff Allison Shaughnessy (Badge No. 0632) is a woman who has been employed by the FDNY since 2013.  She began as an EMT.  In 2016, she was promoted to Paramedic and was promoted to and has been serving as a Lieutenant since June 2019.

31.   Plaintiff Laura Torres (Badge No. 0364) is a Latina woman who has been employed by the FDNY since 2006. She began as an EMT and was promoted to and has been serving as a Lieutenant since December 2016.

32.   Plaintiff Andre Valdez (Badge No. 9905) is Hispanic and was employed by the FDNY since 1996.  He began as an EMT.  In 2002, he was promoted to Paramedic.  He was then promoted to Lieutenant in 2007 and to Captain in 2013.  He was promoted to Deputy Chief in 2017 and retired in September 2021.

33.   Plaintiff Lance Winfield (Badge No. 5204) is African-American and was employed by the City of New York as an EMT since 1994, before the EMS merger into the FDNY.  He retired on April 13, 2022.

34.   Plaintiff Ronald Wolfe (Badge No. 4407) is African-American and has been employed by the FDNY since 2013.  He began as an EMT and was promoted to and has been serving as a Paramedic since 2019.

35.   Plaintiff Marylou Aurrichio (Badge No. 9930) is a woman and was employed by the City of New York since 1984, before the EMS merger into the FDNY. She began as an EMT. In 1987, she was promoted to Lieutenant.  She was then promoted to Captain, and also became a Paramedic, in 1997.  She was promoted to Deputy Chief in 2002, and then Division Chief in 2009, and retired in September 2022.

## DEFENDANT

36.   Defendant City of New York is a municipality duly incorporated under the laws of the State of New York and maintains its principal place of business at 260 Broadway, New York, New York 10007.  The City has at all times relevant to this action been an employer within the definition of Title VII, NYSHRL, and NYCHRL.

37.  The FDNY is an agency of the City which is charged with the duty to make decisions on behalf of the City regarding the compensation, benefits, and work conditions of FDNY EMS and Fire First Responders.

## PROCEDURAL BACKGROUND

38.  On September 4, 2019, Plaintiffs filed Charges of Discrimination individually and on behalf of their members and similarly-situated individuals with the United States Equal Employment Opportunity Commission ("EEOC"), alleging violations by their employer, Defendant herein, of federal, state, and local law, including but not limited to Title VII, NYSHRL, and NYCHRL.  Plaintiffs' EEOC Charge is annexed hereto as **Exhibit A** and incorporated by reference herein.

39.  On or around December 22, 2021, the EEOC issued a Determination on the merits of Plaintiffs' Charges, attached hereto as **Exhibit B** and incorporated by reference herein, finding cause to believe that Defendant "discriminated against current and former First Responders of the FDNY's EMS, including EMTs, Paramedics, Lieutenants, Captains, Deputy Chiefs, and Division Chiefs/Commanders, based on race and sex, from at least November 8, 2018 to the present with respect to pay, benefits, and terms and conditions of employment." (**Exhibit B**).

40.  In addition, the EEOC's "investigation showed that workloads, working conditions, training, and risks to EMS First Responders and Firefighters are comparable, with a substantial degree of overlapping duties, especially with respect to medical emergencies. The evidence further shows the two groups have comparable accountability and responsibility." (**Exhibit B**).

41.  The EEOC further found that "Evidence shows that, in 2001, the New York City Council,

the City's legislative body, passed Local Law 19, asserting that EMS First Responders are uniformed personnel, the same as Firefighters.  The record further shows that on May 28, 2020, the City Council passed Resolution 1062 calling for EMS compensation to be comparable with that of Firefighters.  The record shows that [Defendant has] failed to comply with either." (**Exhibit B**).

42. Further, the EEOC's "investigation shows that any difference in duties between the EMS First Responders and Firefighters fails to explain the pronounced gap in wages and benefits, and [Defendant has] failed to adjust the pay scales of EMS First Responders to keep pace with the changes to their duties since the City merged EMS with the Fire Department in 1996." Id.

43. The EEOC's "investigation further determined that [Defendant has] improperly treated and compensated EMS First Responders as civilians, when they are uniformed personnel." Id.

44. Lastly, the EEOC's "[a]nalysis show that there is a statistically significant difference in the demographic makeup between EMS First Responders and Firefighters within the FDNY that results in a disparate impact" based on race and gender.  Id.

45. On or about June 7, 2022, the EEOC "determined that efforts to conciliate [Plaintiffs'] charges as required by…Title VII have been unsuccessful…[and] further conciliation efforts would be futile or non-productive." (**Exhibit C**).  As such, the EEOC "forward[ed] the cases to the Department of Justice." Id.

46. On October 11, 2022, Plaintiffs requested the issuance of a Notice of Right to Sue by the U.S. Department of Justice.

47. On or about November 1, 2022, the U.S. Department of Justice issued a Notice of Right to Sue to Plaintiffs, annexed hereto as **Exhibit D**.

48.  Any and all other prerequisites to the filing of this suit have been met.

## **FACTUAL BACKGROUND**

49.  In 1996, then-Mayor Rudolph Giuliani signed an Executive Order transferring ambulance and pre-hospital Emergency Medical Service ("EMS") functions from New York City Health and Hospitals Corporation to the FDNY to create an integrated municipal agency of first responders to handle New York City's evolving and challenging public safety demands.[1]  Since this merger, the FDNY has functioned as an integrated Department maintaining two Bureaus of first responders —EMS, and Fire.  These Bureaus work collaboratively to respond to emergency calls dispatched through the City's 911 system to perform emergency and lifesaving services to the public.

50.  With the decline in structural fires and the rise of mass casualty events like September 11, 2001 and the COVID-19 pandemic, the City of New York's public safety demands have continued to evolve such that today the EMS First Responders and Firefighters of the FDNY provide an interrelated web of highly advanced emergency services that address the complex public safety and mass casualty concerns of the 21st century to protect property and lives throughout the City of New York.  This includes infectious diseases, environmental catastrophes, and terrorist attacks.

51.  These first responders of the FDNY, irrespective of what Bureau they are stationed in (hereinafter referred to as "First Responders"), have the same duties and mission, which is as follows:

---

[1]  *See* Executive Order No. 27 dated February 26, 1996, *available online at* https://www1.nyc.gov/assets/records/pdf/executive_orders/1996EO027.PDF (last visited December 6, 2022).

> As first responders to fires, public safety and medical emergencies, disasters and terrorist acts, FDNY protects the lives and property of New York City residents and visitors. The Department advances public safety through its fire prevention, investigation and education programs. The timely delivery of these services enables the FDNY to make significant contributions to the safety of New York City and homeland security efforts.[2]

52. As such, the common core of the work of EMS First Responders and Fire First Responders is the same—rapidly respond to emergencies to save lives. EMS First Responders and Fire First Responders regularly encounter the same working conditions and in fact respond to the same emergencies. The majority of the emergencies Firefighters respond to today are medical. In addition, EMS First Responders respond to and provide emergency services at major building fires. (*See* **Exhibit E,** Photos published by the FDNY, in which the First Responders wearing beige coats are all EMS First Responders working shoulder-to-shoulder with Fire First Responders to respond to structural fires).

53. The jobs of all First Responders are substantially equal in the required skill, effort, responsibility, and working conditions, regardless of whether a First Responder is employed on the EMS side or the Fire side of the FDNY (*See* **Exhibit F**, Reports of Dr. Brian Maguire; **Exhibit G,** Declaration of Michael Greco; **Exhibit H,** Declaration of Tonya Boyd; and **Exhibit I** Declaration of Anthony Sanchez each attached and incorporated herein by reference). In fact, according to the testimony of Michael Greco (**Exhibit G**) EMS First Responders are required to undergo more training and have higher requirements regarding skill and responsibility.

54. Yet, while these two groups of First Responders are similarly situated in all material respects, there are significant differences in the demographic make-up of the two Bureaus.

---

[2] FDNY Mission and Values, *available online at* https://www1.nyc.gov/site/fdny/about/overview/mission-and-values/mission.page (last visited December 6, 2022).

Corresponding to this is an equally significant disparity in the compensation, benefits, and terms and conditions of employment provided by the FDNY to the EMS First Responders in comparison to that of Fire First Responders.[3]

55.   The Fire side of the FDNY is almost exclusively male and overwhelmingly white while the EMS side of the FDNY is predominately non-white and has a significantly larger percentage of women.  In fact, almost all women who apply and are hired to work for the FDNY ultimately end up on the EMS side of the Department, as do the majority of people of color, even if that is not their initial intention.

56.   Upon information and belief, EMS First Responders are at least 55% non-white and approximately 24% female, while only 87 out of approximately 9,500 Fire First Responders in the FDNY are women, totaling less than 1% of the workforce.[4]  Only 14% of Fire First Responders are non-white.[5]

57.   While the demographics and pay are substantially different between the two groups of FDNY First Responders, the required skill, effort and responsibilities are not.

---

[3] The Fire Commissioner at the time of the FDNY-EMS merger, Tom Von Essen, recently explained that he "remains stunned…that Emergency Medical Technicians remain so poorly paid compared to Firefighters." (**Exhibit J**).  In fact, Commissioner Von Essen explained that he "was willing to have Firefighters assist on medical calls…[because] he was convinced that having engine companies respond to medical emergencies would insulate the department [from the need to cut firefighters] if the downward trend in building fires continued." Id.  He feels that the "only people who haven't benefited as much as they should have [from the merger] are the EMTs and paramedics from EMS." Id. Commissioner Von Essen also explained that the "firefighting side of the department also benefited from the EMS consolidation resulting in a special promotion exam for EMTs to gain hiring priority for Firefighter jobs, since this has led to a significant boost in the number of people of color in a force" that is still predominantly white. Id. However, "that lateral transfer has made it increasingly difficult for EMS to attract and retain quality personnel, since a gap of roughly $35,000 in maximum salary between EMTs and Firefighters leads to an average of 300 EMTs a year moving into Firefighter jobs." Id. Ultimately, Commissioner Von Essen admits EMS is "still second-class citizens in the department after 25 years," and this must be remedied.  Id.

[4] FDNY Graduates Nearly 300 New Firefighter, Including Most Women in Decades, *CBSNewYork*, October 19, 2018, *available online at* https://newyork.cbslocal.com/2018/10/19/fdny-graduates-most-female-firefighters/ (last visited December 6, 2022).

[5] New York City Women, Firefighters of Color Continue Decades-Long Battle to Integrate the FDNY, *In These Times*, August 31, 2015, *available online at* http://inthesetimes.com/working/entry/18355/fdny-diversity-de-blasio-vulcan-society-lawsuit (last visited December 6, 2022).

58.  Both EMS and Fire First Responders undergo substantial training, and even attend joint trainings taught by both EMS instructors and Fire instructors.

59.  While EMS and Fire First Responders respond to fires, the most regularly encountered calls for all FDNY First Responders, are medical emergencies.  By way of example, in 2020, Firefighters responded to 560,474 calls, of which at least 273,800 were medical calls ("CFRD Incidents") and only 2,252 were confirmed fires.  In other words, it is more than a hundred times more common for a Firefighter to respond to an emergency call to provide medical services than it is for them to respond to an emergency call for fire suppression. (*see* **Exhibit G**, Greco Declaration, Ex. B).

60.  Indeed, the FDNY is a fully integrated Department whose members respond together to emergencies and the emergencies they regularly encounter are medical emergencies.  As Anthony Sanchez demonstrates in his Declaration which is attached here as **Exhibit I** and incorporated herein by reference, fire response is a tiny fraction of Firefighters' work.  He states that "in almost 5 years as a Firefighter in one of the busiest fire houses I have responded to thousands of medical calls, I have responded to hundreds of fire calls of which only approximately 50 to 60 of those were actually confirmed working fires." (*see* **Exhibit I, ¶**14).

61.  The work of all First Responders is supervised by the same Department (*see* **Exhibit K**, FDNY Organizational Chart) following the same reporting structure in the field (*see* **Exhibit L**, FDNY Incident Command System).

62.  First Responders on both EMS and Fire side also have similar responsibilities and the work of EMS requires at least similar effort as that of Fire (*see* **Exhibit F**, Reports of Dr. Brian Maguire).

63. While most of the calls First Responders respond to are for medical assistance, EMS First Responders do not just respond to medical emergencies but they also respond to fire emergencies.[6]

64. The field work performed by EMS First Responders is similarly situated in all material respects to the field work performed by Fire First Responders (**Exhibit F**).  In addition, First Responders who work internally in the Department to support field work such as operations, training, recruitment, and dispatch have the same responsibilities.  This operational work done in FDNY Headquarters by uniform First Responders is fully integrated with both EMS and Fire First Responders assigned to the same units and same job duties.  In fact, in many cases the job duties of First Responders in these units are identical regardless of which Bureau they are from.

65. Today's FDNY must handle a myriad of emergency needs through an integrated response by FDNY First Responders, both EMS and Fire.

66. EMS First Responders work in the same conditions and perform at least as rigorous work and require at least as much training and effort, with at least as much regular hazards, if not more than, Fire First Responders.[7]

---

[6] By way of example, Hazmat-certified EMS First Responders enter hazardous material environments, which include burning buildings.  Firefighters are required to complete medical training to become Certified First Responders ("CFR").  In fact, as explained *infra*, Firefighters respond to significantly more medical emergencies than fire emergencies.  Also, EMS First Responders respond to high risk non-medical emergencies where medical care may be needed such as active shooters, bomb threats, terrorist attacks, and mass casualty events.  The FDNY is one Department that provides an integrated emergency response.

[7] "FDNY EMS lieutenant fatally stabbed outside station in Queens: 'She was Working for this city – she paid the ultimate sacrifice,' says Mayor Adams," *available online at*, https://www.nydailynews.com/new-york/nyc-crime/ny-fdny-ems-lieutenant-fatally-stabbed-astoria-queens-20220929-2vpwdib5dbhcjc32a7rwo7zumu-story.html, (Last visited on December 6, 2022); "Police: 2 EMS Workers lured to fake 911 call, robbed at gunpoint," *available online at*, https://bronx.news12.com/police-ems-workers-lured-to-fake-call-robbed-at-gunpoint, (Last visited on December 6, 2022); "City is denying 9/11 first responders disability pensions," *available online at*, https://nypost.com/2017/10/02/city-is-denying-911-first-responders-disability-pensions/, (Last visited on December 6, 2022); "COVID-19 fatalities among EMS clinicians," *available online at*, https://www.ems1.com/ems-products/personal-protective-equipment-

67.   Yet it is Defendant's policy and practice to compensate the EMS First Responders substantially less than their almost exclusively male and overwhelmingly white counterparts on the Fire side of the FDNY.

68.   There is no legitimate reason the FDNY employs such disparate pay practice with its uniformed First Responders.  Nor is there any legitimate reason to deny Plaintiffs the rights afforded to them as uniformed servicemembers.  Defendant's unequal pay policies within the FDNY disparately impact and/or disparately treat the members of EMS because of their sex, gender, and race by paying them significantly less for performing the same or substantially the same work within the same Department under the same management,

ppe/articles/covid-19-fatalities-among-ems-clinicians-BMzHbuegIn1xNLrP/, (Last visited on December 6, 2022); "Medical first responders say they're underpaid and overworked. Will anything change?," *available online at*, https://www.nbcnews.com/news/us-news/medical-first-responders-say-they-re-underpaid-overworked-will-anything-n1101926, (Last visited on December 6, 2022); "Almost Out, Nigro Talks of EMS Pay, Diversity, Virus's Lingering Effects," *available online at*, https://thechiefleader.com/stories/almost-out-nigro-talks-of-ems-pay-diversity-viruss-lingering-effects,43302, (Last visited on December 6, 2022); "Are FDNY EMS Assault Stats Just the Tip of the Iceberg?," *available online at*, https://www.laborpress.org/are-fdny-ems-assault-stats-just-the-tip-of-the-iceberg/, (Last visited on December 6, 2022); "NYC EMT Dies from COVID-19, 27-year veteran is FDNY's 12th virus fatality," *available online at*, https://abc7ny.com/fdny-emt-dies-covid-nyc-coronavirus-updates/9005170/, (Last visited on December 6, 2022); "NYC paramedic hospitalized with coronavirus sedated, breathing with ventilator as condition worsens, family says," *available online at*, https://www.nydailynews.com/coronavirus/ny-coronavirus-fdny-paramedic-young-virus-20200324-74tadm2skjb7zeuwb2xhwvtfoi-story.html, (Last visited on December 6, 2022); "Occupational Fatalities Among EMS Clinicians and Firefighters in the New York City Fire Department; January to August 2020," *available online at*, https://www.jems.com/coronavirus/occupational-fatalities-among-ems-clinicians-and-firefighters/, (Last visited on December 6, 2022); "Emergency Medical Workers Deserve Pay Equity," *available online at*, https://www.nytimes.com/2019/09/21/opinion/sunday/emt-paramedics-salary.html, (Last visited on December 6, 2022); "Pay EMTs what they deserve: End the indefensible disparities between these and other first responders," *available online at*, https://www.nydailynews.com/opinion/ny-oped-pay-emts-what-they-deserve-20200222-lawhpxyjmvek3ke4ricyb4ymy-story.html, (Last visited on December 6, 2022); "NYC coronavirus pandemic 'not the time' to raise pay for EMTs and paramedics: Mayor de Blasio," *available online at*, https://www.nydailynews.com/coronavirus/ny-coronavirus-pay-raise-emts-paramedics-fdny-ems-20200403-3lqgfio3rfg2xa2o6mqpanzi6e-story.html, (Last visited on December 6, 2022); "Paramedics and EMTs Under Staggering Stress in Era of Disease and Disruption," *available online at*, https://www.thecity.nyc/2020/7/28/21345899/paramedics-and-emts-under-staggering-stress, (Last visited on December 6, 2022); "Brutal Bite Attack Leaves Paramedic Reconsidering Her Future in the Job," *available online at*, https://thechiefleader.com/stories/brutal-bite-attack-leaves-paramedic-reconsidering-her-future-in-the-job,1988, (Last visited on December 6, 2022); "Late FDNY EMT Yadira Arroyo's uncle, union leaders call for fair pay for first responders," *available online at*, https://www.nydailynews.com/news/politics/ny-ems-fdny-city-council-hearing-20200128-vwc6bvdirjdo5il3ncgrv5sbya-story.html, (Last visited on December 6, 2022).

supervision, and regulation of the same high-ranking City officials.

69. As the City continues to struggle to manage the unprecedented public health crisis of the COVID-19 pandemic and other significant public health concerns related to infectious diseases and public safety concerns, the significant risks inherent in the work of EMS First Responders is undeniable.

## DISCRIMINATORY PAY POLICIES AND PRACTICES

70. Defendant has perpetuated policies and practices in which members of EMS are paid substantially less for performing work that is substantially equal in its skill effort responsibility and working condition compared to personnel on the Fire side of the FDNY. Plaintiffs allege that these disparities are caused by the differences in sex, gender, and race between EMS First Responders and Fire First Responders and adversely impact EMS First Responders.

71. By way of example, an entry-level Emergency Medical Technician ("EMT") first hired in EMS is paid a base salary of $39,386[8] and after 5 years is paid $59,534 in base salary.[9] Conversely, an entry-level Fire side First Responder first hired on the Fire side of FDNY is paid a base salary of $43,904 and after 5 years earns $85,292 in base salary.[10]

72. This policy and/or practice of pay disparity in the FDNY is centralized and pervasive in

---

[8] The base salaries used in the instant complaint are the most recent snapshots available from the City of New York's Open Data, last published in October 2022 with data from April of 2022. *See* NYC Open Data, Citywide Payroll Data, *available online at* https://data.cityofnewyork.us/City-Government/Citywide-Payroll-Data-Fiscal-Year-/k397-673e (last visited December 6, 2022). Upon information and belief, the salaries for both EMS and Fire First Responders have increased since then. While these salary amounts change and increase over time for both EMS and their corresponding Fire comparators, the pay gap remains constant, and in some cases has even increased. Fire also receives additional compensation like differentials and additions to pay that further increase this pay gap.

[9] *See* EMS: Get Hired, *available online at* https://www.joinfdny.com/careers/ems/ (last visited December 6, 2022).

[10] *See* Firefighter: Get Hired, *available online at* https://www.joinfdny.com/careers/firefighter/ (last visited December 6, 2022).

the FDNY—existing in all ranks of the FDNY from these entry-level positions up to the highest ranks of officers in the FDNY, in which EMS First Responders are paid substantially less than comparable Fire First Responders (*See* **Exhibit M,** p. 10).

73. By way of further example, an EMS officer such as a Division Chief/Commander who is responsible for overseeing all the EMS stations within a borough, responding to mass casualty incidents, and addressing unusual incidents, is currently paid a base salary of $135,053 while her counterpart on the Fire side, who performs substantially equal work in skill, effort, responsibility, and working conditions, is paid a base salary of $235,000.

74. In 2019, EMS responded to 563,920 life-threatening calls and 967,950 non-life-threatening calls,[11] which together account for "more than 80% of the City's emergency call volume," yet "EMS receives approximately 16 percent of FDNY's total budget." *See* **Exhibit O**, *Briefing Paper and Committee Report of the Governmental Affairs Division* to the New York City Council, p. 4, Jan. 28, 2020.

75. Upon information and belief after factoring in other compensation like differentials and additions to pay, the pay gap between EMS and Fire is even more pronounced.

76. Furthermore, the dangers EMS personnel face in the line of duty are substantially equal to those faced by other first responders, as Chair of the New York City Council Committee on Fire and Emergency Management Joseph C. Borelli ("Chairperson Borelli") has recognized:

> They are shot at, they're assaulted, they even rush into burning buildings and as the EMT family of Yadira Arroyo will tell you today they die in the line of duty yet the City has taken the position that their work is different compared to their fellow first responders at police and fire and it pays

---

[11] *Oversight – EMS Attrition*, T2020-5592, Committee on Fire and Emergency Management, New York City Council, p. 9, Jan. 28, 2020 (**Exhibit N**).

> them 8,000 dollars less in starting base salary and tens of
> thousands of dollars less after five years of service.

**Exhibit N**, *Oversight – EMS Attrition*, T2020-5592. Committee on Fire and Emergency

Management, New York City Council, p. 6, Jan. 28, 2020.

77.    Since then, these responsibilities have only increased.  By way of example starting this

year FDNY EMS First Responders will be assigned the responsibilities formerly assigned

to members of the New York Police Department to provide a response and care to patients

in need of acute mental health care.

78.    Chairperson Borelli has also noted that "[t]he diversity of the department still lags behind

other uniform agencies and the makeup of the city as a whole.  EMS workers notably earn

far less than other first responders while also handling an increasingly larger volume call

[sic]." **Exhibit P**, *New York City Council Budget and Oversight Hearings on The*

*Preliminary Capital Budget for Fiscal Year 2021-2024*, Committee on Fire and Emergency

Management, New York City Council, p. 4, Mar. 3, 2020.

79.    Notably, the FDNY itself has admitted this problem, stating:

> EMS staff are the lowest paid first responders in NYC. . . .
> FDNY's Emergency Medical Technicians (EMTs) and
> Paramedics earn less than their counterparts in many other
> U.S. cities do.  Furthermore, FDNY EMS salaries are
> significantly lower than firefighter salaries.

**Exhibit Q,** *Report of the Finance Division on the Fiscal 2021 Preliminary Plan and the*

*Fiscal 2020 Preliminary Mayor's Management Report for the Fire Department of New*

*York* to the New York City Council, p. 8, Mar. 3, 2020.

80.    When asked by Council Member Justin Brannan about the difference in pay and the

difficulty of EMS work, the current Chief of EMS, Lillian Bonsignore, acknowledged that

EMS work is extremely difficult and EMS personnel should be paid more, stating that "it

has not been a secret that we…think they should be paid appropriately for the job that they do, they save lives for a living." **Exhibit N**, *Oversight – EMS Attrition*, T2020-5592. Committee on Fire and Emergency Management, New York City Council, p. 62, Jan. 28, 2020.

81. And when asked by Council Member Adrienne Adams his feelings on equal pay for EMS, the Deputy Commissioner for Budget and Finance of the FDNY, Stephen Rush, admitted that "EMS deserves additional compensation." Id. at p. 37.

82. Further, Chair of the New York City Council's Committee on Civil Service and Labor, I. Daneek Miller, acknowledged this inequality, stating that:

> FDNY EMTs are paid a little more than $50,000 a year after five years of employment, yet at the same time period, firefighters are paid $110,000, more than double the EMT rate.  The pay disparities are shocking as EMT and paramedic provide vital care to the public and community in emergency situations throughout the city and they are predominantly women and people of color.

**Exhibit R**, *Oversight – Pay inequity issues within the New York City Probation Department and the New York City Fire Department*, T2019-4486. Committee on Civil Service and Labor, New York City Council, pp. 5-6, June 25, 2019.

83. Despite being underpaid and undervalued, EMS First Responders show the highest level of commitment to saving lives – even saving the lives of their Fire side counterparts and members of the public by running into burning buildings to provide medical assistance. *See* Id. at pp. 6, 100.[12]

84. The expert report of Dr. Brian Maguire, attached here as **Exhibit F** and incorporated by reference herein, also concludes the work performed by First Responders in the FDNY,

---

[12] Off-duty paramedic, firefighter rescues two from burning Queens home, *amNY*, July 2, 2020, *available online at*  https://www.amny.com/police-fire/off-duty-paramedic-rescues-two-from-burning-queens-home/ (last visited December 6, 2022).

whether they be EMS or Fire, is substantially equal and their working conditions are substantially similar.   In specific, Dr. Maguire found that the work of EMS First Responders is equally if not more dangerous than that of Firefighters, and therefore Defendant's failure to pay them equally violates Title VII, NYSHRL, and NYCHRL.

**SUPPRESSED WAGE OF A SEGREGATED WORKFORCE**

85.   Notwithstanding recent efforts to correct longstanding problems with diversity in the FDNY,[13] the City has admitted it has been unable to integrate its segregated workforce.[14]

86.   In fact, in large part efforts to bring women and people of color into the FDNY has resulted in increasing the diversity on the EMS side with little impact to the Fire side which remains to this day almost exclusively male and overwhelmingly white.   Today EMS First Responders are the most diverse uniform service employed by the City, consisting of the largest percentage of women and people of color of any uniform service for the City of New York.

87.   Defendant has not only maintained this segregated workforce in the FDNY based on race and gender, but upon information and belief Defendant continue to steer women and people of color away from the Fire side and towards the EMS side of the Department.

88.   Moreover, Defendant has simultaneously failed to monitor the pay of the Fire side and the EMS side of the FDNY to ensure this occupational segregation did not adversely impact

---

[13] *See* United States Vulcan Soc'y, Inc. v. City of New York, No. 07-CV-2067 (NGG)(RLM), in which the Court consistently recognized the EEOC's efforts to address the "pattern of underrepresentation" in the FDNY; United States v. City of New York, 683 F. Supp. 2d 225, 241 (E.D.N.Y. 2010).

[14] "The Department's racial and gender makeup are longstanding issues.... Although the FDNY has enhanced its efforts resulting in more historically underrepresented groups taking the firefighter exam, the number of women and minority firefighters remains extremely low relative to both other City agencies and other firefighting agencies across the country." *Report of the Finance Division on the Fiscal 2021 Preliminary Plan and the Fiscal 2020 Preliminary Mayor's Management Report for the Fire Department of New York* to the New York City Council, p. 5-6, Mar. 3, 2020.  (**Exhibit Q**).

members of protected groups.

89.  As such, Plaintiffs allege that the pay disparities described herein are a result of Defendant's pattern and/or practice of suppressing wages in the segregated job titles of the EMS and refusing to recognize EMS as uniform in violation of the law, which have resulted in Plaintiffs having been disparately treated and/or impacted in the compensation, benefits, terms and conditions of their employment because of their sex, gender, and/or race.

90.  Defendant's suppression of wages of EMS First Responders has prevented Plaintiffs from being fairly compensated for substantially equal work as their Fire side counterparts.

91.  Further, Defendant has limited, segregated, and/or classified the EMS First Responders in a way which has deprived them of fair pay and otherwise adversely affected their status as employees, because of their sex, gender and/or race.

92.  Defendant has continued these disparate pay practices despite their knowledge of the disparities and despite being given an opportunity to correct them.

93.  In fact, on May 28, 2020 the New York City Council unanimously passed Resolution 1062-2019, finding the pay practices for EMS First Responders discriminatory and demanding that the FDNY pay Plaintiffs an amount comparable to their Fire side colleagues as well as other first responders to correct this practice.  *See* **Exhibit S**.

94.  Resolution 1062-2019 was unanimously passed as council members recognized that the "4000 EMS, EMT, paramedics of the FDNY EMS…have the strongest representation of women and people of color in the uniform forces, [and yet] [t]he administration has neglected these brave public servants by paying them a fraction of what is an overwhelming white counterpart in the fire department.[15]

---

[15] *Salaries of NYC emergency medical service personnel to be comparable to NYC's firefighters and police officers*. Res. 1062-2019-A. New York City Council, p. 56, May 28, 2020 (**Exhibit T**).

95. The City Council has acknowledged that there exists "the tale of two cities . . . a tale of two FDNYs where the Fire side is almost exclusively one race and gender and the EMS side is predominantly women of color."[16]

96. Despite the passage of the City Council's resolution calling for an end of these practices, as well as its own admission that this pay inequity must end, Defendant has refused to comply with Title VII and its related state and city human rights laws to remedy its practice of discriminating against EMS First Responders.

97. Instead, the City claims EMS First Responders work is "different" and therefore it may continue to perpetrate the pay gay between EMS and Fire First Responders in violation of the law and the findings of the EEOC.[17]

98. As the EEOC determined, any differences in the work of the integrated uniform First Responders of FDNY does not justify the extreme difference in pay. Moreover, these differences only further establish entitlement to equal pay given the risks, effort and skill in the work of EMS First Responders including, *inter alia*, that:

   a. While all First Responders complete extensive training, only EMS First Responders are required to complete and maintain biannual certification with the New York State Department of Health (**Exhibit G,** Greco Declaration, Ex. A);

   b. The call volume EMS First Responders respond to is significantly higher (**Exhibit G**, Greco Declaration, Ex. B);

   c. EMS First Responders more frequently encounter medical hazards (**Exhibit I,**

---

[16] *Oversight – EMS Attrition*, T2020-5592. Committee on Fire and Emergency Management, New York City Council, p. 61, Jan. 28, 2020 (**Exhibit N**).

[17] *NYC mayor on FDNY EMS pay gap: 'The work is different,'* *available online at* https://www.ems1.com/fdny-ems/articles/nyc-mayor-on-fdny-ems-pay-gap-the-work-is-different-BVzzs9cvl8BARCEC/ (last visited December 6, 2022).

Sanchez Dec.); and

    d.   EMS First Responders are more frequently tasked with providing life-saving services (**Exhibit I, G**).

99.   Plaintiffs assert that the meaningful "difference" between Fire First Responders and EMS First Responders that explains the pay difference is the pronounced difference in demographics of the two sides of the Department's First Responders. Defendant maintains its workforce such that within the FDNY, EMS First Responders are predominantly non-white and largely female while Fire First Responders are almost exclusively white and overwhelming male, in violation of the law.

## DISCRIMINATION IN BENEFITS, TERMS, AND CONDITIONS

100.  Plaintiffs allege that the disparities described herein are a result of Defendant's policy and/or practice of EMS personnel being disparately treated and/or impacted in the terms, conditions, benefits and privileges of their employment because of their sex, gender, and/or race.

101.  In specific, Fire side personnel receive more generous overtime, pension, disability, medical, dental, line of duty death, and educational benefits than EMS personnel. Furthermore, Fire side personnel are stationed at fire houses, which provide them state-of-the-art facilities as well as locations to rest, relax, and have recreation in between calls, while EMS personnel neither have access to such fire houses nor do they have comparable facilities.

102.  These disparities in benefits include but are not limited to the following:

| Benefit | Fire First Responders | EMS First Responders |
|---|---|---|
| **Uniform Maintenance** | Firefighters are provided with laundry equipment at their fire station, and allowed to wash their laundry at the fire station while on their shift. This means there is no cost to clean their uniforms, and they are in fact paid 'on the clock' to clean them. Firefighters are also given as of August 1, 2005 $450 annually to cover their cost of uniform cleaning. (**Exhibit U**, Firefighters Contract Executed January 19, 2020, Article XXVIII - A, Page 29). | EMS First Responders are not provided with laundry equipment, are not allowed to wash their laundry during their shift and must wash their uniforms on their own time. EMS First Responders wear their uniform daily during all of their shifts. Firefighters do not. EMS First Responders are given as of July 1, 2007 $136 annually to cover the cost of uniform cleaning. (**Exhibit V**, Amendment to Section 10 a. of the EMS CBA 2002-2006, Page 57). |
| **Paid Sick Leave** | Firefighters have unlimited sick leave. (Source: NYC Admin Code Section 15-108) | EMS First Responders earn 7.5 hours of paid sick leave per month. This entitles them to 12 days of paid sick leave per year. They incidentally are only paid for 7.5 hours not the 8 hours they work as a result of being part of the civilian pattern bargaining because civilians are given a 30 minute meal break which EMS First Responders are not given. (Sources: Article III Section 1 c of the EMS CBA 2002-2006, Page 4, and Article VI, Section 6 of the Citywide Contract 2001, Page 39, *see* **Exhibit V**). |

| Paid Leave for Line of Duty Injury | Firefighters have unlimited paid leave for line of duty injuries. In addition, they have easier access to light duty jobs to help them return to work, and if they ultimately retire based on their line of duty injury they are given 3/4 pension plus disability through the fire pension system. (Source: NYC Admin Code. Section 15-108, 15-108.1) | Only upon a determination of disability through no fault of their own, EMS First Responders are allowed a maximum of 18 months of paid leave for line of duty injuries. During this time they must remain in their place of recuperation for 8 hours per day. If they are not fully rehabilitated by then they are unlikely to be accommodated with light duty employment, and are also unlikely to be given 3/4 pension benefits as they must apply through NYCERS which does not normally grant such requests. (*See* Section 3 of the EMS CBA of 2002-2006, Pages 22 — 25; *see* **Exhibit V**). |
|---|---|---|
| Paid Leave and Vacation | Firefighters are given 195 hours of leave after 5 years which amounts to approximately 5 weeks (Source: **Exhibit U**, Firefighters Contract Executed November 23, 2009, Article XII – C, Pages 13-14) | EMS First Responders only receive annual Paid Leave. They do not have a separate Vacation Leave plan. Annual Paid Leave ranges in amount from 10 days per year (for Lieutenants and Captains with less than 12 years to 27 days per year (for all members with more than 20 years in service). (Sources: Section 16, of the EMS CBA 2002-2006, Page 19 and Section 9 of the June 10, 2016 EMS Memorandum of Agreement; *see* **Exhibit V**). |

103. One of the causes of this is the FDNY's policy and/or practice of refusing to recognize EMS as a uniform service in collecting bargaining, or to participate in uniform pattern bargaining in violation of the law.  Attached here as **Exhibit W** is a copy of Local Law 19 of 2001, which amended the New York City Administrative Code §12-307 to make clear

that EMS personnel must be afforded the collective bargaining rights of the uniformed service.

104. Despite the EMS Bureau being recognized as uniformed personnel pursuant to Local Law 19 of 2001, which should entitle them to uniform pattern percentage compensation increases in collective bargaining cycles, Defendant has subjugated EMS First Responders to civilian pattern percentage compensation increases.

105. As such, Defendant has allowed the almost exclusively male and overwhelmingly white Fire side of the FDNY to benefit from uniform pattern percentage compensation increases, which almost always exceed civilian pattern percentage increases, while simultaneously denying the demographically diverse EMS side of the FDNY the same benefit, for which they are legally entitled.[18]

106. Furthermore, as explained further by Dr. Maguire, "the pandemic has highlighted that EMS personnel face increased risks due to the nature of their profession and their unavoidably close proximity to ill patients." **Exhibit F.**[19]

107. Despite the significant risk faced by EMS First Responders, there is a great disparity in benefits between those offered to EMS First Responders and Fire First Responders, including but not limited to paid sick time, line-of-duty-injury ("LODI") benefits, and pension benefits. As Firefighter Sanchez explains, he has the peace of mind knowing that

---

[18] In fact, Local Law 19 was passed in effort to end this longstanding practice of discrimination wherein Defendant alleged there was confusion over whether or not EMS FDNY should be allowed to be included in uniform pattern bargaining. Yet despite City Council passing a law to resolve any question that EMS FDNY are entitled to uniform pattern bargaining, Defendant has simply ignored this law and relegates EMS FDNY to civilian bargaining, resulting in substantially lower pay and lesser benefits, not to mention professional insult. This serves no legitimate business need and Defendant engages in this activity despite its clear violation of the law.

[19] As explained further in Dr. Maguire's Reports (**Exhibit F**), "EMS crews in NYC typically respond to about 4,000 emergency calls a day; at times during the pandemic, demand swelled to over 7,000 calls a day. FDNY EMS crews were often working 16 to 20 hour shifts. They were also placed at increased risk because the FDNY did not issue sufficient supplies of masks and protective gear to protect them on these calls. Id.

if he is injured in the line of duty he will be given unlimited sick leave.  (*See* **Exhibit I**).

Conversely, as Paramedic Cadet's experience illustrates, EMS First Responders do not get unlimited sick leave, and the Department's response to EMS First Responders being injured in the line of duty is to terminate them if they are unable to return to work in a short period of time.

108. This disparity in benefits is further exemplified by the fact that EMS personnel are very rarely granted a disability retirement since Defendant requires EMS First Responders to participate in the New York City Employees' Retirement System ("NYCERS"), the civilian pension program, as opposed to Fire side personnel who have their own uniformed pension program.[20]

109. Upon information and belief, applications for disability pension are much less likely to be approved by NYCERS for EMS First Responders, because they are treated as civilian, than they are for Fire First Responders who benefit from a uniform service retirement system.

110. Accordingly, Defendant has limited, segregated, and/or classified EMS First Responders in a manner that has deprived them of employment opportunities and/or otherwise adversely affected their status as employees, because of their sex, gender and/or race in violation of Title VII, NYSHRL, and NYCHRL.

111. Plaintiffs respectfully assert that the time has come to acknowledge, given the reality of today's emergency response, and the integrated nature of the FDNY, that the working conditions for EMS and Fire First Responders are substantially equal.  Likewise, the work performed by EMS First Responders and the degree of personal sacrifice, effort and skill of this diverse workforce is substantially equal to that of their white male counterparts on

---

[20] *See* NYC Pension Plans, *available online at* https://www.nyc.gov/site/opa/my-pay/pension-plans.page (last visited December 6, 2022).

the Fire side of the Department.  Finally, the responsibilities that EMS first responders take on to provide basic and advanced medical care to save human lives is at least substantially equal to that of the responsibilities of firefighters.  As such, EMS First Responders must be compensated equally to that of Fire First Responders, and the longstanding practice of disparate pay, in what City leaders have referred to as a "tale of two FDNYs" must be eliminated.[21]

## REPRESENTATIVE PLAINTIFFS

112. Plaintiff Tonya Boyd has 25 years of experience as an FDNY First Responder.  In 2022 her base salary was $135,053[22] while her Fire side counterparts, Deputy Assistant Chiefs, with less experience were paid no less than $235,000 for performing work that is substantially equal in the skill, effort, responsibility, and working conditions.  By way of example, Chief Boyd is responsible for ensuring that resources are allocated effectively to respond to all Mass Casualty Incidents ("MCI").  She reports directly to the EMS Deputy Assistant Chief, Chief of EMS, and Chief of Department, who then reports directly to the FDNY Commissioner.  When Chief Boyd is the highest-ranking member of the FDNY to respond to a fire or incident, she is responsible for supervising all members of the FDNY on medical care who respond, whether they are EMS or Fire First Responders performing

---

[21] *Oversight – EMS Attrition*, T2020-5592. Committee on Fire and Emergency Management, New York City Council, p. 61, Jan. 28, 2020 (**Exhibit N**).

[22] As explained in footnote 8, for purposes of this complaint Plaintiffs are using the most up to date salary information available as provided by Defendants and published in October of 2022 reflecting data for April 2022.  *See* NYC Open Data, Citywide Payroll Data, *available online at* https://data.cityofnewyork.us/City-Government/Citywide-Payroll-Data-Fiscal-Year-/k397-673e (last visited December 6, 2022).  While upon information and belief both EMS and Fire First Responders' base salaries have increased since April of 2022, the pay gap between those salaries remains constant, and in some cases, such as between EMTs and Firefighters, has even increased.  Moreover, upon information and belief when factoring in other compensation, like differentials and additions to pay, the pay gap between EMS and Fire is even more pronounced.

CPR. Chief Boyd's experience, training education, and ability are materially equal to her counterparts on the Fire side of the Department.

113. Plaintiff Christell Cadet has 10 years of experience as an FDNY First Responder. In 2022 her annual base salary was $75,872 while her Fire side counterparts, Firefighters, with less experience were paid no less than $85,292[23] for performing work that is substantially equal in the skill, effort, responsibility, and working conditions. By way of example, as an FDNY Paramedic she is exposed to a high-risk working environment. Paramedic Cadet has been attacked by patients, exposed to infectious pathogens and regularly endures other life-threatening working conditions. She has even risked her life providing medical assistance to a fellow Firefighter on the fire floor of a burning building where he had been struck by a falling beam and unable to leave. Similar to all her EMS colleagues, she is regularly required to respond to life-or-death situations in unsafe buildings, and homes where there are unknown threats. Like too many EMS personnel, Paramedic Cadet contracted COVID-19 in the line of duty early in the pandemic and required a ventilator and life support. She was intubated and unconscious for 30 days. She may never fully recover from her line of injury injuries. However, Paramedic Cadet was denied a ¾ disability pension by NYCERS. Unlike her Fire side colleagues, who have unlimited sick leave and the opportunity to work light duty if they have been injured, Paramedic Cadet will ultimately be rewarded by her employer the FDNY for her the injuries she sustained serving in the line of duty by being constructively terminated once she runs out of leave time, without any guarantee of retirement benefits to provide for her future.

114. Plaintiff Mark Carrasquillo has 4 years of experience as an FDNY First Responder. In

---

[23] *See* "Firefighter, Get Hired," *available online at* https://www.joinfdny.com/careers/firefighter/ (Last visited December 6, 2022).

2022 his annual base salary was $49,047 while his Fire side counterparts, Firefighters, with similar experience were paid no less than $61,000 for performing work that is substantially equal in the skill, effort, responsibility, and working conditions.  In fact, the FDNY is an integrated Department.  By way of example, the top-ranking supervisor, John Paul Augier, Deputy Commissioner of Dispatch Operations and Public Safety Technology is from the Fire side of the Department.  Next in command Deputy Assistant Chief Denise Werner, is from the EMS side.  All employees in Dispatch Operations, whether Fire or EMS, report to this same chain of command, who ultimately reports to the Chief of Department and Fire Commissioner.

115. Plaintiff Lizette Claro has 33 years of experience as an FDNY First Responder.  In 2022 she was paid an annual base salary of $86,791 while her Fire side counterparts, Captains, with less experience were paid no less than $108,244 for performing work that is substantially equal in the skill, effort, responsibility, and working conditions.  Moreover, despite her job being substantially equal, she is not given the same benefits as her Fire colleagues.  By way of example, Captain Claro was injured in the line of duty in November 2021 and has applied for a ¾ disability pension and retirement.  However, she was told her application will not be reviewed by NYCERS until March 2023 after her retirement becomes effective on February 2, 2023.  Further, since Defendant treats EMS First Responders as civilians, and not uniformed officers, they are required to participate in NYCERS, the civilian pension program and, in her experience, applications for disability pension are much less likely to be approved by NYCERS for EMS First Responders than they are for Fire First Responders by the Fire side retirement system.  Firefighters injured in the line of duty will regularly receive disability pension benefits.

116. Plaintiff Beverly Cobb has 25 years of experience as an FDNY First Responder.  In 2022 her annual base salary was $86,791 while her Fire side counterparts, Captains, with less experience were paid no less than $108,244 for performing work that is substantially equal in the skill, effort, responsibility, and working conditions.  In fact, the effort required by Captain Cobb who works in EMS is significantly more than those working on the Fire-side of the Department.  This is because EMS receives more than three (3) times the call volume as the Fire-side.

117. Plaintiff Ali Coutard has 8 years of experience as an FDNY First Responder.  In 2022 he was paid an annual base salary of $75,872 while his Fire side counterparts, Firefighters, with less experience were paid no less than $85,292 for performing work that is substantially equal in the skill, effort, responsibility, and working conditions.  By way of example, Paramedic Coutard worked in the field throughout the COVID-19 pandemic and witnessed firsthand the physical and mental toll EMS First Responders deal with on a day to day basis which was brought to public light during COVID-19.  While the COVID-19 pandemic, which is still ongoing, illustrated the serious dangers that EMS First Responders face, it is neither the first nor last biological risks EMS First Responders will have direct daily contact with.  EMS First Responders are continually exposed to dangerous blood-born and air-born pathogens such as COVID, Ebola, RSV, Polio, Monkeypox, and many more.  Also, because EMS is not given the same working conditions as their Fire counterparts, they are unable to wash up, change their uniform or otherwise protect against this exposure throughout their shift.  They also often do not have sufficient Personal Protective Equipment ("PPE") or other necessary equipment.  In addition to these biological risks, EMS First Responders experience violence and physical risks on the job.

Finally, Paramedic Coutard explains that another effect of EMS First Responders being so severely underpaid while doing equally difficult work in skill, efforts, responsibility, and working conditions to that of Fire First Responders, is that it causes more emotional exertion and stress for EMS First Responders.

118. Plaintiff Sencia Datilus has 10 years of experience as an FDNY First Responder.  In 2022 her annual base salary was $75,872 while her Fire side counterparts, Firefighters, with less experience are paid no less than $85,292 for performing work that is substantially equal in the skill, effort, responsibility, and working conditions.  By way of example, in the field, Paramedic Datilus has encountered significant risks, which have been exacerbated by the fact that EMS First Responders only work in pairs, as opposed to Fire First Responders, who operate in groups of four (4) or more.

119. Plaintiff Laitrice Edwards has 16 years of experience as an FDNY First Responder.  In 2022 she was paid an annual base salary of $102,041 while her Fire side counterparts, Deputy Chiefs, were paid no less than $181,172 for performing work that is substantially equal in the skill, effort, responsibility, and working conditions.  As an EMS Deputy Chief, Chief Edwards travels to emergencies alone, while her Fire-side and Police counterparts travel with a chauffeur.  In her experience, EMS First Responders encounter a significant amount of physical risk.  EMTs and Paramedics travel either alone or groups of 2.  Their Fire counterparts travel in groups of at least 4 and will often stand back and allow EMS to enter an emergency scene if it is dangerous.  Also, whether they are responding to an emergency in a patient's home or on a public highway, they do not always know what the potential violence or risks they may encounter are, and as such it is even harder to protect against.  All the while, EMS First Responders are ultimately the FDNY members

responsible for these patients and must provide lifesaving medical care in the midst of these dangerous environments.

120. Plaintiff Alicia Elkadi has 17 years of experience as an FDNY First Responder.  In 2022 she was paid an annual base salary of $75,971 while her Fire side counterparts, Lieutenants, with less experience were paid no less than $94,300 for performing work that is substantially equal in the skill, effort, responsibility, and working conditions.  By way of example, Lieutenant Elkadi explains that the work of EMS First Responders is incredibly physically and emotionally strenuous.  EMS First Responders are expected to lift patients and carry them to their ambulance down several flights of stairs, carry heavy equipment up several flights of stairs, and work in dangerous situations like on highways with ongoing traffic.  While performing this highly physically exerting work they are simultaneously required to perform life-saving medical care.  Also, the intense volume of calls that EMS First Responders must handle every shift without relief makes the work even more emotionally challenging.

121. Plaintiff Ronald Floyd has 29 years of experience as an FDNY First Responder.  In 2022 his annual base salary was $86,791 while his Fire side counterparts, Captains, with less experience were paid no less than $108,244 for performing work that is substantially equal in the skill, effort, responsibility, and working conditions.  By way of example, like Captains on the Fire side of the Department, Captain Floyd is responsible for supervising personnel on the scene of an emergency response to the City's 911 Emergency Call System.  In addition, Captain Floyd is responsible for administrative oversight similar to that of Captains on the Fire side.  Moreover, in his experience, EMS First Responders encounter the same, or similar, risks as Fire First Responders when they respond to emergencies

together, including the fact that EMS First Responders respond to fires with Firefighters and will gather in the level below the fire floor to provide medical assistance while experiencing many of the same risks but with less effective PPE (*see* **Exhibit X**, EMS Forward Treatment Area Task Force at High-Rise Fire Incidents).

122. Plaintiff Kahlia Graham has 16 years of experience as an FDNY First Responder.  In 2022 her annual base salary was $105,041 while her Fire side counterparts, Deputy Chiefs, with less experience were paid no less than $145,807 for performing work that is substantially equal in the skill, effort, responsibility, and working conditions.  Deputy Chief Graham's work includes being assigned to oversee an EMS station in Brooklyn.  But she must also assist at times all four stations in Brooklyn north including stations 31, 32, 35 and 57. Moreover, EMS officers like Deputy Chief Graham have even more responsibility for overseeing a greater number of subordinates than their Fire side counterparts.  For example, an EMS Lieutenant is responsible for an entire EMS Station while a Fire side Lieutenant is only responsible for one fire truck.

123. Plaintiff Richard Guzman had 12 years of experience as an FDNY First Responder when he ceased his employment with the FDNY on March 5, 2022 because he could not cover his cost of living even when he worked significant overtime.  At that time, Paramedic Guzman was being paid an annual base salary of $72,872 while his Fire side counterparts, Firefighters, with less experience were paid no less than $85,292 for performing work that is substantially equal in the skill, effort, responsibility, and working conditions.  By way of example, during his career, Paramedic Guzman performed emergency services in collaboration with Firefighters.  He also completed training with Firefighters to become a Rescue Paramedic, during which both EMS instructors and Firefighters instructors trained

34

him. When he completed his Paramedic refresher courses there were regularly Firefighters taking the courses with him. In the field when he was responding to rescue emergencies while there are EMS officers on scene, he was often coordinating with Fire side officers. By way of example, in a building where he was in an elevated area during a fire or otherwise, where he was roped off to rescue a patient, the people doing the roping off so he was safe were Firefighters, while he was actually rescuing the patient, such that Fire and EMS were working hand in hand in the same environment. He explains that in a situation like that, he was the most trained and highest skilled person in that situation, and that he had the most physical hazard and was in the greatest peril. As the EMS Paramedic rescuing the patient, he was actually tied to the patient. That is, the same angle rope that gets used to bring down the patient was also tied to Paramedic Guzman.

124. Plaintiff Maggie Hope has almost 3 years of experience as an FDNY First Responder. In 2022 her annual base salary was $42,357 while her Fire side counterparts, Firefighters, with similar experience were paid no less than $55,192 for performing work that is substantially equal in the skill, effort, responsibility, and working conditions. By way of example, as a member of the Tactical Response Group, EMT Hope is deployed to the areas that need coverage the most and responds to calls during which she is often working alongside Fire First Responders. EMT Hope has regularly responded to calls that require her to enter someone's home, during which she has experienced violence, aggression, weapons and other dangers, which her Fire side counterparts are much less exposed to as they can wait outside and don't need to provide medical care while this is going on. EMT Hope recalls responding to a 911 call with Firefighters that was reported as a diabetic emergency, but when Firefighters removed the door, it turned out to be a family dispute

which became violent. The 4 Firefighters who responded to the call with EMT Hope fled leaving her and her partner behind trapped without an escape while a family member of the victim chopped off the hand of another individual with a machete. Moreover, like with all EMS First Responders, EMT Hope is not provided proper facilities or accommodations for her job. So, unlike Firefighters who have a station they can return to after a job and take a shower and change clothes, EMT Hoppe must simply go to the next job with no opportunity to remove blood, or any pathogens that may have gotten on her uniform or herself from her last job. While Firefighters have state of the art facilities for personal accommodations, EMT Hope has none. Like all EMS First Responders, she must sit in an ambulance parked on a street corner between jobs and when she has to go to the bathroom, she must find a public facility like a restaurant or gas station, at which time she has only 20 minutes to locate a facility, get to it and be back on call. If she takes longer than 20 minutes, she faces disciplinary action. She is also only allowed two bathroom visits per 12 hour shift.

125. Plaintiff Jasmin Howard has 13 years of experience as an FDNY First Responder. In 2022 her annual base salary was $82,548 while her Fire side counterparts, Lieutenants, with less experience were paid no less than $94,300 for performing work that is substantially equal in the skill, effort, responsibility, and working conditions. When Lieutenant Howard first applied to work at the FDNY, she always intended to be a firefighter and scored a 98% on the written firefighter exam, however she was persuaded by the Department to enter the FDNY on the EMS side.

126. Plaintiff Angela Jones had 31 years of experience as an FDNY First Responder when she retired on April 30, 2021. At that time, she was paid an annual base salary of $71,202 while her Fire side counterparts, Lieutenants, with less experience were paid no less than

$94,300 for performing work that is substantially equal in the skill, effort, responsibility, and working conditions. Lieutenant Jones has extensive experience and training as an EMS First Responder. By way of example, as a Lieutenant on the EMS side of the FDNY she was responsible for supervising all First Responders providing medical care on the scene of an emergency. This included Firefighters performing medical care. She was also responsible for overseeing on average from 10 to 45 units in the field.

127. Plaintiff Ravivarman Kailayanathan has 9 years of experience as an FDNY First Responder. In 2022 his annual base salary was $75,872 while his Fire side counterparts, Lieutenants, are paid no less than $94,300 for performing work that is substantially equal in the skill, effort, responsibility, and working conditions. By way of example, Lieutenant Kailayanthan has been trained alongside Fire First Responders. He has also worked for the FDNY as an instructor and in that capacity he would hold training sessions in which he taught together both EMS First Responders and Fire First Responders.

128. Plaintiff Melanie Moreno-Ketchum has 9 years of experience as an FDNY First Responder. In 2022 her annual base salary was $65,226 while her Fire side counterparts, Lieutenants, were paid no less than $94,300 for performing work that is substantially equal in the skill, effort, responsibility, and working conditions. Also, Lieutenant Moreno-Ketchum often responds to medical emergencies where she is the supervising officer on medical care yet she is not given the respect or recognition as such by Firefighters. This increases both the risks and effort in her job. She often has to ask more than once for assistance or go above a Firefighter to an officer on the Fire-side to get them to complete the tasks she needs to provide medical care to a patient, even though Firefighters are supposed to take direction from her.

129.   Plaintiff Jenelle Pierre has 9 years of experience as an FDNY First Responder.  In 2022 her annual base salary was $82,548 while her Fire side counterparts, Lieutenants, with less experience were paid no less than $94,300 for performing work that is substantially equal in the skill, effort, responsibility, and working conditions.  By way of example, Lieutenant Pierre has responded to fire calls, mass casualty incidents, and medical calls.  In most if not all of these emergencies both EMS and Fire First Responders respond and provide interrelated services to resolve the emergency.  Yet despite the work performed being substantially equal the EMS First Responders are paid significantly less.  They are also not provided the same protections or benefits in their work.  For example, EMS First Responders are not given unlimited sick leave if they are injured in the line of duty.  This disparity in pay and benefits is not only harmful to EMS First Responders who often cannot afford the cost of living, but it also diminishes the respect and value given to these First Responders which then undercuts their ability to do their work.

130.   Plaintiff Simone Quashie has 17 years of experience as an FDNY First Responder.  In 2022 her annual base salary was $62,393 while her Fire side counterparts, Firefighters, with less experience are paid no less than $85,292 for performing work that is substantially equal in the skill, effort, responsibility, and working conditions.  Paramedic Quashie first contacted the FDNY because she wanted to be a Firefighter.  Instead, she was told to take the test to become an EMT.  She took the EMT exam because that was the only option presented to her.  A couple of years after becoming an EMT, she took the firefighter exam but because she was not properly instructed, she sat for the open (public) exam rather than the promotional exam.  She is now aged out of eligibility to become a firefighter.  In her work in the field, Paramedic Quashie has witnessed first-hand the disparities in the working

conditions of Fire First Responders who have fire houses they can return to between calls to wash up, eat and relax, and EMS First Responders who have nowhere to go between calls and sometimes go days without being able to eat lunch or dinner during her shifts.

131. Plaintiff Jason Saffon has 26 years of experience as an FDNY First Responder.  In 2022 his annual base salary was $86,791 while his Fire side counterparts, Captains, with less experience were paid no less than $108,244 for performing work that is substantially equal in the skill, effort, responsibility, and working conditions.  In addition, Captain Saffon often experiences a general sentiment from Firefighters that EMS First Responders are subordinate, even directed towards officers like Captain Saffon when they are supervising medical care.  He also experienced first-hand how EMS First Responders are not only expected but required to enter a home in which a medical emergency is occurring regardless of whether violence is occurring or being threatened, or there is evidence of a gas leak, or most recently, there is a COVID-positive individual inside.  These are all examples of risks which EMS First Responders regularly encounter that Fire First Responders are not required to experience.

132. Plaintiff Allison Shaughnessy has 9 years of experience as an FDNY First Responder.  In 2022 her annual base salary was $75,971 while her Fire side counterparts, Lieutenants, with less experience were paid no less than $94,300 for performing work that is substantially equal in the skill, effort, responsibility, and working conditions.  By way of example, Lieutenant Shaughnessy regularly works alongside Fire First Responders to treat patients in austere environments, including building collapses, confined spaces, including on or above a fire floor.  She was trained alongside Firefighters in Rescue Basics, Hazmat response, and high angle rescues.  During many of these emergencies, Lieutenant

Shaughnessy is responding to the same areas as Fire First Responders with the same PPE, bunker gear, and self-contained breathing apparatuses ("SCBA").

133. Plaintiff Laura Torres has 16 years of experience as an FDNY First Responder.  In 2022 her annual base salary was $82,548 while her Fire side counterparts, Lieutenants, with less experience were paid no less than $94,300 for performing work that is substantially equal in the skill, effort, responsibility, and working conditions.  Moreover, the FDNY is an integrated Department in which EMS and Fire work together to provide integrated and comprehensive emergency services.  By way of example, Lieutenant Torres as an EMS Lieutenant worked as a Haz-Tac instructor conducting integrated training with Fire and EMS First Responders in Haz-Tac, including weapons of mass destruction protocols such as treating nerve damage attacks and other mass casualty responses.

134. Plaintiff Andre Valdez had 25 years of experience as an FDNY First Responder when he retired in September 2021.  At that time, he was paid an annual base salary of $105,041 while his Fire side counterparts, Deputy Chiefs, with less experience were paid no less than $145,807 for performing work that is substantially equal in the skill, effort, responsibility, and working conditions.  As an EMS Deputy Chief, Chief Valdez oversaw the medical branch, but his job was otherwise substantially similar to a Fire side Deputy Chief as both jobs of fire suppression and emergency medical services are equally dangerous and the risk of getting hurt or killed on the job is equal.

135. Plaintiff Lance Winfield had 28 years of experience as an FDNY First Responder when he retired in April 2022.  At that time, he was paid an annual base salary of $59,393 while his Fire side counterparts, Firefighters, with less experience were paid no less than $85,292 for performing work that is substantially equal in the skill, effort, responsibility, and working

conditions.  Despite the fact that the Fire dispatch operators are civilian and despite the fact that the volume of calls they receive is a fraction compared to the call volume of EMS, EMS dispatchers are paid less than their Fire side counterparts.

136. Plaintiff Ronald Wolfe has 9 years of experience as an FDNY First Responder.  In 2022 his annual base salary was $68,155 while his Fire side counterparts, Firefighters, with less experience are paid no less than $85,292 for performing work that is substantially equal in the skill, effort, responsibility, and working conditions.  Paramedic Wolfe's experience exemplifies how strenuous and difficult the job of an EMS First Responder is.  Paramedic Wolfe is certified as a Haz-Tac Paramedic, which allows him to provide emergency medical care and decontamination in hazardous environments such as Chemical, Biological, Radiological and Nuclear (CBRN).  Paramedic Wolfe is also required to provide advanced lifesaving care while also performing extremely physically exerting work.  By way of example, he and his partner recently needed to carry a 385-pound patient down eight (8) flights of stairs while also carrying their equipment and simultaneously administering medical care to the patient.

137. Plaintiff Marylou Aurrichio had 38 years of experience as an FDNY First Responder when she retired in September 2022.  At that time, she was paid an annual base salary of $136,346 while her Fire side counterparts, Deputy Assistant Chiefs, with less experience were paid no less than $235,000 for performing work that is substantially equal in the skill, effort, responsibility, and working conditions.  Based on her 38 years of service to the City as an EMS First Responder, Division Chief Marylou Aurrichio asserts that the FDNY disparately treats EMS and Fire First Responders, including not just how they are compensated, but the benefits and terms and conditions of employment.  Despite the FDNY being an

integrated department where the First Responders work collaboratively to respond to the same emergencies in a wide array of challenges facing the City of New York in the 21st century, Division Chief Aurrichio asserts the FDNY continues to treat EMS First Responders like second-class employees by under-paying and under-valuing them. She points to the recent death of FDNY EMS Captain Russo-Elling, who was a student of hers at the FDNY Academy, and who she knew for her whole career, as an example of how risky the work is for FDNY EMS First Responders.

## **FRCP RULE 23 CLASS ACTION ALLEGATIONS**

138. Plaintiffs bring this action pursuant to Rule 23 of the Federal Rules of Civil Procedure ("FRCP") on behalf of themselves and all others similarly situated.

139. The proposed class is defined as:

> All people employed by the City of New York in the EMS Bureau of the New York City Fire Department in the titles of Emergency Medical Technician, Paramedic, Lieutenant, Captain, Deputy Chief, Division Commander/Chief as of the commencement of this action and at any time during the preceding three-year period.

140. The essential job duties of the Class are the same or substantially similar to Plaintiffs, and the employment policies identified herein apply to the Class in the same manner as Plaintiffs.

141. Plaintiffs have standing to seek the relief sought as stated herein, as all Class Representatives are members of the Class they seek to represent and have been harmed by Defendant's unlawful practices and policies.

142. The Class Representatives seek to secure relief applicable to themselves and the

similarly situated Class members.  Such relief is properly sought in a class action as much of the necessary relief addresses systemic issues of discriminatory policies and practices that have harmed all Class members and all those who will become Class members.

143. Numerosity is satisfied pursuant to FRCP 23(a)(1), as the Class is so numerous that joinder is impracticable. The estimated Class size is more than 5,000 and Defendant has the ability and control to ascertain an exact class size.

144. Plaintiffs and the Class have been subject to the same unlawful policies and practices of Defendant, including discriminatory pay practices, suppression of wages, and denial of employment opportunities.  All of these consequences result in qualified non-white and female employees facing discriminatory barriers to equal pay and employment opportunities.

145. During the time in question, Defendant was fully aware of the discriminatory effects of their unlawful employment practices complained of herein. Defendant has thus intentionally discriminated against Plaintiffs and the Class they represent by continuing to maintain policies that discriminate against female and non-white employees.

146. Due to Defendant's conduct described and alleged herein, Defendant violated federal, state, and local laws knowingly, negligently, and without a good faith basis, causing pecuniary and emotional damages to Plaintiffs and the Class, the full extent of which are not yet known.

147. Based on these violations, Defendant is liable to Plaintiffs and the Class for monetary damages, including back pay, front pay, and compensatory damages, as

well as equitable relief, including injunctive and affirmative relief. All relief sought is applicable to the Class as a whole.

148. Certification of the Class's claims as a class action is the most efficient and economic means of resolving the questions of law and fact common to Plaintiffs' claims and Class claims.

149. Failure to proceed as a class action would result in an impracticable number of individual suits seeking to resolve the same claims with the same evidence. Proceeding on an individual basis would further pose an unnecessary risk of inconsistent adjudications.

150. Additionally, individual Class members face a high threat of being financially unable or unwilling out of fear of retaliation to seek vindication of their statutory rights through individual claims.

151. The Named Plaintiffs, all of whom either are or were employed as EMS First Responders, raise claims typical of the claims of the classes that they seek to represent. Class Representatives pursue the same factual and legal theories as the class they seek to represent, and seek similar relief.

152. Defendant has been and continues to be engaged in a pattern and practice of discrimination against Plaintiffs, intentionally and unintentionally, on the basis of race, sex and/or gender by engaging in discriminatory employment practices including but not limited to discriminatory pay practices, suppression of wages, and denial of employment opportunities. All of these consequences result in qualified non-white and female employees facing discriminatory barriers to equal pay, employment opportunities, and career advancement, which have adversely

44

impacted women and people of color.

153. Defendant's acts and omissions have harmed and affected the Class Representatives and the Class members in substantially the same or similar ways.

154. Defendant has failed to redress or seek to mitigate the known unlawful consequences of these policies and practices. Class Representatives and Class members have been harmed by these failures in substantially the same or similar ways.

155. Class Representatives and Class members all seek the relief described herein.

156. Plaintiffs' claims raise questions of law that are common to the Class including:

a. Appropriate standards for proving a pattern and practice of discrimination against EMS First Responders on both disparate treatment and disparate impact theories of liability;

b. Whether Defendant has engaged in unlawful, systemic discrimination on the basis of race and gender through its employment policies, practices, and procedures;

c. Whether Defendant failed to mitigate or cure a known problem of discrimination against EMS First Responders;

157. Plaintiffs' claims raise common questions of fact including:

a. Whether Defendant's employment policies and practices has caused disparate treatment of EMS First Responders because of their race, sex and gender;

b. Whether Defendant's employment policies and practices has caused disparate impact to EMS First Responders because of their race, sex, and gender;

c. Whether Defendant engaged in discriminatory employment practices including but not limited to discriminatory pay practices, suppression of wages, and denial of

employment opportunities, which have adversely impacted women and people of color.

158. Plaintiffs seek relief common to the class, namely, monetary relief, including back pay, front pay, and compensatory damages, as well as equitable relief, including injunctive and affirmative relief.

159. Plaintiffs will fairly and adequately represent and protect the interests of the classes. The interests of the Named Plaintiff are coextensive with the interests of the members of the proposed Class. The Named Plaintiffs seek to remedy Defendant's discriminatory employment practices, policies, and procedures including discriminatory pay practices, suppression of wages, and denial of employment opportunities, which have adversely impacted women and people of color, and secure equitable prospective relief so that EMS First Responders will no longer be disparately impacted and/or treated.

160. The Named Plaintiffs are all willing and able to represent the interests of the proposed Class fairly and vigorously, as each of them would in pursuing their individual claims. Each Named Plaintiff is prepared to assist in the instant litigation and make informed decisions based on the interests of the proposed Class.

161. Plaintiffs' lawyers are experienced in the litigation of civil rights and employment matters and will vigorously prosecute this action on behalf of the class. Plaintiffs' counsel has sufficient experience and resources to litigate a class action of this size. Further, as Plaintiffs' counsel has represented Plaintiffs and the Class in all related actions from 2015 through present, Plaintiffs' counsel is intimately familiar with the procedural and factual history of the instant matter, the factual and statistical

information underlying Plaintiffs' claims, and is best positioned to litigate this class action.  The experience, knowledge, and resources of Plaintiffs' counsel, together with the assistance of the Class Representatives and financial resources of Plaintiffs Local 2507, Local 3621, and SOA satisfies the adequacy requirements of FRCP 23(a)(4).

162. Defendant has acted on grounds generally applicable to the Class and appropriate injunctive and declaratory relief would apply to and benefit the Class as a whole.

**AS FOR THE FIRST CAUSE OF ACTION**
**DISCRIMINATORY PAY PRACTICES**
**IN VIOLATION OF TITLE VII**

163. Plaintiffs repeat and reiterate each and every allegation contained in the foregoing paragraphs with the same full force and effect as if hereinafter set forth at length.

164. Defendant at all relevant times has been Plaintiffs' employer as defined by Title VII.

165. Defendant has at all relevant times discriminated against Plaintiffs, intentionally and unintentionally, on the basis of race, sex and/or gender by subjecting them to discriminatory pay policies and practices, which are evidenced by the disparities in pay of EMS First Responders in comparison to comparable Fire First Responders despite performing work that is substantially equal in the required skill, effort, responsibility, and working conditions.

166. As a direct result of the actions and inactions of Defendant, which have been ongoing and continuous, Plaintiffs and the Class they represent have suffered injuries and damages and continue to suffer such injuries, including but not limited

to loss of wages, salaries and benefits, as well as emotional hardship and mental anguish.

**AND AS FOR THE SECOND CAUSE OF ACTION**
**DISCRIMINATORY PAY PRACTICES**
**IN VIOLATION OF THE NEW YORK STATE HUMAN RIGHTS LAW**

167.     Plaintiffs repeat and reiterate each and every allegation contained in the foregoing paragraphs with the same full force and effect as if hereinafter set forth at length.

168.     Defendant at all relevant times has been Plaintiffs' employer as defined by NYSHRL.

169.     Defendant has at all relevant times discriminated against Plaintiffs, intentionally and unintentionally, on the basis of race, sex and/or gender by subjecting them to discriminatory pay policies and practices, which are evidenced by the disparities in pay of EMS First Responders in comparison to comparable Fire First Responders despite performing work that is substantially equal in the required skill, effort, responsibility, and working conditions.

170.     As a direct result of the actions and inactions of Defendant, which have been ongoing and continuous, Plaintiffs and the Class they represent have suffered injuries and damages and continue to suffer such injuries, including but not limited to loss of wages, salaries and benefits, as well as emotional hardship and mental anguish.

## AND AS FOR THE THIRD CAUSE OF ACTION
## DISCRIMINATORY PAY PRACTICES
## IN VIOLATION OF THE NEW YORK CITY HUMAN RIGHTS LAW

171.         Plaintiffs repeat and reiterate each and every allegation contained in the foregoing paragraphs with the same full force and effect as if hereinafter set forth at length.

172.         Defendant at all relevant times has been Plaintiffs' employer as defined by NYCHRL.

173.         Defendant has at all relevant times discriminated against Plaintiffs, intentionally and unintentionally, on the basis of race, sex and/or gender by subjecting them to discriminatory pay policies and practices, which are evidenced by the disparities in pay of EMS First Responders in comparison to comparable Fire First Responders despite performing work that is substantially equal in the required skill, effort, responsibility, and working conditions.

174.         As a direct result of the actions and inactions of Defendant, which have been ongoing and continuous, Plaintiffs and the Class they represent have suffered injuries and damages and continue to suffer such injuries, including but not limited to loss of wages, salaries and benefits, as well as emotional hardship and mental anguish.

## AND AS FOR THE FOURTH CAUSE OF ACTION
## SUPPRESSED WAGE OF A SEGREGATED WORKFORCE
## IN VIOLATION OF TITLE VII

175.         Plaintiffs repeat and reiterate each and every allegation contained in the foregoing paragraphs with the same full force and effect as if hereinafter set forth

at length.

176.        Defendant at all relevant times has been Plaintiffs' employer as defined by Title VII.

177.        Defendant has at all relevant times discriminated against Plaintiffs, intentionally and/or unintentionally, on the basis of race, sex and/or gender by the fact that Defendant maintains a segregated workforce in the FDNY based on race and gender, and Defendant has failed to monitor the pay of the Fire side and the EMS side of the FDNY to ensure this occupational segregation did not adversely impact members of protected groups.

178.        Instead, Defendant intentionally and/or unintentionally suppressed the salaries of EMS First Responders despite the fact that they perform work that is substantially equal in the required skill, effort, responsibility, and working conditions as their Fire side colleagues.

179.        As a direct result of the actions and inactions of Defendant, which have been ongoing and continuous, Plaintiffs and the Class they represent have suffered injuries and damages and continue to suffer such injuries, including but not limited to loss of wages, salaries and benefits, as well as emotional hardship and mental anguish.

**AND AS FOR THE FIFTH CAUSE OF ACTION**
**SUPPRESSED WAGE OF A SEGREGATED WORKFORCE**
**IN VIOLATION OF THE NEW YORK STATE HUMAN RIGHTS LAW**

180.        Plaintiffs repeat and reiterate each and every allegation contained in the foregoing paragraphs with the same full force and effect as if hereinafter set forth at length.

181.        Defendant at all relevant times has been Plaintiffs' employer as defined by NYSHRL.

182.        Defendant has at all relevant times discriminated against Plaintiffs, intentionally and/or unintentionally, on the basis of race, sex and/or gender by the fact that Defendant maintains a segregated workforce in the FDNY based on race and gender, and Defendant has failed to monitor the pay of the Fire side and the EMS side of the FDNY to ensure this occupational segregation did not adversely impact members of protected groups.

183.        Instead, Defendant intentionally and/or unintentionally suppressed the salaries of EMS First Responders despite the fact that they perform work that is substantially equal in the required skill, effort, responsibility, and working conditions as their Fire side colleagues.

184.        As a direct result of the actions and inactions of Defendant, which have been ongoing and continuous, Plaintiffs and the Class they represent have suffered injuries and damages and continue to suffer such injuries, including but not limited to loss of wages, salaries and benefits, as well as emotional hardship and mental anguish.

### AND AS FOR THE SIXTH CAUSE OF ACTION
### SUPPRESSED WAGE OF A SEGREGATED WORKFORCE
### IN VIOLATION OF THE NEW YORK CITY HUMAN RIGHTS LAW

185.        Plaintiffs repeat and reiterate each and every allegation contained in the foregoing paragraphs with the same full force and effect as if hereinafter set forth at length.

186.        Defendant at all relevant times has been Plaintiffs' employer as defined by NYCHRL.

187.        Defendant has at all relevant times discriminated against Plaintiffs, intentionally and/or unintentionally, on the basis of race, sex and/or gender by the fact that Defendant maintains a segregated workforce in the FDNY based on race and gender, and Defendant has failed to monitor the pay of the Fire side and the EMS side of the FDNY to ensure this occupational segregation did not adversely impact members of protected groups.

188.        Instead, Defendant intentionally and/or unintentionally suppressed the salaries of EMS First Responders despite the fact that they perform work that is substantially equal in the required skill, effort, responsibility, and working conditions as their Fire side colleagues.

189.        As a direct result of the actions and inactions of Defendant, which have been ongoing and continuous, Plaintiffs and the Class they represent have suffered injuries and damages and continue to suffer such injuries, including but not limited to loss of wages, salaries and benefits, as well as emotional hardship and mental anguish.

### AND AS FOR THE SEVENTH CAUSE OF ACTION
### DISCRIMINATORY EMPLOYMENT PRACTICES
### IN VIOLATION OF TITLE VII

190.        Plaintiffs repeat and reiterate each and every allegation contained in the foregoing paragraphs with the same full force and effect as if hereinafter set forth at length.

191.        Defendant at all relevant times has been Plaintiffs' employer as defined

by Title VII.

192.     Defendant has at all relevant times discriminated against Plaintiffs, intentionally and unintentionally, on the basis of race, sex and/or gender by subjecting them to discriminatory employment policies and practices, which are evidenced by the disparities in the terms and conditions of employment of EMS First Responders in comparison to Fire First Responders despite the fact that they perform work that is substantially equal in the required skill, effort, responsibility, and working conditions.

193.     As a direct result of the actions and inactions of Defendant, which have been ongoing and continuous, Plaintiffs and the Class they represent have suffered injuries and damages and continue to suffer such injuries, including but not limited to loss of wages, salaries and benefits, as well as emotional hardship and mental anguish.

**AND AS FOR THE EIGHTH CAUSE OF ACTION**
**DISCRIMINATORY EMPLOYMENT PRACTICES**
**IN VIOLATION OF THE NEW YORK STATE HUMAN RIGHTS LAW**

194.     Plaintiffs repeat and reiterate each and every allegation contained in the foregoing paragraphs with the same full force and effect as if hereinafter set forth at length.

195.     Defendant at all relevant times has been Plaintiffs' employer as defined by NYSHRL.

196.     Defendant has at all relevant times discriminated against Plaintiffs, intentionally and unintentionally, on the basis of race, sex and/or gender by subjecting them to discriminatory employment policies and practices, which are

evidenced by the disparities in the terms and conditions of employment of EMS First Responders in comparison to Fire First Responders despite the fact that they perform work that is substantially equal in the required skill, effort, responsibility, and working conditions.

197.        As a direct result of the actions and inactions of Defendant, which have been ongoing and continuous, Plaintiffs and the Class they represent have suffered injuries and damages and continue to suffer such injuries, including but not limited to loss of wages, salaries and benefits, as well as emotional hardship and mental anguish.

## AND AS FOR THE NINTH CAUSE OF ACTION
## DISCRIMINATORY EMPLOYMENT PRACTICES
## IN VIOLATION OF THE NEW YORK CITY HUMAN RIGHTS LAW

198.        Plaintiffs repeat and reiterate each and every allegation contained in the foregoing paragraphs with the same full force and effect as if hereinafter set forth at length.

199.        Defendant at all relevant times has been Plaintiffs' employer as defined by NYCHRL.

200.        Defendant has at all relevant times discriminated against Plaintiffs, intentionally and unintentionally, on the basis of race, sex and/or gender by subjecting them to discriminatory employment policies and practices, which are evidenced by the disparities in the terms and conditions of employment of EMS First Responders in comparison to Fire First Responders despite the fact that they perform work that is substantially equal in the required skill, effort, responsibility,

and working conditions.

201.     As a direct result of the actions and inactions of Defendant, which have been ongoing and continuous, Plaintiffs and the Class they represent have suffered injuries and damages and continue to suffer such injuries, including but not limited to loss of wages, salaries and benefits, as well as emotional hardship and mental anguish.

## DEMAND FOR JURY

202.     Plaintiffs demand trial by jury on all issues so triable.

## DEMAND FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that this Court grants the following relief:

A. Designate this action as a class action pursuant to Rule 23(a);

B. Issue a permanent injunction enjoining Defendant from further violating Title VII, New York State Human Rights Law, and New York City Human Rights Law, requiring Defendant abolish their disparate pay practices and discriminatory employment policies and practices including requiring that Defendant:

    1. Take such affirmative action as is necessary to ensure that the effects of their unlawful pay practices are eliminated including;

        i.     Affirmative recognition by Defendant that First Responders, whether on the EMS or Fire side of the FDNY, shall be treated as uniform in all the same ways by Defendant, including

recognizing their right to engage in Uniform Pattern Bargaining;

ii. Affording EMS personnel proper working conditions, including accommodations such as access to private restroom facilities, access to and use of FDNY stations, and the ability to take proper breaks including meal breaks while working; and

iii. Instituting a Retraining and Rebranding initiative to position EMS and Fire as equally respected First Responders that includes a public relations campaign to educate the FDNY and the public on the work of EMS, allowing EMS access to the Department's press office, including EMS equally in press and publicity efforts by the FDNY and equal ceremonial recognition.

2. Direct Defendant to appoint an agreed-upon independent monitor to review the Defendant's compliance with the above and to ensure non-discriminatory employment policies and practices and to initiate and to further investigate enforcement of any additional orders of this Court with respect to equitable and curative relief and to report on its findings;

C. Issue a Declaratory Judgment finding that Defendant discriminated against Plaintiffs in violation of Title VII, New York State Human Rights Law, and New York City Human Rights Law;

D. Award Plaintiffs back pay and appropriate front pay together with all other benefits and workplace accommodations to which Plaintiffs are entitled, with prejudgment interest;

E. Award Plaintiffs compensatory damages;

F. Award Plaintiffs reasonable attorneys' fees, expenses and costs of this proceeding; and

G. Such other and further relief as this Court deems just and proper.

Date:   December 6, 2022
        New York, NY

Yetta G. Kurland, Esq. (YK-1251)
THE KURLAND GROUP
*Attorneys for Plaintiffs*
85 Broad Street, 28th Floor
New York, New York 10004
(212) 253-6911 (t)
(212) 614-2532 (f)
kurland@kurlandgroup.com