USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: _03/04/2024_

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

LOCAL 2507, UNIFORMED EMTs, PARAMEDICS & FIRE INSPECTORS, Individually and on behalf of its current and former members; LOCAL 3621, EMS OFFICERS UNION, Individually and on behalf of its current and former members; NYC EMS SUPERIOR OFFICERS ASSOCIATION, Individually and on behalf of its current and former members; TONYA BOYD, CHRISTELL CADET, MARK CARRASQUILLO, LIZETTE CLARO, BEVERLY COBB, ALI COUTARD, SENCIA DATILUS, LAITRICE EDWARDS, ALICIA ELKADI, RONALD FLOYD, KAHLIA GRAHAM, RICHARD GUZMAN, MAGGIE HOPE, JASMIN HOWARD, ANGELA JONES, RAVIVARMAN KAILAYANATHAN, MELANIE MORENO-KETCHUM, JENELLE PIERRE, SIMONE QUASHIE, JASON SAFFON, ALLISON SHAUGHNESSY, LAURA TORRES, ANDRE VALDEZ, LANCE WINFIELD, RONALD WOLFE, MARYLOU AURRICHIO on behalf of themselves and all other similarly-situated individuals,

Plaintiffs,

v.

CITY OF NEW YORK on behalf of the Fire Department of the City of New York,

Defendant.

22 Civ. 10336

**ORDER**

ANALISA TORRES, District Judge:

Plaintiffs, current and former members of the Emergency Medical Services ("EMS") Bureau of the Fire Department of the City of New York (the "FDNY") and their representative unions (collectively, "EMS First Responders"), bring this putative class action against Defendant, City of New York (the "City"), alleging discriminatory pay practices, suppression of wages, and denial of employment opportunities on the basis of sex, gender, and/or race, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-1 et seq. ("Title VII"), the New York State Human Rights Law, New York Executive Law § 290, et seq. (the

"NYSHRL"), and the New York City Human Rights Law, N.Y.C. Admin. Code § 8-101 *et seq.* (the "NYCHRL"). Compl. ¶¶ 1–2, ECF No. 16.[1] The City moves to dismiss the complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).[2] Def. Mot., ECF No. 65; *see* Def. Mem., ECF No. 67. For the reasons stated below, the motion is DENIED.

## BACKGROUND[3]

I.  Factual Background

In 1996, the City, by executive order, transferred ambulance and pre-hospital emergency medical services "from New York City Health and Hospitals Corporation to the FDNY to create an integrated municipal agency of first responders." Compl. ¶ 49. Since then, the "FDNY has functioned as an integrated [d]epartment maintaining two [b]ureaus of first responders—EMS, and Fire." *Id.* The Fire Bureau ("Fire") employs firefighters, their supervisors, and their commanding officers ("Fire First Responders"). *Id.* ¶ 50. The EMS Bureau ("EMS") employs emergency medical technicians ("EMTs") and paramedics, as well as their supervisors and commanding officers.[4] *Id.* ¶¶ 7–9. Plaintiffs claim that the "core of the work of EMS . . . and Fire First Responders is the same," *id.* ¶ 52, and their jobs "are substantially equal in the required skill, effort, responsibility, and working conditions," *id.* ¶ 53. The City, however, pays EMS

---

[1] Plaintiffs filed the class action complaint on December 6, 2022. ECF No. 1. On December 20, 2022, Plaintiffs refiled their complaint with corrected exhibits. ECF No. 16; *see* ECF No. 14 (request to refile complaint). This order cites the refiled complaint and exhibits at ECF No. 16.

[2] The City also moves to dismiss Plaintiffs' Section 1983 claim "to the extent Plaintiffs allege [such] a claim." Def. Mem. at 27, ECF No. 67. Because Plaintiffs have not alleged a Section 1983 claim, Pls. Opp. at 25, ECF No. 85, this argument is moot.

[3] The facts in this section are taken from the complaint or documents attached to the complaint and "are presumed to be true for purposes of considering a motion to dismiss for failure to state a claim." *Fin. Guar. Ins. Co. v. Putnam Advisory Co., LLC*, 783 F.3d 395, 398 (2d Cir. 2015); *see Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002).

[4] The EMTs and paramedics are represented by Local 2507, Uniformed EMTs, Paramedics & Fire Inspectors. Compl. ¶ 7. Lieutenants and captains in EMS are represented by Local 3621, EMS Officers Union. *Id.* ¶ 8. And deputy chiefs and division chiefs and commanders are represented by the NYC EMS Superior Officers Association. *Id.* ¶ 9. The putative class includes all EMS employees and their unions, regardless of race, sex, or gender. *Id.* ¶ 139.

2

First Responders—who are "predominantly non-white" and consist of a "significantly larger percentage of women"—substantially lower salaries than Fire First Responders, who are "almost exclusively male and overwhelmingly white." Compl. ¶ 54.

### A. Duties, Hazards, and Working Conditions

EMS and Fire First Responders share the same principal duty of "rapidly respond[ing] to emergencies to save lives." Compl. ¶ 52. Both EMS and Fire First Responders respond to both medical and fire emergencies. Compl. ¶ 63. Their responsibilities do differ: EMS First Responders do not extinguish structural fires, and Fire First Responders do not provide advanced lifesaving care. Sanchez Decl. ¶ 13, ECF No. 16-9. Today, however, the vast majority of emergencies to which the FDNY responds are medical. For example, in 2020, FDNY First Responders responded to 273,800 medical calls and 2,252 confirmed fires. Compl. ¶ 59.

"With the decline in structural fires and the rise of mass casualty events like September 11, 2001 and the COVID-19 pandemic," EMS and Fire First Responders "provide an interrelated web of highly advanced emergency services that address the[se] complex public safety and mass casualty" crises. *Id.* ¶ 50. Anthony Sanchez, a Fire First Responder who submitted a declaration with Plaintiffs' complaint, states that in the field, EMS and Fire First Responders "work together collaboratively to rescue and protect" with "overlap[ping]" and "interdependent" duties. Sanchez Decl. ¶ 13. "For example, a [f]irefighter may bring a rescue [p]aramedic up onto a ladder to perform advance[d] lifesaving services during a fire." *Id.* EMS and Fire First Responders who work internally at FDNY headquarters, managing "operations, training, recruitment, and dispatch, . . . have the same responsibilities[,] . . . [and are] assigned to the same units." Compl. ¶ 64. Further, at the officer level, EMS and Fire officers supervise both EMS and Fire First Responders depending on the task being performed. Boyd Decl. ¶ 5, ECF No. 16-

3

8. If an EMS First Responder is providing non-medical care, they are supervised by a Fire officer. *Id.* Likewise, "if a firefighter is providing medical care they are supervised by an EMS [o]fficer." *Id.*

The hazards faced by EMS First Responders are substantially the same, if not more dangerous, than those faced by Fire First Responders. "Hazmat-certified EMS First Responders enter hazardous material environments, which include burning buildings." *Id.* ¶ 63 n.6. One Plaintiff "risked her life providing medical assistance to a [] [f]irefighter on the fire floor of a burning building where he had been struck by a falling beam and unable to leave." *Id.* ¶ 113. In addition, EMS First Responders face being "attacked by patients, exposed to infectious pathogens," *id.*, and other dangerous situations, including entering unsafe buildings, homes in the throes of violence, and places where firearms and other dangerous weapons are located, *id.* ¶¶ 66 & n.7, 113, 119, 124.[5]

Concerning their respective working conditions, EMS First Responders work twelve-hour shifts and "can be mandated to work another [four-]hour shift." Greco Decl. ¶ 13, ECF No. 16-7. They do not "receive lunch breaks or dinner breaks," but are provided a twenty-minute bathroom break. *Id.* On average, in an eighteen-hour window, EMS First Responders respond to "emergencies or [are] otherwise working at least 17 of those hours." *Id.* By contrast, at one of the City's busiest fire stations, during a twenty-four-hour shift, Fire First Responders have at least eight hours "to rest, relax, enjoy meals and even recreational activities." Sanchez Decl. ¶ 12.

---

[5] Plaintiffs allege that the risks faced by EMS First Responders have further increased; since 2022, they have been "assigned the responsibilities formerly assigned to members of the New York Police Department to provide a response and care to patients in need of acute mental health care." *Id.* ¶ 77.

4

B. Training

EMS First Responders "undergo more training and have higher requirements regarding skill and responsibility" than Fire First Responders. *Id.* ¶ 53. "Training to become an EMT is a [three-]month intensive program covering a wide range of medical and non-medical emergency training." Greco Decl. ¶ 4. Paramedic training is a "full-time [nine-]month program which includes daily lectures from medical doctors, clinical rotations in a hospital, written exams every week and extensive training in advance[d] medical care." Sanchez Decl. ¶ 6. Paramedic applicants must then "sit for a New York State Paramedic Exam and the NYC REMAC licensing exam[,] which consists of a full day of testing that includes a written exam, practical testing and two oral boards." *Id.* "[T]he education level required to be certified as a [p]aramedic is similar to that of a two[-]year associate's degree." Greco Decl. ¶ 6.

By contrast, "[f]irefighters' training lasts on average approximately 14 weeks," *id.*, which "include[s] physical training and classroom training on building structures and fire extinguishing," Sanchez Decl. ¶ 9, and "medical training to become [c]ertified [f]irst [r]esponders," Compl. ¶ 63 n.6. When the FDNY issues college credit for its first responder trainings, paramedics earn seventy college credit hours, and Fire First Responders receive only twenty-three. Sanchez Decl. ¶ 9.

A candidate for the rank of lieutenant or deputy chief at EMS or Fire must have two years of experience. Boyd Decl. ¶ 8. To become an EMS captain, however, requires four years of experience; whereas a Fire captain requires only two. *Id.*

C. Pay

Although EMS and Fire First Responders have substantial overlap in training and education, share many responsibilities, and face comparable work conditions and hazards, EMS

5

First Responders are paid significantly less. For example, based on salary data from October 2022, an entry-level EMS First Responder is paid a base salary of $39,386, which increases to $59,534 after five years and $68,155 after nine. Compl. ¶¶ 71, 136. By comparison, an entry-level Fire First Responder is paid a base salary of $43,904, which increases to $85,292 after five years. *Id.* ¶ 71. An "EMS officer such as a [d]ivision [c]hief/[c]ommander who is responsible for overseeing all [of] the EMS stations within a borough, responding to mass casualty incidents, and addressing unusual incidents, is currently paid a base salary of $135,053 while her counterpart on the Fire side, who performs substantially equal work in skill, effort, responsibility, and working conditions, is paid a base salary of $235,000." *Id.* ¶ 72. Fire First Responders also "receive more generous overtime, pension, disability, medical, dental, line of duty death, and educational benefits," and are "provided [] state-of-the-art [fire houses] . . . to rest, relax, and have recreation in between calls." *Id.* ¶ 101. Each of the twenty-six named Plaintiffs—seventeen of whom identify as women and twenty-four as non-white—alleges earning a salary that is lower than their Fire First Responder counterpart. *Id.* ¶¶ 112–37.

### D.  City Policies

Plaintiffs argue that "any differences in [their] work . . . do[] not justify the extreme difference in pay." Compl. ¶ 98. Instead, Plaintiffs claim that the differences result from "the pronounced difference in demographics of the two sides of the [FDNY]'s First Responders." *Id.* ¶ 99. "EMS First Responders are at least 55% non-white and approximately 24% female." *Id.* ¶ 56. By contrast, "14% of Fire First Responders are non-white" and "less than 1%" are female." *Id.* Plaintiffs specifically point to three City policies that support their claims of racial and gender discrimination: (1) subjecting "EMS First Responders to civilian pattern percentage increases," despite EMS being recognized as uniformed personnel; (2) steering "women and

people of color away from the Fire side and towards the EMS side of the [FDNY]"; and (3) failing to adequately monitor pay discrepancies between EMS and Fire First Responders. *Id.* ¶¶ 87–89, 100, 104.

II.     Procedural History

On September 4, 2019, Plaintiffs filed charges of discrimination with the United States Equal Employment Opportunity Commission (the "EEOC"). *Id.* ¶ 38; ECF No. 16-1. On December 22, 2021, the EEOC issued a formal determination, finding that (1) "workloads, working conditions, training, and risks to EMS First Responders and Firefighters are comparable, with a substantial degree of overlapping duties"; (2) EMS and Fire First Responders have "comparable accountability and responsibility"; (3) "any difference in duties between the EMS First Responders and [f]irefighters fails to explain the pronounced gap in wages"; (4) the City has "failed to adjust the pay scales of EMS First Responders to keep pace with the changes to their duties since the City merged EMS with the Fire Department in 1996"; and (5) the City "improperly treat[s] and compensate[s] EMS First Responders as civilians, when they are uniformed personnel." ECF No. 16-2 at 2.

On June 7, 2022, after "efforts to conciliate" the charges failed, the EEOC "forward[ed] the case[] to the Department of Justice for litigation review." ECF No. 16-3. On November 1, 2022, the Department of Justice issued a notice of right to sue. ECF No. 16-4. On December 6, 2022, Plaintiffs filed its class action complaint in this action, ECF No. 1, asserting causes of action for discriminatory pay practices, suppressed wage of a segregated workforce, and discriminatory employment practices, each in violation of Title VII, the NYSHRL, and the

NYCHRL. Plaintiffs assert a disparate-treatment theory and a disparate-impact theory for each claim.[6]  Compl. ¶ 156(a).

Defendant moves to dismiss the complaint, arguing that Plaintiffs' claims are partially time-barred, and that Plaintiffs have failed to allege a similarly situated comparator in support of their disparate-treatment theory or a facially neutral policy in support of their disparate-impact theory.  Def. Mem. at 2.

## LEGAL STANDARD

To survive a motion to dismiss under Rule 12(b)(6), a complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  A complaint is properly dismissed where, as a matter of law, "the allegations in a complaint, however true, could not raise a claim of entitlement to relief." *Twombly*, 550 U.S. at 558.  The Court must assume all well-pleaded facts to be true, "drawing all reasonable inferences in favor of the plaintiff." *Koch v. Christie's Int'l. PLC*, 699 F.3d 141, 145 (2d Cir. 2012).  That tenet, however, does not apply to legal conclusions. *Iqbal*, 556 U.S. at 678.  Pleadings that offer only "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555.

---

[6] Both theories are cognizable for each of Plaintiffs' claims. *See United Prob. Officers Ass'n v. City of New York*, No. 21 Civ. 218, 2022 WL 875864, at *5–6, 8 (S.D.N.Y. Mar. 24, 2022) (holding that a suppression of wages claim "can be plausibly read to state either a disparate treatment claim . . . or a disparate impact claim"); *United States v. City of New York*, 713 F. Supp. 2d 300, 316–18 (S.D.N.Y. 2010) (noting that workforce segregation allegations may support a pattern-or-practice disparate-treatment claim) (citing *Loyd v. Phillips Bros., Inc.*, 25 F.3d 518, 524 n. 4 (7th Cir. 1994)); *see also Fitchett v. City of New York*, No. 18 Civ. 8144, 2021 WL 964972, at 21–22 (S.D.N.Y. Mar. 15, 2021) (holding that the same framework applies to NYSHRL claims).

**DISCUSSION**

I.     Statute of Limitations

The City argues that Plaintiff's claims are partially time-barred. In New York, a Title VII "claimant must make [an] EEOC filing within 300 days of the alleged discriminatory conduct"; failure to do so renders any such claim time-barred. *Williams v. N.Y.C. Hous. Auth.*, 458 F.3d 67, 69 (2d Cir. 2006) (citing 42 U.S.C. § 2000e–5). Claims under the NYSHRL and the NYCHRL are governed by a three-year statute of limitations. *See Kassner v. 2nd Ave. Delicatessen Inc.*, 496 F.3d 229, 238 (2d Cir. 2007). The statute of limitations, however, is tolled by the filing of a complaint with the EEOC. *See Humphreys v. N.Y.C. Health & Hosps. Corp.*, No. 16 Civ. 9707, 2018 WL 3849836, at *3 (S.D.N.Y. Aug. 10, 2018) (collecting cases).

Plaintiffs bring pay discrimination claims. Pay discrimination is a discrete act that occurs each time an individual is paid wages that have been lowered as a result of a discriminatory practice or decision. *See Davis v. Bombardier Transp. Holdings (USA) Inc.*, 794 F.3d 266, 269 (2d Cir. 2015); 42 U.S.C. § 2000e-5(e)(3)(A). Title VII disparate-treatment and disparate-impact claims based on "[d]iscrete acts" that "fall outside the limitations period[] cannot be brought . . . even when undertaken pursuant to a general policy that results in other discrete acts occurring within the limitations period." *Chin v. Port Authority of N.Y. & N.J.*, 685 F.3d 135, 157 (2d Cir. 2012). As such, an "allegation of an ongoing discriminatory policy does not extend the statute of limitations where the individual effects of the policy that give rise to the claims are merely discrete acts." *Id.*; *see Toussaint v. City of New York*, No. 19 Civ. 1239, 2020 WL 3978317, at *3 (S.D.N.Y. June 29, 2020).[7] Therefore, any Title VII claims based on conduct that predates November 8, 2018—300 days before the EEOC filing—are untimely, as are any NYSHRL and

---

[7] Plaintiffs do not assert claims under the continuing violation doctrine. *See* Pl. Opp. at 7, ECF No. 85.

NYCHRL claims arising from conduct that occurred prior to September 4, 2016, three years before Plaintiffs filed the EEOC complaint.

Plaintiffs' proposed class is circumscribed, defining the class as all "people employed by the City of New York in the EMS Bureau . . . as of the commencement of this action and at any time during the preceding three-year period." Compl. ¶ 139; *see Barrett v. Forest Lab'ys, Inc.*, 39 F. Supp. 3d 407, 459–60 (S.D.N.Y. 2014); 4 *Larson on Employment Discrimination* § 72.08[6]. Defendant does not point to any discrete acts or allegations that fall outside the governing statutes of limitations. Def. Mem. at 9. The Court, therefore, concludes that the class's claims are timely under Title VII, the NYSHRL, and the NYCHRL.

II.     Title VII and NYSHRL Disparate-Treatment Claims

Claims of disparate treatment under Title VII and NYSHRL are analyzed under the same substantive standards of the *McDonnell Douglas* burden-shifting framework. *Vivienzo v. City of Syracuse*, 611 F.3d 98, 106 (2d Cir. 2010) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)); *Ben-Levy v. Bloomberg*, 518 F. App'x 17, 18 (2d Cir. 2013) (summary order) (NYSHRL).[8] To establish a prima facie case of discrimination under *McDonnell Douglas*, Plaintiffs must demonstrate that they (1) are members of a protected class; (2) are qualified for their positions; and (3) suffered an adverse employment action; which (4) took place under circumstances giving rise to the inference of discrimination. *Ruiz v. County of Rockland*, 609 F.3d 486, 491–92 (2d Cir. 2010).

To survive a motion to dismiss, the complaint "must be facially plausible and allege sufficient facts to give the defendant fair notice of the basis for the claim; it need not,

---

[8] "Claims brought under the NYSHRL are analytically identical to those brought under Title VII." *Hagan v. City of New York*, 39 F. Supp. 3d 481, 503 (S.D.N.Y. 2014); *accord Rojas v. Roman Cath. Diocese of Rochester*, 660 F.3d 98, 107 n.10 (2d Cir. 2011), *and Gordon v. City of New York*, No. 14 Civ. 6115, 2016 WL 4618969, at *7 (S.D.N.Y. Sept. 2, 2016).

however, make out a prima facie case," *Brown v. Daikin Am. Inc.*, 756 F.3d 219, 228 n.10 (2d Cir. 2014), although the elements of a prima facie case "provide an outline of what is necessary" to render such claims plausible. *Kassman v. KPMG LLP*, 925 F. Supp. 2d 453, 461 (S.D.N.Y. 2013) (citation omitted). At this stage, "a plaintiff has a *minimal* burden of alleging facts suggesting an inference of discriminatory motivation." *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 85 (2d Cir. 2015) (quotation marks and citation omitted).

Plaintiffs can raise an inference of discriminatory intent by showing "more favorable treatment of employees not in the protected group." *Leibowitz v. Cornell Univ.*, 584 F.3d 487, 502 (2d Cir. 2009) (citation omitted). In such cases, they must "show that [they] shared sufficient employment characteristics with the comparator so that they could be considered similarly situated in all material respects." *McDowell v. N. Shore-Long Island Jewish Health Sys., Inc.*, 839 F. Supp. 2d 562, 568 (E.D.N.Y. 2012). This does not require "a showing that both cases are identical." *Graham v. Long Island R.R.*, 230 F.3d 34, 40 (2d Cir. 2000). Rather, Plaintiffs need only allege facts demonstrating the two groups are "sufficiently similar 'to support at least a minimal inference that the difference of treatment may be attributable to discrimination.'" *McDowell*, 839 F. Supp. 2d at 569 (quoting *McGuinness v. Lincoln Hall*, 263 F.3d 49, 54 (2d Cir. 2001)).

      A.     Use of Fire First Responders as Comparators

Plaintiffs raise an "atypical discrimination claim" in that they "do[] not rely on a comparator group of [non-minority] 'co-employees.'" *Hill v. City of New York*, 136 F. Supp. 3d 304, 335 (E.D.N.Y. 2015). Rather, Plaintiffs allege that the City's discriminatory intent can be inferred from the fact that the predominantly minority EMS First Responders are paid significantly lower salaries than Fire First Responders with comparable job titles and

functions—who are also likelier to be white and male. Compl. ¶¶ 54, 70–75. Plaintiffs' and their comparators' circumstances must bear a "reasonably close resemblance"; they need not be "identical." *Brown*, 756 F.3d at 230.

The City argues that Plaintiffs have failed to plausibly allege an inference of discrimination to support their disparate-treatment claim because their chosen comparators, Fire First Responders, are not sufficiently similar to Plaintiffs. Def. Mem. at 11–17. The Court disagrees.

It is well-established that "'[w]hether . . . employees are similarly situated . . . presents a question of fact,' rather than a legal question to be resolved on a motion to dismiss." *Brown*, 756 F.3d at 230 (citing *Graham*, 230 F.3d at 39); *see also Woods v. Newburgh Enlarged City Sch. Dist.*, 288 Fed. App'x 757, 760 (2d Cir. 2008) (noting it is "a rare case" where the similarity of comparators' situations "can be resolved as a matter of law"). In this Circuit, the issue of whether comparators are sufficiently similar is typically resolved at the summary judgment stage at the earliest, following discovery. *E.g., Ulrich v. Moody's Corp.*, No. 13 Civ. 8, 2017 WL 1232709, at *11–12 (S.D.N.Y. Mar. 13, 2017) (ruling on similarity of comparators on motion for summary judgment), *aff'd*, 721 F. App'x 17 (2d Cir. 2018); *Villar v. City of New York*, 135 F. Supp. 3d 105, 121–22 (S.D.N.Y. 2015) (same). To survive a motion to dismiss, Plaintiffs need only allege facts that give "plausible support to a minimal inference of discriminatory motivation." *Vega*, 801 F.3d at 84.

At this early stage of the litigation, the Court finds that Plaintiffs have met that bar. Plaintiffs allege that EMS and Fire First Responders have substantial overlap in their responsibilities and job functions in the field, among headquarters employees, and among the officer ranks. Compl. ¶¶ 52–53, 64; Sanchez Decl. ¶ 13; Boyd Decl. ¶ 5. Further, they

"respond to the same emergencies and work together collaboratively to rescue and protect," Sanchez Decl. ¶ 13, as part of an "interrelated web of highly advanced emergency services," Compl. ¶ 50.  As described above, EMS and Fire First Responders face substantially similar working conditions and hazards, and EMS First Responder training is substantially similar to, if not more rigorous than, the training required of Fire First Responders.  Compl. ¶¶ 66 & n.7, 77, 131, 119, 124.  Drawing all reasonable inferences in Plaintiffs' favor, the Court finds that Plaintiffs have plausibly alleged that EMS and Fire First Responders "work together and in tandem to perform the same function," and are, therefore, similarly situated.  *Hill*, 136 F. Supp. 3d at 335–36 & n.10 (finding, at the motion-to-dismiss stage, that New York City's predominantly minority 911 operators were similarly situated to predominantly non-minority dispatcher units at other city agencies).

It may well be that distinctions between EMS and Fire First Responders will undermine Plaintiffs' case at a later stage of the litigation.  But given the nuances and complexities inherent in a putative class-wide employment discrimination suit, for the Court to accept the City's arguments at this early juncture would amount to "improper fact-finding at the pleading stage."  *Minto v. Molloy Coll.*, No. 16 Civ. 276, 2021 WL 1394329, at *11 (E.D.N.Y. Jan. 21, 2021).  Defendant's motion to dismiss on the ground that Plaintiffs have failed to identify a sufficiently similar comparator group is, therefore, DENIED.

   B. Pattern or Practice

A group of plaintiffs asserting a disparate-treatment claim and "entitled to be certified as a class, may . . . initiate a pattern-or-practice suit."  *United States v. City of New York*, 717 F.3d 72, 82 (2d Cir. 2013).  A "pattern or practice case is not a separate and free-standing cause of action, but is really merely another method by which disparate treatment can be

13

shown." *Id.* at 83. Rather than showing discrimination against an individual employee, "a plaintiff's burden under the pattern-or-practice method requires the plaintiff to prove only the existence of a discriminatory policy." *Chin*, 685 F.3d at 149. To "prevail on a pattern or practice disparate treatment claim, . . . plaintiffs must demonstrate that intentional discrimination was the employer's 'standard operating procedure,'" *Wright v. Stern*, 450 F. Supp. 2d 335, 363 (S.D.N.Y. 2006) (citation omitted)—the "regular rather than the unusual practice," *Int'l Bhd. of Teamsters v. United States*, 431 U.S. 324, 336 (1977). "A statistical showing of disparate impact might suffice." *City of New York*, 717 F.3d at 84. "Statistics are not necessary, however, if a complaint pleads other facts that allow the court to infer a pattern of discrimination." *Barrett*, 39 F. Supp. 3d at 430.

Although Plaintiffs do not plead precise statistical data, each of the twenty-six Plaintiffs have alleged a similarly situated Fire First Responder comparator earning a higher base salary and receiving superior benefits. Compl. ¶¶ 112–37; *see Barrett*, 39 F. Supp. 3d at 431 (denying a motion to dismiss a pattern-or-practice claim when ten of the eleven plaintiffs in a sex-discrimination case had identified a similarly situated "male colleague [that] was paid a higher base salary").

Moreover, circumstantial evidence "permits at least a plausible inference that the disparities in base pay occurred as a result of intentional discrimination." *Id.* at 436. The pay disparity between EMS and Fire First Responders is well-documented. The City concedes that "EMS salaries are significantly lower than firefighter salaries." Compl. ¶ 79. Members of the New York City Council have cited firefighter salaries that are "more than double the EMT rate," calling the disparities "shocking." *Id.* ¶ 82. And the FDNY has a longstanding history of underrepresentation of racial minorities and disparate-treatment and disparate-impact

14

litigation concerning its employment practices. *See City of New York*, 717 F.3d at 77–79 (summarizing this history). In addition, two Plaintiffs, both African-American women, allege being directed to apply to EMS despite inquiring about a Fire First Responder position, one after scoring "98% on the written firefighter exam." Compl. ¶¶ 23, 28, 125, 130.

And most notably, despite being recognized as uniformed personnel, EMS First Responders receive the civilian, and not the uniformed, pattern percentage compensation increase. Compl. ¶ 104. Local Law 19 of 2001, codified as N.Y.C. Admin. Code § 12-307(4), recognizes EMS as part of the uniformed services and grants EMS First Responders the right to bargain directly with the City for the terms and benefits of their employment. *See Mayor of N.Y. v. Council of N.Y.*, 6 Misc. 3d 1022(A), *2, *6 (Sup. Ct. N.Y. Cnty. 2005).[9] The City concedes that EMS First Responders receive the civilian pattern increase, Def. Reply at 12, but argues that their status as uniformed employees merely affords them the procedural right "to bargain directly with the City," and does not confer upon them any specific contract terms or benefits. Def. Mem. at 21; *see id.* at 21–23. But, pattern percentage increases are "across-the-board increase[s] for all titles" and are not the result of collective-bargaining negotiations between the City and individual employee unions. Pls. Mem. at 19. Plaintiffs allege that the City maintains two rates, a lower civilian rate and a higher uniformed rate. *Id.* There is no dispute that being "uniformed" does not confer on Plaintiffs specific contractual rights or a predetermined contractual outcome. However, the City's alleged refusal to pay EMS First Responders the uniformed rate—despite recognizing them as uniformed employees, and paying the uniformed rate to Fire First Responders—raises the specter of discrimination. *See,*

---

[9] The ability to bargain directly with the City is generally reserved for the City's uniformed services and is in contrast to most non-uniformed personnel, who are subject to the Citywide Agreement, which establishes terms and conditions of employment such as overtime and leave rules. *Id.* at *1–*2.

*e.g.*, *Chalmers v. City of New York,* No. 20 Civ. 3389, 2022 WL 4330119, at *20 (S.D.N.Y. Sept. 19, 2022).[10]

A showing that EMS First Responders are treated "less favorably" than "similarly situated" Fire First Responders may give rise to an inference of intentional discrimination. *E.g., Brown,* 756 F.3d at 229–30. Plaintiffs' factual allegations sufficiently demonstrate that this practice is "pervasive," *City of New York,* 717 F.3d at 84, and, therefore, are sufficient to state a plausible pattern-or-practice claim of intentional discrimination. Accordingly, Defendant's motion to dismiss on the ground that Plaintiffs have failed to allege facts which support a disparate-treatment theory is DENIED.

III.   <u>Title VII and NYSHRL Disparate-Impact Claims</u>

Plaintiffs also allege that the City maintains multiple facially neutral practices that result in a disparate impact actionable under Title VII and the NYSHRL. Under Title VII and the NYSHRL, to make a prima facie showing of disparate impact, a plaintiff must "(1) identify a specific employment practice or policy; (2) demonstrate that a disparity exists; and (3) establish a causal relationship between the two." *Chin v. Port Auth. of N.Y. & N.J.*, 685 F.3d 135, 151 (2d Cir. 2012) (quotation marks and citations omitted). Unlike a disparate-treatment claim, a disparate-impact claim "does not require the plaintiff to show that the defendant *intended* to discriminate against a particular group." *Mandala v. NTT Data, Inc.*, 975 F.3d 202, 207 (2d Cir. 2020) (emphasis in original). To survive a motion to dismiss, Plaintiffs must merely allege sufficient facts to support a plausible claim that an employer's

---

[10] "The City ignores the crux of the issue: Plaintiffs allege that [Fire Protection Inspectors ("FPIs")] are unable to negotiate substantial pay increases due to the City's discriminatory treatment of FPIs during collective bargaining, such as by refusing to apply uniformed pattern increases to FPIs . . . and that the FDNY, with its history of racial discrimination, . . . refuses to advocate for higher pay for FPIs during negotiations." *Chalmers*, 2022 WL 4330119, at *20.

facially neutral practice or policy disproportionately and adversely affects a particular protected group.  *Malone v. N.Y. Pressman's Union No. 2*, No. 07 Civ. 9583, 2011 WL 2150551, at *7 (S.D.N.Y. May 31, 2011).

Plaintiffs often rely on statistical evidence to "show a disparity in outcome between groups" and thus "nudge [such a] claim across the line from conceivable to plausible." *Mandala*, 975 F.3d at 209.  At the motion to dismiss stage, Plaintiffs are not required "to prove in detail the methodological soundness of [their] statistical assessment" or to "supplement [the complaint's] statistical analysis with corroborating evidence," but "the statistics must plausibly suggest that the challenged practice *actually* has a disparate impact." *Id*. at 209–10 (emphasis in original).  The statistical analysis must therefore, at minimum, "focus on the disparity between appropriate comparator groups" or "reveal disparities between populations that are relevant to the claim . . . plaintiff[s] seek[] to prove." *Id*. at 210.

As discussed, at this early stage of the litigation, Plaintiffs have plausibly alleged that Fire First Responders are an appropriate comparator group.  *See supra* § II.A.  Moreover, Plaintiffs' analysis, based on publicly available data, demonstrates that on average EMS First Responders are paid lower salaries than Fire First Responders at comparable job grades.  This is corroborated by the City's own statements.

Plaintiffs attribute these disparities to three alleged City policies: a failure to monitor pay disparities between EMS and Fire; a policy of steering women and non-white applicants to lower-paying EMS jobs; and subjugating EMS First Responders to the civilian pattern increase.  Compl. ¶¶ 87–89, 100, 104.

As to the first alleged policy, Plaintiffs have not plausibly alleged that the City fails to monitor pay disparities because the City has acknowledged the pay gap between EMS and Fire

17

First Responders.  *Id.* ¶¶ 78–82.  Second, Plaintiffs' allegation that the City maintains a policy to steer women and non-white applicants to EMS positions is not a facially neutral practice.  Plaintiffs allege that "almost all women who apply and are hired to work for the FDNY ultimately end up on the EMS side of the [FDNY], as do the majority of people of color, even if that is not their initial intention."  *Id.* ¶ 55.  Funneling women and non-white applicants to lower-paying jobs is a non-neutral, overtly discriminatory act—not a neutral policy with a disparate impact.

However, paying EMS First Responders the civilian pattern percentage increase when Fire First Responders receive the uniformed pattern increase is a facially neutral policy that Plaintiffs allege has a disparate impact on compensation.  *See supra* § II.B.  "Of course, were the case to go to trial, [this alleged practice] cannot support both" Plaintiffs' disparate-treatment and disparate-impact claims, as the alleged pay disparities must be "either caused by intentional discrimination or by a facially neutral policy that has a disparate impact."  *Barrett*, 39 F. Supp. 3d at 436–37.  But, because "the Federal Rules of Civil Procedure expressly permit pleading in the alternative," this is not fatal at the motion-to-dismiss stage.  *Id*.

The Court, therefore, finds that Plaintiffs have plausibly alleged that the City's practice of paying EMS First Responders the civilian pattern increase and Fire First Responders the uniformed pattern increase is a facially neutral policy that has disproportionately and adversely affected EMS First Responder' compensation.  At this stage, no further showing is needed, and Defendant's motion to dismiss Plaintiffs' disparate-impact theory is, therefore, DENIED.

## IV. NYCHRL Claims

The Court analyzes Plaintiff's NYCHRL claims "separately and independently" from any federal law claims, "construing the NYCHRL's provisions broadly in favor of discrimination plaintiffs, to the extent that such a construction is reasonably possible." *Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.*, 715 F.3d 102, 109 (2d Cir. 2013) (quotation marks and citation omitted). As the Court has determined that Plaintiffs' federal and state disparate-treatment and disparate-impact claims are sufficiently pleaded to withstand the motion to dismiss, the NYCHRL claims necessarily survive, because "federal . . . civil rights laws [are] a floor below which the City's Human Rights law cannot fall." Local Civil Rights Restoration Act of 2005, N.Y.C. Local Law No. 85 § 1 (Oct. 3, 2005); *see, e.g., Clarke v. InterContinental Hotels Grp., PLC*, No. 12 Civ. 2671, 2013 WL 2358596, at *11 n.13 (S.D.N.Y. May 30, 2013).

## CONCLUSION

For the reasons stated above, Defendant's motion to dismiss is DENIED. The Clerk of Court is directed to terminate the motion at ECF No. 65.

SO ORDERED.

Dated: March 4, 2024
New York, New York

_____
ANALISA TORRES
United States District Judge