USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: __9/24/2024_

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

LOCAL 2507, UNIFORMED EMTs, PARAMEDICS & FIRE INSPECTORS, Individually and on behalf of its current and former members; LOCAL 3621, EMS OFFICERS UNION, Individually and on behalf of its current and former members; NYC EMS SUPERIOR OFFICERS ASSOCIATION, Individually and on behalf of its current and former members; TONYA BOYD, CHRISTELL CADET, MARK CARRASQUILLO, LIZETTE CLARO, BEVERLY COBB, ALI COUTARD, SENCIA DATILUS, LAITRICE EDWARDS, ALICIA ELKADI, RONALD FLOYD, KAHLIA GRAHAM, RICHARD GUZMAN, MAGGIE HOPE, JASMIN HOWARD, ANGELA JONES, RAVIVARMAN KAILAYANATHAN, MELANIE MORENO-KETCHUM, JENELLE PIERRE, SIMONE QUASHIE, JASON SAFFON, ALLISON SHAUGHNESSY, LAURA TORRES, ANDRE VALDEZ, LANCE WINFIELD, RONALD WOLFE, MARYLOU AURRICHIO on behalf of themselves and all other similarly-situated individuals,

      Plaintiffs,

-against-

CITY OF NEW YORK on behalf of the Fire Department of the City of New York,

      Defendant.

22 Civ. 10336 (AT)

**ORDER**

ANALISA TORRES, District Judge:

  Plaintiffs, current and former members of the Emergency Medical Services ("EMS") Bureau of the Fire Department of the City of New York (the "FDNY") and their representative unions, bring this putative class action against Defendant, the City of New York (the "City"), alleging discriminatory pay practices, suppression of wages, and denial of employment opportunities on the basis of sex, gender, and/or race, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-1 *et seq.* ("Title VII"); the New York State Human Rights Law,

New York Executive Law § 290 *et seq.* (the "NYSHRL"); and the New York City Human Rights Law, N.Y.C. Admin. Code § 8-101 *et seq.* (the "NYCHRL"). Compl. ¶¶ 1–2, ECF No. 16.

Before the Court is Plaintiffs' motion to certify a class and subclasses and appoint class counsel. Pl. Mot, ECF No. 118; Pl. Mem., ECF No. 120; *see also* Def. Mem., ECF No. 137. For the reasons stated below, the motion is GRANTED.[1]

## BACKGROUND

I. Plaintiffs' Allegations

In 1996, the City, by executive order, transferred ambulance and pre-hospital emergency medical services "to the FDNY to create an integrated municipal agency of first responders." Compl. ¶ 49. Since then, the FDNY has "functioned as an integrated [d]epartment maintaining two Bureaus of first responders—EMS[] and Fire." *Id.* The Fire Bureau employs firefighters, their supervisors, and their commanding officers, collectively referred to as "Fire First Responders." The EMS Bureau employs emergency medical technicians ("EMTs") and paramedics, as well as their supervisors and commanding officers, collectively referred to as "EMS First Responders." *See id.* ¶¶ 7–9. Plaintiffs claim that the core of the work of EMS and Fire First Responders is the same, *id.* ¶ 52, and that the jobs "are substantially equal in the required skill, effort, responsibility, and working conditions," *id.* ¶ 53. Plaintiffs allege, however, that the City pays EMS First Responders substantially lower salaries than it does Fire First Responders. *Id.* ¶ 54. Fire First Responders also "receive more generous overtime, pension, disability, medical, dental, line of duty death, and educational benefits." *Id.* ¶ 101. Plaintiffs claim that the differences in compensation result from "the pronounced difference in demographics" between EMS and Fire First Responders: While EMS First Responders are "at

---

[1] The Court addresses the parties' motions to exclude expert testimony in a concurrently filed order. *See* ECF No. 173.

least 55% non-white and approximately 24% female," only "14% of Fire First Responders are non-white" and "less than 1%" are female. *Id.* ¶¶ 56, 99.

II. Procedural History

Plaintiffs filed their class action complaint on December 6, 2022. ECF Nos. 1, 14, 16. The City moved to dismiss the complaint, arguing that Plaintiffs' claims were partially time-barred and that Plaintiffs failed to allege a similarly situated comparator in support of their disparate-treatment theory or a facially neutral policy in support of their disparate-impact theory. ECF No. 67 at 2. The Court denied the City's motion, finding that the claims were timely and that Plaintiffs sufficiently pleaded their discrimination claims. *Local 2507 v. City of New York*, No. 22 Civ. 10336, 2024 WL 916520 (S.D.N.Y Mar. 4, 2024), ECF No. 139.

On November 20, 2023, Plaintiffs moved for class certification and to exclude the testimony of the City's expert, Michael A. Campion, Ph.D. *See* Pl. Mot.; Pl. Mem. The City opposed Plaintiffs' certification motion and moved to exclude the testimony of Plaintiffs' experts, Ronald S. Landis, Ph.D., and Brian J. Maguire, Ph.D. Def. Mot., ECF No. 136; Def. Mem.

**DISCUSSION**

Plaintiffs seek to certify a class under Federal Rule of Civil Procedure 23(b)(3) of "[a]ll persons employed by the City of New York in the EMS Bureau of the New York City Fire Department in the titles of Emergency Medical Technician, Paramedic, Lieutenant, Captain, Deputy Chief, [and] Division Commander/Chief as of the commencement of this action and at any time during the preceding three-year period" (the "Class"). Compl. ¶ 139; Pl. Mem. at 4. Plaintiffs also seek to certify two subclasses under Rule 23(b)(3). Pl. Mem. at 30. The first subclass comprises all members of the Class "who identify as non-white" (the "Race Subclass").

3

*Id.* The second subclass comprises all members of the Class "who identify as female" (the "Sex/Gender Subclass," and together with the Race Subclass, the "Subclasses"). *Id.*

I. Legal Standard

To be certified under Rule 23(b)(3), a proposed class must satisfy the numerosity, commonality, typicality, and adequacy requirements of Federal Rule of Civil Procedure 23(a), as well as the predominance and superiority requirements of Rule 23(b)(3). *In re Petrobras Sec.*, 862 F.3d 250, 260 (2d Cir. 2017). The members of the proposed class must also be ascertainable "by reference to objective criteria." *Stinson v. City of N.Y.*, 282 F.R.D. 360, 367 (S.D.N.Y. 2012). Plaintiffs must meet each of the Rule 23(a) and 23(b)(3) requirements by a preponderance of the evidence. *Petrobras*, 862 F.3d at 260.

II. Application

A. Numerosity and Ascertainability

A proposed class is sufficiently numerous if "joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). It is not necessary that Plaintiffs demonstrate the exact size of the proposed class or the identities of all class members; rather, the Court must make a factual finding as to the approximate size of the class and determine whether it meets the legal standard governing numerosity. *Robinson v. N.Y. City Transit Auth.*, 19 Civ. 1404, 2020 WL 5814189, at *4 (S.D.N.Y. Sept. 30, 2020). A proposed class with more than forty members presumably satisfies the numerosity requirement. *Id.* (citing *Consol. Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir. 1995)).

The City does not contest that the Class and Subclasses satisfy Rule 23(a)'s numerosity requirement. Def. Mem. at 35. Plaintiffs represent that the Class has approximately 4,500–5,000 members, extrapolating from their expert's analysis of pre-2023 City employment data covering

4,271 EMS First Responders.  Pl. Mem. at 30 (citing Landis Report at 7–8, ECF No. 119-2).  As to the Subclasses, because Landis found that 56.85% of EMS First Responders were non-white, the number of Race Subclass members is approximately 2,560–2,840.  *See id.*; Landis Report at 8.  Similarly, Landis found that 26.06% of EMS First Responders were female, resulting in the Sex/Gender Subclass numbering approximately 1,170–1,300.  *See* Pl. Mem. at 30; Landis Report at 9.  These figures, although estimates, are more than sufficient to satisfy Rule 23(a)'s numerosity requirement.  *See Robinson*, 2020 WL 5814189, at *4–5.

Although it is not explicitly stated in Rule 23(a), "[t]here is [also] an implied requirement that the membership of the class [be] identifiable and ascertainable."  *Flores v. Anjost Corp.*, 284 F.R.D. 112, 121 (S.D.N.Y. 2012) (citation omitted).  "An identifiable class exists if its members can be ascertained by reference to objective criteria."  *Stinson*, 282 F.R.D. at 367 (citation omitted).  The City does not contest that members of the Class and Subclasses are readily identifiable and ascertainable.  Def. Mem. at 35.  Relying on the City's employment and pay records, the parties and the Court may identify and ascertain all members of the Class and Subclasses "by reference to objective criteria."  *Stinson*, 282 F.R.D. at 367.

The Court therefore finds that the Class and Subclasses satisfy the numerosity and ascertainability requirements.

B.     Commonality, Predominance, and Typicality

Commonality requires that the action present at least one question capable of generating a "common answer[] apt to drive the resolution of the litigation."  *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011) (citation and emphasis omitted); *id.* at 359 ("Even a single common question will do." (cleaned up)).  The commonality standard does "not mandate that the claims of the lead plaintiff be identical to those of all other plaintiffs."  *Lapin v. Goldman Sachs & Co.*,

5

254 F.R.D. 168, 176 (S.D.N.Y. 2008). Rather, it "require[s] that plaintiffs identify some unifying thread among the members' claims that warrants class treatment." *Damassia v. Duane Reade, Inc.*, 250 F.R.D. 152, 156 (S.D.N.Y. 2008) (quoting *Bolanos v. Norwegian Cruise Lines Ltd.*, 212 F.R.D. 144, 153 (S.D.N.Y. 2002)) (alteration omitted). The commonality requirement is satisfied where plaintiffs show that their alleged injuries "derive from a unitary course of conduct by a single system." *See Marisol A. v. Giuliani*, 126 F.3d 372, 377 (2d Cir. 1997); *see also Chen-Oster v. Goldman, Sachs & Co.*, 325 F.R.D. 55, 72 (S.D.N.Y. 2018) (explaining that plaintiffs may satisfy commonality by offering "'significant proof' that the employer 'operated under a general policy of discrimination'" (quoting *Dukes*, 564 U.S. at 353)).

In actions where plaintiffs seek to certify a class under Rule 23(b)(3), the Court must find that common questions of law or fact "predominate over any questions affecting only individual members." Fed. R. Civ. P. 23(b)(3). The predominance standard is "more demanding" than the commonality requirement of Rule 23(a). *In re LIBOR–Based Fin. Instruments Antitrust Litig.*, 299 F. Supp. 3d 430, 462 (S.D.N.Y. Feb. 28, 2018) (quoting *Johnson v. Nextel Commc'ns Inc.*, 780 F.3d 128, 138 (2d Cir. 2015)). A proposed class satisfies predominance "if resolution of some of the legal or factual questions that qualify each class member's case as a genuine controversy can be achieved through generalized proof, and if these particular issues are more substantial than the issues subject only to individualized proof." *Moore v. PaineWebber, Inc.*, 306 F.3d 1247, 1252 (2d Cir. 2002); *see also In re LIBOR*, 299 F. Supp. 3d at 462 ("The predominance requirement calls only for predominance, not exclusivity, of common questions." (alteration omitted) (quoting *In re Visa Check/MasterMoney Antitrust Litig.*, 280 F.3d 124, 140 (2d Cir. 2001)). "When one or more of the central issues in the action are common to the class and can be said to predominate, the action may be considered proper under Rule 23(b)(3) even

6

though other important matters will have to be tried separately, such as damages[.]" *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 453 (2016) (citation omitted).

"Typicality requires that the claims of the class representatives be typical of those of the class, and is satisfied when each member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability." *Elisa W. v. City of New York*, 82 F.4th 115, 128 (2d Cir. 2023) (citation omitted). "[W]here the claims of a class stem from a single course of conduct, 'the commonality and typicality requirements of Rule 23(a) tend to merge.'" *Id.* (quoting *Dukes*, 564 U.S. at 349 n.5).

Here, Plaintiffs contend that they have alleged a "unitary" course of conduct in the form of three "centralized" discriminatory policies and practices that apply to all Class and Subclass members equally. Pl. Reply at 8–9, ECF No. 144 (citing *Clark v. City of New York*, 2021 WL 603046, at *3 (S.D.N.Y. Feb. 16, 2021)); Pl. Mem. at 31, 35–36. Plaintiffs claim that the City (1) has failed to assess whether FDNY's Fire and EMS First Responders are similarly situated for purposes of compensation; (2) as a result, has failed to ensure that the occupational segregation of EMS and Fire First Responders does not disparately impact the compensation of protected groups; and (3) has taken affirmative steps to suppress the compensation of the more diverse EMS First Responder workforce by refusing to grant EMS personnel the "uniformed" pattern increase in collective bargaining. Pl. Mem. at 31–32; Pl. Reply at 3. In response, the City addresses the Rule 23(a) and (b)(3) commonality, predominance, and typicality requirements as one, contending that the Class and Subclasses fail to satisfy each requirement for the same reasons. *See* Def. Mem. at 36–40.

The City argues first that the Class and Subclasses fail because they do not account for differences in job duties and responsibilities among EMS First Responders. *Id.* at 37–38.

7

Although some EMS First Responders respond to calls in the field, others work in dispatch or training and instruction. *Id.* Even among "field-assigned" EMS First Responders, there are differences; some, such as Haz-Tac EMTs/Paramedics and Rescue Medics, receive special training, perform advanced services, and receive a percentage increase in salary to account for their additional training and responsibility. *Id.* at 6, 37–38. The City argues that these differences, along with distinctions of rank and tenure among EMS First Responders, undermine the Class and Subclasses' commonality and the Plaintiffs' typicality. *Id.* at 38.

The Court is not persuaded that distinctions of rank or responsibility destroy the common questions applicable to all class members. Rule 23 "does not require that all class members' circumstances be identical, so long as their claims can be proven or disproven on a classwide basis." *Houser v. Pritzker*, 28 F. Supp. 3d 222, 243 (S.D.N.Y. 2014). As stated, Plaintiffs claim that the City has taken actions or failed to take actions in a centralized manner and on a Bureau-wide scale, uniformly suppressing the compensation of EMS First Responders regardless of rank, tenure, title, training, or assignment. Whether the policies that Plaintiffs describe exist and violate federal and state law are questions common to all class members, even if other issues such as class members' damages may differ depending on factors such as rank, title, training, or tenure. *Clark*, 2021 WL 603046, at *4 (citing *Marisol A.*, 126 F.3d at 377); *see also Robinson*, 2020 WL 5814189, at *5.

For the same reason, the lead plaintiffs do not fail the typicality requirement simply because they include both field-assigned and non-field-assigned, supervising and non-supervising, and instructional and non-instructional EMTs, Paramedics, Haz-Tac, and Rescue EMS First Responders. Def. Mem. at 38 n.18. All allege that they are paid less than their Fire counterparts due to the same policies such that their claims "arise from the same series of events

8

and find support in the same legal theories as the claims of all of the remaining class members." *Houser*, 28 F. Supp. 3d at 245. Whether a lead plaintiff is "an EMT and a Dispatcher" or a "Lieutenant and a Haz-Tac Instructor," Def. Mem. at 38 n.18, he or she has the same "incentive to prove all the elements of the cause of action" as any other class member, *Houser*, 28 F. Supp. 3d at 245 (citation omitted); *see also Caridad v. Metro–N. Commuter R.R.*, 191 F.3d 283, 293 (2d Cir. 1999)), *called into question on other grounds by In re IPO*, 471 F.3d 24 (2d Cir. 2006).

The City argues that Plaintiffs also cannot satisfy commonality or predominance because they have not made a prima facie showing that EMS and Fire First Responders are adequate comparators for Title VII purposes. Def. Mem. at 40. The City's argument, in essence, invites the Court to convert Plaintiffs' class certification motion into a motion for summary judgment. But Rule 23 "does not grant the Court license to engage in 'free-ranging merits inquiries.'" *Hill v. City of New York*, 136 F. Supp. 3d 304, 352 (E.D.N.Y. 2015) (quoting *Amgen Inc. v. Conn. Ret. Plans & Trust Funds*, 568 U.S. 455, 466 (2013)). Rather, "merits questions are to be considered only 'to the extent that they are relevant' to the [Rule 23] inquiry." *Id.* (quoting *Amgen Inc.*, 568 U.S. at 466).

In this case, Plaintiffs have provided "significant proof" that predominantly "common answers will be determined via [the] class action approach," notwithstanding Plaintiffs' ultimate success or failure on the merits. *Dukes*, 564 U.S. at 353; *Hill*, 136 F. Supp. 3d at 353 (citation omitted). In support of their disparate impact claims, Plaintiffs offer statistical evidence of racial, sex/gender, and compensation disparities among EMS and Fire First Responders. *See* Landis Report at 3. The City does not dispute the statistical evidence. *See* Def. Mem. at 23. Plaintiffs offer further evidence, including declarations, lay and expert witness testimony, an Equal Employment Opportunity Commission determination, and the City's own statements, all

9

of which indicate that the City has "applied a set of practices and policies uniformly across the class as part of an overarching pattern of discrimination." *Hill*, 136 F. Supp. 3d at 354 (emphasis omitted); *see, e.g.*, Pl. Mem. at 8, 9 n.7, 16–17; Landis Report at 7. At least one of the policies Plaintiffs seek to substantiate—the City's refusal to grant EMS First Responders the uniformed pattern increase in collective bargaining—has not been disputed by the City's 30(b)(6) witnesses.[2] *See* Pl. Mem. at 16–17. And, Plaintiffs provide abundant statistical evidence and expert analysis "of a kind and degree sufficient to reveal a causal relationship" between the challenged policies and the observed racial, gender, and compensation disparities. *Chin v. Port Auth. of N.Y. & N.J.*, 685 F.3d 135, 151 (2d Cir. 2012) (citation omitted); *see, e.g.*, Landis Report at 3 (finding no "job-relevant rationale that explains the lower rate of pay for EMS First Responders"); *see also id.* at 17–18 (illustrating the direct impact on EMS compensation of the civilian, as opposed to the uniformed, pattern increase in collective bargaining).

Plaintiffs also offer evidence of a "common intention to discriminate." *Chen-Oster*, 325 F.R.D. at 73 (citing *Hill*, 136 F. Supp. 3d at 354). An inference of discriminatory intent for the purposes of a prima facie disparate treatment claim may be established through evidence of "more favorable treatment of employees not in [a] protected group." *Leibowitz v. Cornell Univ.*, 584 F.3d 487, 502 (2d Cir. 2009) (citing *Chambers v. TRM Copy Centers Corp.*, 43 F.3d 29, 37 (2d Cir. 1994)); *see also Chen-Oster*, 325 F.R.D. at 76. As stated, Plaintiffs have pointed to undisputed evidence indicating that the City has taken uniform adverse action against EMS First

---

[2] The City contends, without citation or explanation, that its alleged failure to assess the appropriate compensation for EMS First Responders and its refusal to grant EMS First Responders the uniformed pattern increase in collective bargaining are not facially neutral policies or practices for the purposes of a Title VII disparate impact claim. Def. Mem. at 39. The Court disagrees. *See Local 2507*, 2024 WL 916520, at *9 ("[P]aying EMS First Responders the civilian pattern percentage increase when Fire First Responders receive the uniformed pattern increase is a facially neutral policy that Plaintiffs allege has a disparate impact on compensation."). In any event, the City's argument raises another common question related to the merits of Plaintiffs' claims that is apt to generate a common answer. *See Dukes*, 564 U.S. at 350.

Responders. Plaintiffs have also offered substantial proof that the significantly less diverse Fire First Responders are the appropriate comparator to substantiate an inference of discriminatory intent. *Brown v. Daikin Am. Inc.*, 756 F.3d 219, 230 (2d Cir. 2014); *Hill*, 136 F. Supp. 3d at 335; *see, e.g.*, Landis Report at 3; Maguire Report at 12, ECF No. 119-10. The City disputes Plaintiffs' evidence, and in particular the testimony of Plaintiffs' expert witnesses. *See* Def. Mem. at 40; *see also* ECF No. 173. But the City's arguments "go to the merits of the action" and are therefore "irrelevant to the commonality inquiry." *Hill*, 136 F. Supp. 3d at 354; *see id.* ("Indeed, if Defendant[ is] correct that Plaintiffs cannot show discriminatory intent, the class racial [and gender] discrimination claims will be resolved in a single stroke.").[3]

In short, Plaintiffs offer significant proof that the City has "operated under a general policy of discrimination." *Dukes*, 564 U.S. at 353. That includes substantial (and in some cases unrebutted) evidence of common policies that disparately impact the Class and Subclasses; statistical analyses showing that the EMS First Responders are more diverse by race and sex/gender than Fire First Responders and are paid significantly less; and expert analyses showing that EMS and Fire First Responders perform similar jobs and that no job-relevant rationale explains the difference in compensation. Such "generalized proof," *Moore*, 306 F.3d at 1252, is more than "capable of generating common answers" to issues "central" to the parties' dispute, *Dukes*, 564 U.S. at 350.

For all of these reasons, the Court finds that Plaintiffs have met their burden under Rule 23(a) and (b)(3) to demonstrate commonality and predominance. Because "each class member's claim arises from the same course of [alleged] events" and each class member would be expected

---

[3] *See also Local 2507*, 2024 WL 916520, at *6 ("In this Circuit, the issue of whether comparators are sufficiently similar is typically resolved at the summary judgment stage at this earliest[.]"); *Chalmers v. City of New York*, No. 20 Civ. 3389, 2022 WL 4330119, at *18 (S.D.N.Y. Sept. 19, 2022) ("Whether Plaintiffs' evidence actually makes out a prima facie case is a question left for trial[.]").

to make "similar legal arguments to prove the [City's] liability," the Court further finds that the lead plaintiffs' claims are typical of those of the Class and Subclasses. *In re Drexel Burnham Lambert Grp.*, 960 F.2d 285, 291 (2d Cir. 1992).

    C.    Superiority

Rule 23(b)(3) also requires that "a class action [be] superior to other available methods for fairly and efficiently adjudicating the controversy." In assessing the superiority of a proposed class, courts analyze (1) "the interest of the class members in maintaining separate actions;" (2) "the extent and nature of any litigation concerning the controversy already commenced by or against members of the class"; (3) "the desirability or undesirability of concentrating the litigation of the claims in the particular forum"; and (4) "the difficulties likely to be encountered in the management of a class action." *In re Nassau Cty. Strip Search Cases*, 461 F.3d 219, 230 (2d Cir. 2006) (quoting Fed. R. Civ. P. 23(b)(3)).

Plaintiffs contend that failure to certify the class may result in common questions being decided differently and an increased burden on the Court and the City posed by numerous lawsuits. Pl. Mem. at 39 (first citing *Torres v. Gristede's Operating Corp.*, No. 04 Civ. 3316, 2006 WL 2819730, at *16 (S.D.N.Y. Sept. 26, 2006); then citing *Chen-Oster*, 325 F.R.D. at 84). They also note that individual class members are "relying on membership in the [C]lass to vindicate their rights and many, if not most, of the class members would not have the means to initiate individual actions." *Id.* at 39 (citing ECF Nos. 119-6 to -8). Neither party has identified any existing litigation concerning the controversy, nor any difficulties likely to be encountered in the management of this action on a classwide basis. *See Nassau County*, 461 F.3d at 230. And the City does not dispute that a class action is superior to other methods for fairly and efficiently

adjudicating this matter.  Def. Mem. at 35.  Accordingly, the Court finds that the Class and Subclasses satisfy the superiority requirement.

      D.      Adequacy

Adequacy requires courts to inquire whether (1) the lead plaintiffs' interests are "antagonistic to the interest of other members of the class," and (2) their attorneys are "qualified, experienced and able to conduct the litigation." *Floyd v. City of New York*, 283 F.R.D. 153, 161 (S.D.N.Y. 2012) (quoting *Baffa v. Donaldson, Lufkin & Jenrette Secs. Corp.*, 222 F.3d 52, 60 (2d Cir. 2000)).  Plaintiffs represent that the lead plaintiffs have no conflicts with members of the Class or Subclasses they seek to represent—let alone "fundamental" conflicts, *Ligon v. City of New York*, 288 F.R.D. 72, 80 (S.D.N.Y. 2013) (citation omitted)—and they claim that the lead plaintiffs' interests are aligned with, not antagonistic to, those of the Class and Subclasses, Pl. Mem. at 37.  The City does not dispute these representations, and the Court finds that the lead plaintiffs' interests do not conflict with those of the class members.

Plaintiffs further contend that their counsel, the Kurland Group, is "knowledgeable and capable of representing the [C]lass [and Subclasses]."  Pl. Mem. at 37 (citing Kurland Decl., ECF No. 119); *see Eisen v. Carlisle & Jacquelin*, 391 F.2d 555, 562 (2d Cir. 1968) (requiring that class counsel be "qualified, experienced[,] and generally able to conduct the proposed litigation.").  The City claims that Yetta Kurland, Plaintiffs' lead counsel, "does not represent that she has ever litigated a class-action case, let alone one involving a putative class of between 4,500 and 5,500 individuals."  Def. Mem. at 40.  The City cites no authority for the proposition that a lawyer who has not litigated a class action is necessarily unqualified to do so.  More to the point, Kurland's declaration flatly contradicts the City's claim.  The declaration states that Kurland's firm "specializes in civil rights, with a large focus on employment discrimination" and

13

it "regularly litigates employment discrimination matters, including but not limited to various class action litigation in the Southern District of New York" and "complex employment matters against the City of New York including class actions on behalf of municipal employees." Kurland Decl. ¶¶ 2–4. As senior partner, Kurland "acts as lead attorney in many of the firm's cases . . . representing individuals and classes of individuals in employment and civil rights litigation." *Id.* ¶ 5(a). Additionally, Plaintiffs and their counsel have demonstrated a willingness to vigorously prosecute the Class's interests in this matter, successfully defending against a motion to dismiss and participating in extensive discovery. For all of these reasons, the Court finds that the lead plaintiffs "will fairly and adequately protect the interests of the [C]lass [and Subclasses]." Fed. R. Civ. P. 23(a)(4).

For the reasons stated, Plaintiffs' motion for certification of the Class and Subclasses is GRANTED.

III.     Appointment of Class Counsel

Under Rule 23(c)(1)(B) and (g), a court certifying a class must appoint class counsel. Rule 23(g)(1)(A) requires a court to consider: (1) "the work counsel has done in identifying or investigating potential claims in the action;" (2) "counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action;" (3) "counsel's knowledge of the applicable law;" and (4) "the resources that counsel will commit to representing the class." Plaintiffs' counsel, the Kurland Group, satisfies the standard set forth at Rule 23(g). Plaintiffs' counsel identified and investigated the claims in this case. Kurland Decl. ¶¶ 7–8. They "are familiar with Plaintiffs and have an in-depth knowledge of the background of this case which spans many years and includes complex details regarding uniform service in the New York City municipal workforce specific to EMS First Responders." Barzilay Decl. ¶ 14,

14

ECF No. 119-6.  They are experienced in handling employment discrimination class action litigation and have litigated cases involving claims similar to those presented here.  Kurland Decl. ¶¶ 2–6.  Their engagement of expert witnesses, management of discovery, and preparation of various filings, including this class certification motion, show that they have committed sufficient resources to the litigation.  And they will fairly and adequately represent the interests of the Class and Subclasses.  *Id.* ¶ 9.

Accordingly, Plaintiffs' motion for appointment of class counsel is GRANTED.

## CONCLUSION

For the reasons stated, Plaintiffs' motion to certify the Class and Subclasses, and to appoint class counsel, is GRANTED.

The Clerk of Court is respectfully directed to terminate the motion at ECF No. 118.

SO ORDERED.

Dated: September 24, 2024
       New York, New York

_____
ANALISA TORRES
United States District Judge