July 1, 2025

**VIA ECF**
The Honorable Gabriel W. Gorenstein, U.S.M.J.
United States District Court Southern District of New York
40 Foley Square, Room 519
New York, New York 10007

Re: **Local 2507, et al v. City of New York, 22-cv-10336 (AT)(GWG) [rel. 20-cv-3389]**

Dear Your Honor:

Plaintiffs write having complied with Paragraph 2(A) of Your Honor's Individual Rules to ask that the Court compel Defendant to produce certain discovery requested in their Fourth Combined Set of Interrogatories and Request for Production of Documents dated December 10, 2025 ("4th RFP"), a copy of which is filed on the docket at ECF No. 208-1.[1]

On the following dates the undersigned along with David Rankin, Tala Alfoqaha and Jacqueline BeVier on behalf of Plaintiffs and Lora Minicucci, Rachel Philion, and Jacob Tucker on behalf of Defendant met and conferred regarding this discovery dispute:

- March 5, 2025 at 2:00pm for 1 hour
- March 25, 2025 at 4:30pm for 1 hour
- April 14, 2025 at 12:30pm for 1.5 hours
- April 29, 2025 at 10:00am for 1.5 hours
- May 5, 2025 at 12:00pm for 1.5 hours
- May 7, 2025 at 10:00am for 1.0 hour
- May 9, 2025 at 2:30pm for 1.5 hours
- May 23, 2025 at 12:00pm for 1 hour
- June 6, 2025 at 2:00pm for 1.5 hours
- June 9, 2025 at 1:00pm for 1 hour

Parties continue to confer on remaining discovery items that are in dispute. However, as outlined below there are certain topics parties have reached impasse as follows:

1. **Interrogatory No. 4 & Interrogatory No. 7**

   *Please provide the name of the individual or individuals assigned to entering data into CIRS for the dataset "Injuries with Body Parts". See P. 109 Deposition Transcript of Douglas Wilson.*

---

[1] These discovery disputes are separate from those currently pending in parties' April 29, 2025 and May 28, 2025 letters to the Court. *See* ECF Nos. 208 and 215.

1

2. *Please provide the names of the person(s) who prepare the view at BTDS. See P. 80 Deposition Transcript of Rebecca Mason.*

**Plaintiffs Position**: Defendant has gone to great lengths to withhold information regarding the creation of the Injury with Body Parts dataset. This dataset is the main source of information on rates, frequencies and severity of injuries and illness for EMS and Fire First Responders, was created for the express purpose of this litigation, and will be used by both parties at trial. There exist a number of anomalies with the dataset, not the least being that there seems to be duplicate and/or redundant entries. See **Exhibit A** which will be emailed to Your Honor under separate cover, as it contains confidential medical information. Defendant has also been inconsistent in explaining through counsel what is included in this dataset. Plaintiffs seek to depose a person with firsthand knowledge to resolve these concerns so the data can be relied on by parties and the Court. Despite multiple requests, Defendant has refused to disclose either who created this dataset or who entered the data for this dataset so that Plaintiffs can get clarity on these small but important details. Defendant has ignored the request for the name of who created the database claiming parties are not at impasse on this issue.[2] But this is not only not accurate it is simply another attempt to withhold this information for as long as it can, without any intention of disclosing who created the dataset or who entered the data. Defendant just as disingenuously claims it can't provide the information on who entered the data because there was more than one person assigned to this task. But Defendant has records that can identify both who created the dataset and who entered that data in those datasets on the relevant dates. Defendant must produce those names. Instead Defendant provides only the name of a person doing data entry today, three years later, for only the EMS portion of the data. The information sought is readily available. Defendant is claiming it has not refused to disclose information yet it has created this dataset specifically for this litigation, but will not disclose who did so, or who entered the underlying data. Plaintiffs are not asking to identify *everyone* who entered data, but just a person or persons with knowledge at the time the dataset was created and the individual who created the dataset.

**Defendant's Position**: The City is not "refusing" to disclose anything and disputes Plaintiffs' allegations about "anomalies" in the produced dataset.

---

[2] Defendant claimed in an earlier version of this letter that Plaintiffs were propounding a new interrogatory by stating it sought the name of who created this dataset. In response Plaintiffs included the above reference to Interrogatory No. 7 of the same RFP. Defendant now claims this is a new request and that parties are not at impasse. But this is disingenuous. Defendant has no intention of providing the name of the person who created this dataset, or they would simply produce that name and parties could remove this topic from the instant letter. Moreover, Plaintiffs have discussed the relief sought in Interrogatory No. 4 and No. 7 together and Defendant understands not only the concerns Plaintiffs have regarding the anomalies in the data that require answers to Interrogatory Nos. 4 and 7, but Plaintiffs underlying goal of simply getting clarification on the issues with the dataset so that it can be reliably used by both parties. Defendant again refuses.

Regarding Interrogatory No. 4, as the City has explained, it is unable to identify any individual or individuals from Fire who is/are assigned to enter data into CIRS for the dataset "Injuries with Body Parts," because this task can be completed by the officers at the station houses or Fire medical officers. As to EMS, until recently, no specific individual was/individuals were assigned to entering data into CIRS for the dataset "Injuries with Body Parts." Instead, the roles were filled by rotating light-duty EMS personnel. These roles, however, are no longer staffed by rotating light-duty EMS personnel. Accordingly, on May 16, 2025, the City disclosed to Plaintiffs the names and job titles of the two individuals who are currently responsible for entering data for the dataset "Injuries with Body Parts" for EMS.

The City was surprised to see Plaintiffs add Interrogatory No. 7 to this joint letter during the third version exchanged between the parties. Plaintiffs served Interrogatory No. 7 on December 10, 2024. The City responded to Interrogatory No. 7 on January 23, 2025 and identified an individual responsible for preparing the Injuries with Body Parts dataset referenced in the Interrogatory. Plaintiffs sent the City a deficiency letter regarding the City's responses to Plaintiffs' December 10, 2024 discovery requests on March 4, 2025 which did not mention the City's response to Interrogatory No. 7. The City responded to that deficiency letter on April 4, 2025. Plaintiffs sent a second deficiency letter regarding the City's responses to Plaintiffs' December 10, 2024 discovery requests on April 24, 2025. Again, Plaintiffs did not raise the City's response to Interrogatory No. 7. In fact, Plaintiffs have never, in writing or during any meet and confers about the December 10, 2024 discovery requests, claimed that the City's response to Interrogatory No. 7 was deficient. The parties have never met and conferred on this topic and are not at impasse.

3. **Document Request No. 11**

   *Please produce the monthly statistical information prepared by the FDNY and produced to the Mayor's office for the Mayor's report regarding Fire, EMS and Fire Protection KPIs from 2005 to present as testified to by Harold Wagner.*

**Plaintiffs' Position**: Defendant does not dispute the information is relevant but makes the unbelievable claim it is simply unable to determine what information Plaintiffs are requesting. Plaintiffs are requesting the information that Defendant's own 30(b)(6) witness testified to during his deposition. In specific, on May 24, 2023 Harold Wagner the 30(b)(6) witness for Defendant testified that the FDNY prepare and send monthly data related to the 911 data to the Mayor's Office. Defendant's counsel attended the deposition, and Plaintiffs further provided the specific lines and pages of Mr. Wagner's testimony that identified the data sought. *See* **Exhibit B** In specific, as the transcript makes clear, the information sought is information sent monthly to update the mayor's "fiscal year report that we updated monthly… Q: So you provide a report to the mayor monthly, does that report include the statistics that we've talked about? A: It has many KPIs, some of which there may be some overlap. And there are definitely KPIs that we did not

3

discuss or that are not in this dataset that I am looking at at the moment… a quick example would be the number of apparatus collisions, how many times they've been involved in an MVA… [the] risk return of spontaneous circulation, basically someone who is in cardiac arrest and had no pulse, however, after CPR and treatment they had the return of spontaneous circulation… It is an agency report and it has Fire, EMS… Q: We'd ask then if you make a search… [and] produce them." *See* **Exhibit B**, pp. 280-282.  This testimony also contradicts Defendant's claim that the information in the monthly reports is contained in the CAD data. Setting aside the fact that the record clearly identifies the information sought, Defendant could also have simply asked its 30(b)(6) witness to identify the reports sought. Either way Defendant must produce this information.

**Defendant's Position**: The City produced Mayor's Management Reports which contain tables of information, and Plaintiffs have requested the data underlying these tables.  On May 1, 2025, the parties met and conferred on this issue.  At that meet and confer, the City told Plaintiffs that if they would identify the specific tables for which they are requesting the underlying data, the City would evaluate that request.  Plaintiffs did not respond to the City's request.  As Plaintiffs know, these reports are voluminous and contain a significant amount of statistical information. Moreover, the City believes that certain of the underlying data may be contained within the CAD data and other data already produced, including but not limited to the end-to-end data that the City produced on May 23, 2025, but is unable to confirm this without the additional information it requested from Plaintiffs concerning what underlying data they are seeking.  Plaintiffs' position above does not provide any clarity.  As Mr. Wagner stated in the cited testimony, the Mayor's Management Reports contain "many KPIs" (referring to "key performance indicators").  Mr. Wagner then provided varied examples such as "the number of apparatus collisions, how many times they've been involved in a [motor vehicle accident]," and the number of times responders revive a patient in cardiac arrest.  *See* **Exhibit B**, Wagner Tr. at 280:12-281:8.  Mr. Wagner's testimony is confirmed by the publicly-available Mayor's Management Reports (which the City has also produced), and the "Indicator Definitions," and "Additional Tables" documents that the City also makes publicly available each year.[3]  For example, in 2024, the Mayor's Management Report Indicator Definitions document was 340 pages long.  The FDNY section of the document included almost 60 different Indicator Definitions (*e.g.*, "Intentionally set fires," "Average response time to all emergencies by fire companies (FDNY dispatch and travel time only) (minutes:seconds)," "Life-threatening medical emergency incidents").

Plaintiffs refuse to provide any clarity as to what specific information they are seeking, despite the City's multiple requests.  Accordingly, the City requests that the Court either deny Plaintiffs' request or direct Plaintiffs to identify the specific underlying data they are seeking.

4. **Document Request No. 16**

---

[3] https://www.nyc.gov/site/operations/performance/mmr.page.

> *Please produce all documents including any reports, memorandums, summaries, testimony, or other materials created by or prepared for Defendant which explain the details of the merger of EMS into the FDNY. This includes but is not limited to any reports regarding the planning of this merger, the impact of this on EMS and Fire workforces, any instruction on how the merger would happen, any description of the changes in job duties or personnel or employment conditions, any changes in physical locations of employment, such as the creation of EMS stations, any packet provided to FDNY employees regarding the merger, any documents explaining the reason for the merger, any testimony provided to New York City Council, and any information Defendant relied on in deciding to merge EMS into the FDNY.*

**Plaintiffs' Position**:  It seems unimaginable that Defendant would not have any documents related to one of the most meaningful changes in the organization of the FDNY in the past century.  As such, Plaintiffs ask that Defendant produce an affidavit from the individual responsible for this search detailing the steps they took to locate this information and that Defendant be directed to conduct an ESI search using the search terms "merger" for the period from 1994 through 1998 of the FDNY Commissioners, Mayor and Deputy Mayors electronic records during this time as well as any database that retains such records.

**Defendant's Position**:  The City does not agree that this topic is at impasse.  The City conducted a diligent search and produced over 2,000 pages of documents responsive to Document Request No. 16 on June 25, 2025.  The City has now produced all responsive documents located following a good-faith reasonable search and is not withholding any documents.

  5. **Document Request No. 17**

> *Please provide a complete copy of the New York City Local Law that transferred EMS service to the FDNY that went into effect in and around 1996 as well as a complete copy of the Executive Order signed around that time as well, including jacket covers and supporting materials, as applicable.*

**Plaintiffs' Position**:  Again, Defendant does not dispute that the information is relevant, but argue only that this information is publicly available.  This information is not publicly available and even if it were that does not excuse Defendant of its obligation to produce this information.  The published law is of course public.  What Plaintiffs seek is the appurtenant documents such as the notations on the jacket cover of the executive order, and any supporting materials.  Also an executive order is part of the legislative process that resulted in the merger, including hearings that were conducted by Defendant's legislative body.

**Defendant's Position**: Upon information and belief, EMS merged with the FDNY via Executive Order No. 27, issued February 26, 1996, not legislation, and therefore there is no New York City

Local Law transferring the EMS service to the FDNY. The Executive Order is publicly available,[4] but the City nevertheless produced Executive Order No. 27 on May 23, 2025. The City is not withholding anything on the basis of it being publicly available. It is not clear to the City to what Plaintiffs are referring as "appurtenant documents such as notations on the jacket cover of the executive order and any supporting materials," given that an executive order and not legislation is at issue, but in any event, the City has produced what it was able to locate following a diligent search.

6. **Document Request No. 20**

   *Please produce any training materials including power point presentations on non-discrimination at an agency level such as agency compliance with local state and federal obligations to ensure non-discrimination and to monitor the agency's workforce for pay discrepancies.*

**Plaintiffs' Position**: Defendant should be able to identify training it provides on monitoring agencies' workforce and pay discrepancies. Defendant claims it has no such training documents. To assist Defendant, Plaintiffs have provided samples of materials Defendant maintains so that it can search for additional documents. *See* **Exhibit C**. Defendant claims it does not know where this document came from or how to locate the people who prepared it. But the document is clearly marked showing it was produced from the Office of Citywide Diversity and Equal Employment Opportunity in the Department of Citywide Administrative Service ("DCAS") and even contains the names of five individuals in a section "contact information." As such, Plaintiffs ask that Defendant produce an affidavit from the individual responsible for this search detailing the steps they took to locate this information, which hopefully includes contacting these individuals. Plaintiffs also ask that Defendant be directed to conduct an ESI search of DCAS's Citywide Diversity and Equal Employment Opportunity Office's electronic records as well as the electronic records of Jodi Bryon, Manendra Bhugra, Michael Reyes, Daniell Barrett, and Sanford Cohen using the search terms "workforce" or "analytics" or "statistical" or "analysis" and "training" for the period from 1996 to present.

**Defendant's Position**: On April 25, 2025, Plaintiffs served the City with a deposition notice, which attached as Exhibit A the 85-page undated PowerPoint ("the PowerPoint") attached as Exhibit B to this Letter. Since then, the City has been conducting a diligent search but to date has not located this or any similar document in the possession, custody, or control of the City, and which has been used to train FDNY. The PowerPoint was presumably produced to counsel for the Plaintiffs in another matter,[5] although the City is not aware of who produced the

---

[4] https://www.nyc.gov/assets/records/pdf/executive_orders/1996EO027.PDF

[5] The City believes this PowerPoint was produced to counsel for Plaintiffs in a different litigation based on the bates labels in the bottom right-hand corner of the document.

document or how Plaintiffs came into possession of it, and there is nothing within the contents of the PowerPoint indicating that it was shared with FDNY. The City asked Plaintiffs to provide it with information concerning how it obtained the PowerPoint to aid in the City's search, but Plaintiff did not respond to that request. Moreover, the PowerPoint presentation is undated, but based on the contents of the document, the City believes it is at least ten years old.

The City does not agree that this topic is at impasse. While the City was unable to locate the document Plaintiffs identified, it did produce over a 1,000 pages of documents responsive to Document Request No. 20 on June 25, 2025. The City has now produced all responsive documents located following a good-faith reasonable search and is not withholding any documents.

7. **Document Request No. 32**

   *Please produce a copy of any proposals for new titles or positions in the FDNY since 1996 to present. See P. 75-76 Deposition Transcript of Robert Alexander.*

**Plaintiffs' Position**: Defendant claims it need not produce proposals for new "titles or positions" and need only produce proposals for new "titles." The language of Plaintiffs request is clear and so Defendant must search for all proposals such as those related to the creation of Sergeant EMT level. It is clear Defendant has failed to perform a thorough search of these proposals because while Defendant claims the reason it didn't produce this information for Sergeant is because it is a "position" and not a "title" Defendant also has not produced this information for the "title" of FDNY Fire Cadet which was recently created. Defendant must do a proper search and produce copies of the documents Mr. Alexander testified to must be completed to create a new position within the FDNY. Also Defendant must produce this information for all titles and positions within the FDNY from 1996 to present, irrespective of what Bureau these positions report to. Plaintiffs have clearly asked for both titles and positions, as it is relevant if Defendant fails to comply with its stated policy which is that it undergoes job evaluations when it creates new jobs. It should also be produced from 1996 to present as this information will serve as background for Plaintiffs' pattern and practice claims and is maintained and readily available to Defendant. Despite agreeing to produce this information by June 20, 2025 no such documentation has been forthcoming. Defendant states that it has produced the "classification resolution creating the new Sergeant EMT level" but there exists or should exist according to Defendant's 30(b)(6) testimony other documents related to this position that has not been produced. Defendant claims it has run a search on new titles for the FDNY from 1996 to 2015 and produced LOCAL 2507-DEF-0038493-38547. But these documents have nothing to do with titles or positions in the FDNY and Defendant still has not even produced those titles and positions Plaintiffs have identified as newly created in the FDNY such as Fire Cadet. Defendant must produce this information.

**Defendant's Position**: The City is not limiting its production to only proposals for new "titles" and does not believe this topic is at impasse. On May 20, 2025, the City produced the classification resolution creating the new Sergeant EMT level. Based on a diligent search and a reasonable inquiry, the City is not in possession, custody, or control of additional responsive documents created after 2016. In an effort to avoid another dispute, and as Plaintiffs are aware, the City agreed to search for and produce responsive documents for the period of 1996-2015 and did produce additional responsive documents on June 25, 2025, which included documents responsive to Document Request No. 32. *See* LOCAL 2507-DEF-0038493-38547. The City has now produced all responsive documents located following a good-faith reasonable search and is not withholding any documents.

8. **30(b)(6) Witness**

**Plaintiffs' Position**: On December 11, 2024 Plaintiffs served a Notice of Deposition for a 30(b)(6) witness on nineteen (19) topics. *See* **Exhibit D**. On January 23, 2025 Defendant served objections after which parties met and conferred. Defendant served Amended Objections on May 23, 2025. Thereafter parties again met and conferred. As a result, it was Plaintiffs understanding that parties had agreed, with the following modifications that Defendant would produce a witness or witnesses pursuant to Plaintiffs' Notice to give testimony on twelve (12) of the nineteen (19) topics:

1. **Topic Number 1** – is amplified to include the clarification that this witness will be able to testify on the tabling and other recruitment processes the FDNY utilizes for the FDNY's solicitation of interests in applying for EMTs, Paramedics and Firefighters, including any steps the FDNY takes to encourage individuals in applying for the titles of EMT, Paramedic, and/or Firefighter to apply for those titles beyond tabling.
2. **Topic Number 8** – is amplified to include the clarification that this witness will be able to testify to the FDNY matrix for 911 calls, including severity, incidents, dispatch, codes, signals and alarms for both EMS and Fire.
3. **Topic Number 11** – is amplified to clarify that Defendant will produce a witness who will testify to whether such steps are undertaken or if Defendant undergoes any self-audits regarding pay practices specific to the FDNY, and if so what those processes are.
4. **Topic Number 12** – is amplified to clarify that Defendant will produce a witness on this topic and that witness will be able to identify information regarding what bargaining units are uniform, but that witness may not have knowledge regarding the specific bargaining process of those specific units, i.e. their collective bargaining history.
5. **Topic Number 16** – is amplified to add that Defendant will provide its position on New York City Council resolution 1062-2019A.

Defendant has now seemingly changed its position as outlined below and refuses to produce witnesses on two (2) additional topics, Topic 15 and Topic 16. Because the topics Plaintiffs seek

8

examination on are relevant, clearly identified and properly sought, we ask the Court direct Plaintiffs to produce a witness for examination on all topics in Plaintiffs 30(b)(6) Notice served December 11, 2024 with the above modifications.

**Defendant's Position**: The City does not agree that Plaintiffs' position accurately represents the parties' meet and confers or that the parties have reached agreement on 12 of 19 topics.[6] As to several topics, Plaintiffs either claim that there is an agreement where there is none or represent that the City has agreed to Plaintiffs' proposed language when the parties actually agreed to other language during their meet and confers. The City believes that, based on written correspondence and multiple meet and confers, the parties have reached agreement that the City will produce a witness or witnesses on the following topics:

**Topic No. 1:** The FDNY's solicitation of interests in applying for the titles of EMT, Paramedic, and Firefighter (including tabling events), as well as any steps FDNY takes to encourage individuals who express interest in applying for the titles of EMT, Paramedic, and/or Firefighter to apply for those titles.

**Topic No. 3:** The process by which a civil service title is granted an exemption from the requirement to live within the five boroughs for the EMS First Responder civil service titles that appear on the referenced list: Emergency Medical Specialist – EMT; Emergency Medical Specialist – Paramedic; Supervising Emergency Medical Service Specialist ("SEMSS"), Level I (Sergeant and Lieutenant); and SEMSS, Level II (Captain, Deputy Chief, and Division Commander/Division Chief). *See* LOCAL 2507_001437-1443.

**Topic No. 4:** The eligibility standards and selection process for FDNY Medal Day Awards (including pre-hospital save awards, service ratings, Unit of the Month designations, and Unit Citations).

**Topic No. 5:** The process for identifying a civil service title as eligible to promote to another civil service title. The City has conducted a good-faith, reasonable search, to locate documents specific to or a witness with knowledge of the decision (made nearly 30 years ago) to make the civil service titles of EMT and Paramedic eligible to promote to the civil service title of Firefighter, and has not identified any responsive documents or witnesses. Accordingly, the City will not produce a witness to testify about that decision.

**Topic No. 10:** The requirements to allow a civil service title to be eligible for promotion into another civil service title (including, but not limited to, any such requirements under New York City or New York State policies, practices, rules, codes, or guidelines).

---

[6] The City did not agree during these meet and confers to produce witnesses for Plaintiffs' proposed Topic No. 15 and Topic No. 16, despite Plaintiffs' claims.

**Topic No. 18:** The creation and content of the excel spreadsheet Dr. Campion referenced in his August 4, 2023 report entitled "EMT & Paramedic Rates – EMS vs. LVHH 05-16-17.xlsx."

The City does not agree that the parties have reached agreement regarding **Topic Nos. 11, 12, 13, 15, 16,** or **19**.

During the parties' last meet and confer on this topic, the parties agreed to revisit **Topic Nos. 11, 13,** and **19** following the City's planned June 20[7] production (because that production was to include documents relevant to these topics). The parties have yet to revisit those topics, and the City has not agreed to Plaintiffs' proposed language. Until Plaintiffs review the latest productions and meet and confer with the City, as they agreed to do, the City cannot determine whether the parties are in agreement or at impasse as to these topics. Further, Plaintiffs agreed to provide the City with revised language for **Topic No. 12** during the same meet and confer, but never proffered a proposal.

The parties never agreed on **Topic No. 15** and **Topic No. 16** and the City does not know why Plaintiffs are representing otherwise. It appears the parties are at impasse on these topics and provide their respective positions below.

\* \* \*

The parties are at impasse with regards to the following topics:

1. **Topic Number 2**

The merger of EMS into the FDNY including the details precipitating and leading up to the merger, the details of the merger itself and the details of how it impacted EMS First Responders, including how it impacted EMS First Responders' job duties and working conditions, including the details outlined in the documents related to the merger Bates stamped LOCAL 2507_001385-96, LOCAL_001397-436, LOCAL 2507_02461-2, and LOCAL 2507_02463-526.

**Plaintiffs' Position**: Defendant claims that there is "no witness with knowledge concerning Topic No. 2." But an organization or entity "must testify about information known or reasonably available to the organization." While it may be true that Defendant does not have a witness with this knowledge, Defendant has the institutional knowledge and information that is reasonably available to the organization, and Defendant must educate the witness so that they can testify fully and knowledgeably about the topic. The witness can use the documents referenced in Plaintiffs' notice as the City of New York is the deponent under the rule, and the witness is merely presenting the knowledge, opinions or positions of the corporation, not the witness themselves. Defendant must so prepare a witness to answer questions on this relevant topic. Defendant misstates Plaintiffs' position.

---

[7] The City ultimately produced this material on June 20 and June 25.

**Defendant's Position**: With Plaintiffs' clarification during a May 5, 2025 meet and confer that they are seeking a witness who can testify on behalf of the City regarding the reasons for the merger of EMS (formerly within NYC Health + Hospitals, which at the time had been known as New York City Health and Hospitals Corporation) into the FDNY in 1996, and the impact, if any, on the job duties of EMS and Fire First Responders during at the time, the City states that there is no witness with knowledge concerning Topic No. 2. Plaintiffs have previously stated that they would instead accept the City authenticating the above-referenced documents, which the City is willing to do.

2. **Topic Number 6**

Job duties and oversight and supervision of employees assigned to administrative positions in operations in the following units: BHS, Ceremonial, Deputy Commissioner Secretarial, Document Control, Family Assistance, FC Liaison, FDOC, OLR, Operations Secretarial Staff, Chief Aids, Photo Unit, RCC Unit, Recruitment, and Special Events.

**Plaintiffs' Position**: Plaintiffs are entitled to examine Defendant on the very relevant job duties that a large percentage of EMS and Fire First Responders perform in FDNY Operations, where they perform the exact same job duties, and have the same oversight and supervision. Contrary to Defendant's claim we are seeking this information regarding the work for just EMS and Fire First Responders not any other titles or positions. Plaintiffs are entitled to this information. This is not regarding light duty, Defendant misrepresents that these positions are "light duty." They are not. Defendant also misrepresents that there needs to be fourteen (14) different witnesses. The questions regarding generalized work activities and chain of command can be answered by a person who is in the Department that oversees these different units. This can be accomplished easily and with one witness.

**Defendant's Position**: The City objects to Topic No. 6 on the grounds that it is not relevant to the claims or defenses in this case because it seeks information concerning positions that are not filled by individuals in the relevant civil service titles and is overly broad in temporal and substantive scope, unduly burdensome, and not proportional to the needs of this case. Topic No. 6 seeks witnesses to testify about hypothetical temporary light-duty assignments in 14 different units that are not part of the regular job responsibilities for class members or alleged comparators. Accordingly, the City respectfully requests that the Court deny Plaintiffs' request to produce witnesses to testify regarding Topic No. 6.

3. **Topic Number 7**

Job Analyses completed Fire and EMS First Responders, including the Job Analysis for which the portion entitled "Validation Study" dated September 21, 2012 that is referenced in the August 4, 2023 report of Dr. Campion.

**Plaintiffs' Position**: Defendant claims it need not produce a witness on this topic because outside vendors conduct Defendant's Job Analyses. As an initial matter, Plaintiffs have provided a list of numerous Job Analyses that Defendant conducts. *See* DEF000004, DEF0000048, DEF0000457, DEF0000509, DEF00000584, LOCAL 2507-DEF-0006836, LOCAL 2507-DEF-0007473, LOCAL 2507-DEF-0007749, LOCAL 2507-DEF-0007773, LOCAL 2507-DEF-0007825, LOCAL 2507-DEF-0007940, LOCAL 2507-DEF-0007969, LOCAL 2507-DEF-0029689, LOCAL 2507-DEF-0029712. Moreover, on the few Job Analyses that Defendant hires a consultant to prepare, Defendant is working directly with the consultant and has information regarding these Job Analyses which are part of Defendant's records. Again, a 30(b)(6) witness relies on the documents in the entity's possession, and the witness is merely presenting the knowledge, opinions or positions of the corporation, not the witness themselves. No one disputes that these are Defendant's Job Analyses. As such, Defendant must produce a witness to answer questions related to these documents. Even those job analyses in which Defendant hired a vendor to produce, Defendant should be able to testify to what it was used for.

**Defendant's Position**: The City has proposed to Plaintiffs that it will produce a witness or witnesses to provide non-privileged fact testimony regarding the job analyses identified by Plaintiffs and prepared by the City. The City cannot provide a witness with knowledge regarding analyses performed by third parties, such as the "Validation Study" referenced in Topic No. 7, as the City has explained to Plaintiffs on multiple occasions prior to this letter. During earlier meet and confers, Plaintiffs were amenable to the City's proposal, but are no longer willing to compromise. Accordingly, the City respectfully requests that the Court order a witness to testify on the topic as modified in the City's proposal.

4. **Topic Number 8**

The EMS and Fire matrixes for 911 emergency dispatch. *See* Bates stamp LOCAL 2507_02440-1 and LOCAL 2507_02442-60.

**Plaintiffs' Position**: Defendant has refused to produce the necessary and central clarifying information regarding the FDNY's emergency response matrix. This includes information on how many EMS and Fire First Responders are dispatched to certain types of emergencies, the severity of the emergency and the types of emergencies both EMS and Fire respond to. This is central to Plaintiffs' claims that EMS and Fire First Responders respond to the same emergencies in large part and that the ones that they do not are low priority. Defendant must produce a witness to testify to the matrix, including the above issues. Defendant again tries to misdirect with an argument that because there is not one independent document that describes the fire matrix it need not produce someone with knowledge on the Fire matrix used for 911 emergency dispatch. This is ridiculous. Defendant does not dispute that there is a Fire matrix used for 911 emergency dispatch. Especially given all of Defendant's efforts to keep this information from

Plaintiffs it must produce someone with knowledge of that matrix. Plaintiffs disagree with Defendant's claim and believes the topic as proposed is clear and reasonable.

**Defendant's Position**: Plaintiffs agreed to provide the City with revised language for Topic No. 8 following the parties' last meet and confer on this topic, but never proffered a proposal. The City has proposed to Plaintiffs that it will produce a witness or witnesses to provide non-privileged fact testimony regarding the relationship between the type of an emergency call and the resources dispatched to respond to that emergency. The City cannot provide a witness to testify about a "Fire matrix[] for 911 emergency dispatch," because, as discussed above regarding Document Request No. 15, no such document exists for Fire dispatch. It is not possible for the City to prepare a witness to testify about something that does not exist. Accordingly, the City respectfully requests that the Court order a witness to testify on the topic as modified in the City's proposal.

5. **Topic Number 9**

The implementation of NYC Administrative Code 12-307 as it relates to EMS and Fire First Responders.

**Plaintiffs' Position**: Plaintiffs are entitled to examine someone with information on how NYC Administrative Code §12-307 was, or was not, implemented by Defendant. This code requires, among other things that EMS First Responders be recognized as uniform for collective bargaining purposes. One of Plaintiffs' claims is that Defendant refuses to do so. Defendant has equivocated for more than six months to avoid producing someone to give testimony on this topic. Clearly this law was either implemented, or it was not implemented. If it was implemented Defendant's witness needs to explain how. If it was not Defendant's witness needs to explain why not. Defendant takes out of reference Your Honor's statement at a conference in April of 2023 that addresses a different topic, and actually supports the fact that Plaintiffs are entitled to depose a witness on this topic. In specific, Your Honor did not order that Plaintiffs "limit" their 30(b)(6) topic on this issue. The topic at issue was the use of pattern bargaining and the full sentence Defendant takes out of context is "So maybe we should try to think about this in 30(b)(6) terms but not a 30(b)(6) on the topic of who's in charge of compliance, but a 30(b)(6)… on why this particular form of bargaining is used as opposed to this other form of bargaining. Will that do?... Because I want the 30(b)(6) [about] the topic… not the person who does it; the topic is the thing." *See* ECF No. 62 at 44:4-45:24. The topic that Defendant proposes instead of the requested topic would allow Defendant to circumvent the requested topic altogether; has NYC Administrative Code 12-307 been implemented, if so how, and if not, why?

**Defendant's Position**: During an April 24, 2023 conference, the Court ordered Plaintiffs to limit their 30(b)(6) topic on this issue to "not a 30(b)(6) on the topic of who's in charge of compliance [with NYC Administrative Code 12-307] but a 30(b)(6) of . . . why this particular form of bargaining is used as opposed to this other form of bargaining." *See* Dkt. No. 62 at 44:4-11.

13

Consistent with that order, the City has proposed to Plaintiffs that it will produce a witness to provide non-privileged fact testimony regarding the City's collective bargaining negotiations with the District Council 37 ("DC 37"); Local 2507, Uniformed EMTs, Paramedics & Fire Inspectors ("Local 2507"); Local 3621, EMS Officers Union ("Local 3621"); and NYC EMS Superior Officers Association ("SOA") regarding wages, hours, and working conditions for EMS First Responders for the applicable collective bargaining agreements in effect between September 2016 and the present. Accordingly, the City respectfully requests that the Court order a witness to testify on the topic as modified in the City's proposal.

6. **Topic Number 14**

How incidents of injury and illness are maintained on FDNY First Responders, the purpose of maintaining this information, and any reports generated regarding this in Defendant's normal course of business.

**Plaintiffs' Position**: Data on injury and illness, including the severity, frequency and rate is relevant to Plaintiffs' claim that EMS and Fire First Responders have similar risks and hazards. It is also relevant to Defendant's defense that they do not. Defendant is required under federal, state and local law to maintain this data. Plaintiffs are entitled to examine a witness of Defendant to learn where such information might be maintained which could be helpful to Plaintiffs' claims. Plaintiffs again misstate the history of Plaintiffs efforts and the facts. Plaintiffs did meet and confer on this topic after June 20, 2025. In specific, parties met and conferred on June 30, 2025 at which time Defendant unequivocally stated parties were at impasse on issues of injury and illness data. Moreover, the topic as noticed is sufficiently clear to allow Defendant to prepare a witness, and Defendant does not dispute it is relevant.

**Defendant's Position**: Plaintiffs agreed that the parties would discuss Topic No. 14 following the City's June 20 production, which included updated datasets on injuries and illnesses that superseded prior datasets on the same topic. Despite that agreement, Plaintiffs never met and conferred with the City on Topic No. 14 after June 20. Regardless, the City has proposed to Plaintiffs that it will produce a witness or witnesses to provide non-privileged, fact testimony regarding the updated injury and illness dataset that the City produced on June 20. *See* LOCAL 2507-DEF-0038326. Accordingly, the City respectfully requests that the Court order a witness to testify on the topic as modified in the City's proposal.

7. **Topic Number 15**

The Report of the Finance Division of the Fiscal 2021 Preliminary Plan and the Fiscal 2020 Preliminary Mayor's Management Report for the Fire Department of New York dated March 3, 2020 including the FDNY's response and any steps taken to address the issues raised therein.

**Plaintiffs' Position**:

This topic too is narrowly construed to a specific year on a specific topic in a specific document. Defendant does not dispute that it would easily be able to prepare a witness to give testimony on this topic. Moreover this topic is of great relevant because this report prepared by Defendant's own legislative body shows that the New York City Counsil is again demanding that Defendant correct the issue with pay inequity between Fire and EMS First Responders and has even set aside $50 million to being that process.  Defendant chose not to pursue this and Plaintiffs are entitled to examine Defendant on that decision as well as other decisions regarding the Report of the Finance Division of the New York City Council on the topics directly at issue in this litigation.  Defendant claims that Plaintiffs have "consistently taken the position during meet and confers that Topic No. 15 relates to the budgetary process generally and the role of each City stakeholder…"  But Plaintiffs have expressly stated that they want to examine a representative of Defendant on exactly the topic identified here "The Report of the Finance Division of the Fiscal 2021 Preliminary Plan and the Fiscal 2020 Preliminary Mayor's Management Report for the Fire Department of New York dated March 3, 2020 including the FDNY's response and any steps taken to address the issues raised therein." That is the verbatim language of the topic.  The example Plaintiffs give in the instant paragraph was not only raised in meetings with Defendant but it is part of the issues raised in the Report at issue, which Plaintiffs seek the "responses and any steps taken to address…"  Defendant is keenly aware of what is in this Report and simply does not want to produce a witness to discuss this highly relevant topic.

**Defendant's Position**: The City has proposed to Plaintiffs that it will produce a witness from FDNY to provide non-privileged, fact testimony regarding the FDNY's proposed annual budget. The City respectfully requests that the Court order a witness to testify on the topic as modified in the City's proposal.  Plaintiffs have consistently taken the position during meet and confers that Topic No. 15 relates to the budgetary process generally and the role of each City stakeholder (*i.e.*, the Mayor's Office, the Office of Management and Budget, the City Council, and the FDNY).  Plaintiffs' position in this letter is a new argument. Regardless, it is not "narrowly construed to a specific year on a specific topic in a specific document."  Plaintiffs' topic does not cite to a specific produced document (and again, Plaintiffs have not discussed this document with the City at any point during any of the meet and confers on this topic), and despite their attempts to now recharacterize their proposal, the actual language of Topic No. 15 is not narrowed to a "specific topic."  Accordingly, the City respectfully requests that the Court order a witness to testify on the topic as modified in the City's proposal.

8. **Topic Number 16**

Any steps Defendant took in response to the findings of the New York City Council resolution 1062-2019A.

**Plaintiffs' Position**:  Plaintiffs seeks information on any steps that Defendant took to address the findings of the New York City Council that pay inequity existed in the FDNY between EMS and

Fire First Responders.  Again, Defendant is trying avoid this topic by limiting testimony to any steps that it took in collective bargaining and redirect the discussion to the irrelevant issue of the collective bargaining process.  This is becauseDefendant's defense is it has no obligation to correct the pay inequity that is flourishing in the FDNY's uniform services because pay can only be set through the pattern bargaining process.  But this is obviously disputed by Plaintiffs who assert that Title VII, NYS HRL and NYC HRL create an unwaivable obligation for an employer to ensure a non-discriminatory workplace irrespective of collective bargaining.  Independently, wherever Defendant has taken steps to respond to the findings of resolution 1062-2019A, such steps are relevant to this action.  Defendant then conflates Plaintiffs position regarding an employer's unwaivable obligation to ensure non-discrimination with its belief that the resolution is non-binding.  The resolution is not offered to show it is binding upon Defendant, but to show that Defendant was on notice of concerns of discriminatory pay practices and Plaintiffs are entitled to know what steps if any Defendant took as a result.  As such, Defendant must produce a witness to answer this question.

**Defendant's Position**: The City has proposed to Plaintiffs that it will produce a witness to provide non-privileged fact testimony regarding the City's position on New York City Council resolution 1062-2019A as it applies to collective bargaining with Local 2507, Local 3621, and SOA.  That Plaintiffs believe the City has "unwaivable obligation[s]" under federal, state, and local law has nothing to do with the non-binding New York City Council resolution.  Resolution 1062-2019A is a non-binding resolution calling for EMS salaries to be comparable to Fire and Police salaries and does not mention any obligations that the City may or may not have under federal, state, or local law.  The non-binding resolution states that the City should "offer[] substantial wage increases" to EMS workers.  Collective bargaining is the mechanism by which the City would "offer" wage increases.  Accordingly, the City respectfully requests that the Court order a witness to testify on the topic as modified in the City's proposal.

9. **Topic Number 17**

Any steps Defendant took in response to the EEOC determination dated December 22, 2021 [ECF No. 16-2].

**Plaintiffs' Position**: Defendant claims it need not produce a witness on this topic because the steps it took, if any, in response to the EEOC determination dated December 22, 2021 are privileged.  While there may certainly be privileged communications on this topic there is just as likely testimony that can be offered about non-privileged, Department facing steps that have been taken in response to the EEOC determination, or the failure to take such steps.  For example, did the FDNY undertake any self-audits or workplace statistical evaluations on pay inequity?  If so that is not privileged.  Did the FDNY undertake any job evaluations or compensation analyses to ensure that it was properly paying EMS First Responders?  This too is

not privileged.  Plaintiffs are entitled to know this information and Defendant is required to produce a witness to give testimony on non-privileged questions related to this topic.

**Defendant's Position**: Any steps taken in response to the EEOC determination dated December 22, 2021, which was followed by the filing of the instant lawsuit, were in anticipation of litigation and therefore protected under the attorney client and / or attorney work product privilege.  Accordingly, the City respectfully requests that the Court deny Plaintiffs' request to produce witnesses to testify regarding Topic No. 17.


_____//s//_____          _____//s//_____

Yetta G. Kurland                             Lora Minicucci
The Kurland Group                       New York City Law Department
Attorneys for Plaintiffs                   Attorneys for Defendant