July 16, 2025

**VIA ECF**
The Honorable Gabriel W. Gorenstein, U.S.M.J.
United States District Court Southern District of New York
40 Foley Square, Room 519
New York, New York 10007

Re:    **Local 2507, et al v. City of New York, 22-cv-10336 (AT)(GWG) [rel. 20-cv-3389]**
       **Defendant's Letter Regarding Plaintiffs' Discovery Deficiencies**

Your Honor:

In accordance with the Court's July 9, 2025 Order (Dkt. 236),[1] Defendant the City of New York (the "City") requests an Order from the Court compelling Plaintiffs to produce information and documents responsive to the City's First and Second Sets of Interrogatories and Requests for Production of Documents ("RFPs"), served by the City on March 9, 2023 and February 12, 2025 respectively, including as follows:

- Plaintiffs should conduct a forensically sound ESI search.
- Union representatives, Individual Plaintiffs, and Absent Class Members should appear for depositions noticed by the City.
- Plaintiffs should either supplement their searches for documents or describe their searches in response to the City's Second Set of RFPs.
- Plaintiffs should produce authorizations for the release of their New York City Employees' Retirement System ("NYCERS") pension records.
- Plaintiffs should amend their responses to the City's second set of discovery requests to state which Plaintiff is responding to the discovery requests at issue.

The City has complied with paragraph 2(A) of Your Honor's Individual Practices. Specifically, the City sent Plaintiffs three letters (one on February 7, 2025, and two on April 22, 2025) and several emails outlining the deficiencies in Plaintiffs' written discovery responses and document productions and met and conferred with Plaintiffs five times via videoconference[2] in

---

[1] The Court's order is dated July 8, 2025, but appears to have been entered on July 9, 2025, when the parties received it. The City is mindful of the Court's guideline that discovery letters should not normally be more than five pages. The City is filing a letter longer than this due to the July 9 Order in which the Court directed the parties to raise all outstanding discovery disputes that affect discovery deadlines as soon as possible, so that they can be addressed in a single submission.

[2] The parties met on May 12, 2025, May 20, 2025, June 5, 2025, June 30, 2025, and July 11, 2025 for approximately one hour at each meeting. Yetta Kurland, David Rankin, and Tala Alfoqaha participated on behalf of Plaintiffs, and Lora Minicucci, Rachel Philion, and Hayden Bashinski attended on behalf of the City for the first four meet and confers. On July 11, Ms. Kurland and Ms. Alfoqaha appeared for Plaintiffs and Ms. Minicucci, Ms. Philion, and Jacob Tucker participated for the City.

good faith attempts to resolve the issues described in more detail below. Despite these attempts, the parties reached impasse and the City indicated it would request a conference with the Court.

The City attempted to file a joint letter with Plaintiffs on these issues, but Plaintiffs have unreasonably delayed the filing. The City has been trying since June to obtain Plaintiffs' agreement on a schedule for its filing concerning Plaintiffs' deficiencies. Following the parties' meet and confer on June 30, when it was clear that Plaintiffs would not cure any of the deficiencies despite months of the City's good faith attempts at resolution, the City proposed a schedule for the parties to exchange joint letters, as Plaintiffs insisted that they would not agree to cooperate with the City's filing unless they filed a joint letter about their discovery on the same schedule. The City proposed that each party send their initial drafts on July 7, the other side respond with their position by July 10, the moving party makes edits by July 11, and the parties file their letters on July 14. Plaintiffs' counsel would not agree because they were out of the office on July 7. To accommodate their time out of the office, the City agreed to exchange letters on July 8, respectively exchange the other side's position on July 14 on each letter, and asked for a filing date of July 15.

Accordingly, on July 8, the City sent Plaintiffs a draft of this letter. On July 9, the Court entered an Order directing that the parties "present for resolution the discovery disputes that affect the discovery deadlines as soon as possible." (Dkt. 236.) This Order only reinforced the City's existing position that the issues in this letter needed to be presented to the Court expediently, as they undoubtedly concern discovery disputes that affect the discovery deadlines in this case. The City also wanted to ensure that it gave the Court an opportunity to consider these issues prior to the parties' July 21 conference. That same day, the City sent Plaintiffs a slightly modified letter that included only the addition of Issue 2 (depositions) consistent with the July 9 Order. The City asked that Plaintiffs provide their edits by July 14 and again reiterated the July 15 filing date. Plaintiffs refused to provide their responsive edits by 5:00 PM ET on July 14 and refused to agree to a filing date of July 15.

The parties met and conferred on July 11 by videoconference. The City again raised the July 15 filing date. After that call, for the first time, Plaintiffs informed counsel for the City by email that one of their three lawyers (Ms. Kurland) would be unavailable on July 15 for a personal reason. At 2:00 AM ET on July 15, Plaintiffs served the City with their edits to the Letter. The City turned their edits the same day and served Plaintiffs with their responsive edits later in the evening on July 15, and notified Plaintiffs that they would push their filing another day to accommodate Ms. Kurland's absence from the office, but intended to file their Letter on July 16. The City followed up with Plaintiffs on July 16 at approximately 1:00 PM ET to ask when they could expect to receive any additional edits for the filing. At approximately 3:00 PM ET, Plaintiffs' counsel indicated that they were working on their own letter and would at some undetermined time, "look at" the letter the City provided but would not commit to any timeline and did not agree to filing the letter on July 16 (or on any specific date). As of 8:00 PM ET, the City has still not received its letter back from Plaintiffs.

In light of this Court's July 9 Order (Dkt. 236) and the imminent July 21 hearing for which the City believes the Court should have the benefit of information concerning the parties' unresolved disputes that affect the case schedule, the City is filing this letter in accordance with

2

paragraph 2(A).  The City believed it was important to file this Letter today so that Plaintiffs had sufficient time to submit their response before the end of the week should they wish to do so.

**Relevant Background**

Plaintiffs in this lawsuit are three labor unions that represent EMS personnel: Local 2507, Uniformed EMTs, Paramedics & Fire Inspectors ("Local 2507"); Local 3621, EMS Officers Union ("Local 3621"); and NYC EMS Superior Officers Association ("SOA") (together, the "Union Plaintiffs"); and twenty-six individual plaintiffs (collectively the "Plaintiffs"). They bring this lawsuit on behalf of themselves and a class of EMS First Responders (the "Class")[3] alleging that intentionally and unintentionally and through a pattern-or-practice, the City has "perpetuated policies and practices in which members of EMS are paid substantially less for performing work that is substantially equal" to New York City Fire Department ("FDNY") Firefighters, as well as their supervisors, and further subjected the Plaintiffs to lesser benefits than FDNY Firefighters. (Dkt. 16, Compl., ¶¶ 70, 102.) One of the ways Plaintiffs allege the City discriminated against them is via "the FDNY's policy and/or practice of refusing to recognize EMS as a uniform service in collective bargaining, or to participate in uniform pattern bargaining . . ." (*Id*. at ¶ 103).[4]  The discovery the City seeks herein is directly relevant to these allegations.

**_Issue 1:  Plaintiffs Must Conduct a Reasonably Diligent Search for ESI._**

The City's First and Second Sets of RFPs included requests for the production of relevant ESI.  For example, the City seeks:

- Documents and communications concerning the terms and conditions of collective bargaining and other agreements underlying the allegations in this lawsuit about EMS First Responders' employment, including compensation and benefits.  *See* Exhibit A at Requests Nos. 1, 10, 21, 22, 25-27.

- Documents and communications concerning the Union Plaintiffs' positions on pattern bargaining.  *Id.* at Request Nos. 11, 12, 14.

- Documents and communications concerning any alleged disparity in pay or benefits between EMS First Responders and Fire First Responders.  *Id.* at Request No. 13.

- Documents concerning the qualifications, job duties, and responsibilities of EMS First Responders and Fire First Responders.  *Id.* at Requests Nos. 15-20.

---

[3] EMS First Responders are individuals who held the positions of Emergency Medical Technician, Paramedic, Lieutenant, Captain, Deputy Chief, and Division Commander/Chief between December 6, 2019 and the present.

[4] "Pattern bargaining" is when the net going-out cost of the first settled contract in the bargaining round in question forms the "pattern" for subsequent settlements in that bargaining round.  There are two separate patterns, "uniform" and "civilian."  Plaintiffs claim that the City discriminated against them by negotiating for and ultimately agreeing to accept the civilian pattern and not the uniform pattern in collective bargaining negotiations.

- Documents and communications concerning any advocacy or lobbying efforts on behalf of EMS First Responder economic benefits. *Id.* at Request No. 23.

Plaintiffs largely ignored the City's ESI requests. Their paltry initial production included a handful of emails and it was clear Plaintiffs had not made a reasonable effort to conduct an ESI search. Then, when the City raised these deficiencies on April 22, 2025, and sent Plaintiffs a proposed ESI protocol to aid their search, Plaintiffs insisted they had no obligation to conduct an appropriate ESI search.

Plaintiffs have made several concerning representations while refusing to conduct an appropriate ESI search. One of the most concerning claims is the Union Plaintiffs' admission that they do not maintain centralized, organization-managed email systems in which they can apply search terms to locate and produce documents responsive to the City's requests and relevant to this lawsuit. As a result, the Union Plaintiffs are taking the position that, despite their filing of this lawsuit, they cannot search for, locate, or produce documents and communications relevant to this lawsuit. Despite the serious implications of this claim, the Union Plaintiffs refuse to share any information about how they conduct Union business – for example, they have refused to answer even basic questions including even what email platforms they use for Union business and whether they conduct such business using personal email accounts, since they contend that they do not have any centralized email. The Union Plaintiffs' position is effectively that they will not search for, collect and produce ESI because they do not use centralized email, and the City is not entitled to any information.

The Individual Plaintiffs have been equally uncooperative. They insist that they should be permitted to disregard the City's proposed ESI search terms and perform a "self-collection" of documents based on search terms of their choosing.

Plaintiffs' refusal to conduct a reasonably diligent search for ESI appears to be based on three grounds: (1) relevance—disclaiming both the relevance of collective bargaining as well as the Union Plaintiffs' participation in collective bargaining; (2) the sufficiency of their "search"; and (3) burden.[5] Plaintiffs objections are without merit and the Court should compel Plaintiffs to perform a forensically sound search for documents pursuant to the City's ESI protocol.

      a.    <u>The City's Requests Seek Highly Relevant Documents.</u>

Plaintiffs' relevance objection is without merit. First, Plaintiffs did not include relevance objections in their responses to many of the applicable RFPs and have therefore waived such

---

[5] Plaintiffs also assert that, at least as to certain categories of documents, the City or DC 37 is the appropriate custodian. But Plaintiffs may not avoid producing documents in their possession, custody, or control even if some other entity possesses the same or similar documents. *See Komatsu v. City of New York*, 2020 U.S. Dist. LEXIS 238711, at *5 (S.D.N.Y. Dec. 18, 2020) (compelling plaintiff to respond to a number of interrogatories and requests for production where he objected on the grounds that the information sought was in possession of the City of New York because, "an objection that the information sought in an interrogatory or request for production is equally available to the requesting party is insufficient to resist a discovery request."); *Haber v. ASN 50th St., LLC*, 272 F.R.D. 377, 380 (S.D.N.Y. 2011); *see also Aboutaam v. El Assaad*, 2019 WL 8325096, at *1 (S.D.N.Y. Aug. 28, 2019) ("Plaintiff's assertion, that he is not required to produce documents that are presumably already in Defendant's possession, is incorrect as a matter of law.").

objections.[6]  *See* Exhibit B, Plaintiffs' Responses to First Set of RFPs at Nos. 1-3, 6, 8-24, 28-38, and 44-45; and Exhibit A, Plaintiff's Responses to Second Set of RFPs at No. 2;  *Fischer v. Forrest*, 2017 U.S. Dist. LEXIS 28102, 2017 WL 773694, at \*3 (S.D.N.Y. 2017) (holding that the failure to make an objection with specificity and to indicate that responsive material is being withheld based on that objection is a waiver of all objections except as to privilege); *Kimbro v. I.C. System, Inc.*, No. 3:01 CV 1676(DJS)(TPS), 2002 WL 1816820, \*1 (D. Conn. July 22, 2002) (a party "is not free to raise in its brief—almost as an afterthought—entirely new objections which it did not assert earlier.").

Even where Plaintiffs asserted relevance objections, they agreed to produce responsive documents, and therefore conceded that the requested documents are relevant.  *See* Exhibit B, Plaintiffs' Responses to First Set of RFPs at Nos. 6, 9-10, 11-12, 14, 17, and 36; Exhibit A, Plaintiffs' Responses to Second RFPs at Nos. 1-12, 21-23, and 26-27.  Plaintiffs cannot now refuse to produce such documents claiming relevance issues simply because they do not wish to conduct adequate searches for ESI. *See Cambridge Capital LLC v. Ruby Has LLC*, No. 20-cv-11118 (LJL), 2022 U.S. Dist. LEXIS 53814, \*15 (S.D.N.Y. Mar. 24, 2022) (deeming objections waived because responding party, who was resisting further production of documents, had asserted boilerplate objections and agreed to produce documents responsive to the Requests for Production at issue).

In any event, the City's requests seek documents that are highly relevant to the claims and defenses in this litigation.  Plaintiffs allege that the City discriminated against them in the form of disparate pay and benefits policies, which are purportedly carried out at least in part via "the FDNY's policy and/or practice of refusing to recognize EMS as a uniform service *in collective bargaining, or to participate in uniform pattern bargaining . . .*" (Complaint, Dkt. 16 at ¶ 103) (emphasis added).  The underlying RFPs seek relevant documents and communications directly related to this allegation.  *See, e.g.,* Issue I, pp. 3-4, *supra.*  Plaintiffs' relevance objection must be overruled.

Finally, Union Plaintiffs claim—as to the RFPs seeking information regarding collective bargaining—that DC 37, not the Union Plaintiffs, is the final decisionmaker during collective bargaining with the City and (presumably) the information sought is therefore not relevant.[7]  Union Plaintiffs, however, admit that they participate in these negotiations and sign the final

---

[6] Plaintiffs have cited to the City footnote 10 of Judge Torres' ruling on the City's Motion to Dismiss (Dkt. No. 139), which quotes Judge Torres' opinion on class certification in *Chalmers v. the City of New York*, for the proposition that collective bargaining related issues are not relevant, and, therefore, not discoverable.  Neither opinion, however, says anything close to that proposition.

[7] Plaintiffs have also claimed that Judge Torres held in Dkt. No. 139 that "pattern percentage increases are 'across-the-board increase[s] for all titles' and are not the result of collective-bargaining negotiations between the City and individual employee unions."  The Court simply accepted Plaintiffs' allegation at face value, as it is required to do, in light of the posture of the Rule 12(b)(6) motion that was then under consideration. In any event, the Union Plaintiffs have taken the position publicly that they are advocating in collective bargaining negotiations for the Individual Plaintiffs and Class to receive the uniform pattern, and this information is therefore discoverable. *See, e.g., City proposing civilian wage pattern for EMS workers, unions say: Head of two locals want pay parity with FDNY firefighters,* https://thechiefleader.com/stories/city-proposing-civilian-wage-pattern-for-ems-workers-unions-say,52883.

collective bargaining agreements.  Indeed, Plaintiffs Local 2507 and Local 3621 signed the most recent memoranda of understanding with the City, and DC 37 does not hold the bargaining certificate for Plaintiff SOA—who itself is the final decisionmaker on whether or not to sign collective bargaining agreements with the City.  Further, Union Plaintiffs fail to acknowledge that it is the members of each individual local union who ratify each of the collective bargaining agreements at issue, without which the agreements would never go into effect.  It is the Union Plaintiffs who are responsible for encouraging their members to either ratify, or not ratify, each agreement; they are indisputably involved in the process.

> b.    Plaintiffs' Non-Forensic "Search" for ESI Was Insufficient and their Proposed Self-Collection is also Insufficient.

Plaintiffs' production to date—particularly considering their admission that none of them, including the Union Plaintiffs, maintain centralized email—raises significant concerns about their search for and production of documents.

For example, twenty-four individual Plaintiffs and Union Plaintiffs Local 2507 and Local 3621 did not produce *a single union-related email* in response to the City's RFPs.  Local 2507 and the Individual Plaintiffs who are or were members of Local 2507 possess emails responsive to the City's requests, but failed to produce them.  This is not speculation.  The City knows that these emails exist and were not produced because two of the Individual Plaintiffs *did* produce email communications between Local 2507 and its members, yet Local 2507 and the other Individual Plaintiffs did not produce these (or any other) emails from the Union Plaintiffs.

As with the Union Plaintiffs' refusal to answer any questions about how they use or store electronic communications, Plaintiffs refuse to describe the search they allegedly performed that resulted in the production of only a handful of emails by two Individual Plaintiffs. A party may not simply state that they "searched their emails," while refusing to disclose the method of their search, to avoid searching by terms, custodians and time frames. *See Othon v. Wesleyan University*, 2019 WL 13291270 (D. Conn. Nov. 18, 2019) (ordering plaintiff to disclose the specific search terms, time parameters, and accounts searched by plaintiff in preparing her responses to requests for production calling for ESI).

When Plaintiffs conduct business exclusively through personal email accounts, the risks inherent in allowing self-collection are no different than those that exist when corporate parties attempt to self-collect ESI from key custodians.  Under the Federal Rules of Civil Procedure, both parties—regardless of their status as individuals or organizations—are obligated to preserve and produce responsive data in a manner that ensures completeness, integrity, and reliability. Allowing self-collection by plaintiffs using personal accounts without oversight, forensic validation, or chain-of-custody controls poses a serious risk of selective production, spoliation, or inadvertent omission.  Just as courts routinely require organizations to engage forensic professionals or use defensible tools and workflows to collect from employee email systems and devices like the City has in this action, the same standard should apply here. This is particularly true with respect to the Union Plaintiffs—which are not individuals, but organizations which conduct business on behalf of their members, including collective bargaining negotiations that pertain to the terms and conditions of employment of the EMS First Responders Class that are core to the underlying issues in this lawsuit.  Plaintiffs' use of personal accounts does not absolve

them of the duty to conduct discovery in a manner consistent with Rule 26(g) and proportional to the issues in the case; instead, it underscores the need for neutral, verifiable, and forensically sound collection methods that protect the integrity of the discovery process.

c.    Plaintiffs' Burdensomeness Objection Should Be Overruled.

Plaintiffs also have articulated no legitimate proportionality or burden objection. *See Felder v. Warner Bros. Discovery, Inc.*, No. 23 Civ. No. 08487 (AT) (GS), 2025 U.S. Dist. LEXIS 117479, at *29 (S.D.N.Y. June 20, 2025) ("As the Court noted at the Discovery Conference, WBD cannot object to searches on burden grounds without substantiating its burden claim with a hit report") (citing *In re Allergan PLC Sec. Litig.*, No. 18 Civ. 12089 (CM) (GWG), 2020 WL 4034751, at *1 (Mar. 30, 2020) ("As part of the negotiation process over search terms, the defendants must provide the plaintiff with the hit counts for searches run with proposed terms—regardless of whether the defendants believe the terms are proper."). Plaintiffs have suggested that it would take approximately 300 to 500 hours to collect and produce ESI. They have provided no support for this estimate, nor could they, as they have undertaken no efforts to ascertain where responsive data is stored much less apply a single search or generate a single hit count, and therefore cannot know how much data there is to search, collect, or review. They also have not indicated to the City whether their purported hours estimate is collective because those hours are divided between the twenty-nine plaintiffs that chose to bring this lawsuit.

The Court should compel Plaintiffs to search for responsive documents pursuant to the City's ESI Proposal.

## ***Issue 2: Plaintiffs Must Be Produced For Merits Discovery Depositions.***

The representatives of the Union Plaintiffs (who participated in collective bargaining negotiations with the City and are signatories to the underlying agreements relevant to the instant litigation), Individual Plaintiffs, and the noticed absent class members must agree to merits discovery depositions.

Plaintiffs do not contest in their Objections to Defendant's Notices of Deposition that representatives of the Union Plaintiffs (Oren Barzilay, President of Plaintiff Local 2507; Vincent Variale, President of Plaintiff Local 3621; and, Kathleen Knuth, President of Plaintiff SOA) possess relevant information. Nor could they. Rather, Plaintiffs have taken the position that these depositions should not be permitted under the apex doctrine. That position is without merit. These Union representatives are key fact witnesses in this case. They each directly participated in the collective bargaining negotiations that resulted in the EMS First Responder labor agreements that set forth the compensation and benefits terms Plaintiffs challenge as allegedly discriminatory in this litigation. Barzilay, Knuth, and Variale also signed the agreements on behalf of their respective unions. Moreover, Plaintiffs identified Oren Barzilay, Vincent Variale, Kathleen Knuth, and the Vice Presidents of Plaintiffs Local 2507 and Local 3621 in interrogatory responses concerning individuals with knowledge about the allegations in the Complaint. *See* Exhibit B at Interrogatory Response 1.

The Individual Plaintiffs refuse to appear for depositions on the ground that they were deposed for a limited amount of time during the class certification phase of discovery, and were

questioned on merits specific issues. Their position is also without merit. During class certification discovery, Plaintiffs only agreed to produce their clients "for a period of not more than two (2) hours to be examined only on issues relevant to Plaintiffs' upcoming motion for class certification" and not merits issues. *See* Exhibit C, Plaintiffs' Objections to Defendant's Notices of Deposition at 4. Indeed, Plaintiffs demanded that the City serve Amended Deposition Notices that stated the depositions were for purposes of class certification only, which the City served on June 5, 2023. *See* Exhibit D, Example of June 5, 2023 Deposition Notices stating "the City of New York[] will take the deposition of Plaintiff Lance Winfield *for class certification purposes* . . ." (emphasis added). The City accordingly limited its depositions of these witnesses to certification-related issues at Plaintiffs' insistence, and there appeared to be no dispute that Plaintiffs would appear for merits-related depositions during this phase of the discovery. For example, as quoted from the deposition of Plaintiff Richard Guzman:

> MR. HEE: I also need to reserve my right for
> a merits discovery deposition.
> MS. KURLAND: I want to confirm with that
> when you say you're reserving your rights. We're
> done with certification discovery for this
> witness, correct? Just if you could say yes or
> no
> MR. HEE: Yeah.
> MS. KURLAND: Yeah, okay. Very good. All right. Thank you for
> Your time.

The City will be greatly prejudiced if it is not permitted to depose the Individual Plaintiffs on the merits of their claims. For example, the City has not had an opportunity to question Plaintiffs regarding their theory or theories of discrimination (*e.g.*, who they believe discriminated against them, if anyone, and how such discrimination was carried out), how each Plaintiff was recruited to join the FDNY, whether or not each Plaintiff has attempted to become a firefighter, and knowledge of the alleged disparate treatment in the Complaint. Such depositions are clearly appropriate where discovery is bifurcated into class certification and merits phases. *See, e.g., Owino v. CoreCivic, Inc.*, No. 3:17-CV-1112-JLS-NLS, 2019 WL 2867278, at *3 (S.D. Cal. July 3, 2019) ("The Court does not foreclose the possibility of a second deposition in the future, which may be appropriate if the first deposition was primarily focused on class discovery and to ask follow-up questions that are not available via written discovery."). Plaintiffs' position is also contradictory to the distinction they have long drawn when it suited them between class discovery and merits discovery. Just two months ago, for example, Plaintiffs argued to the Court that, while they had previously sought discovery back to only 2016, they had done so because it was "the minimum discovery necessary for class certification" and that they were now entitled to "seek a wider scope [of discovery] during merits discovery." *See* Dkt. No. 208 at 5. The City is also entitled to obtain appropriate merits discovery.

Plaintiffs also refuse to produce a small sample of class members for depositions, arguing primarily that such depositions are not appropriate because the City has already deposed 10 individuals in this lawsuit, the presumptive limit set by FRCP 30. As this Court has repeatedly recognized, discovery from a reasonable sampling of class members is appropriate where that

discovery is "necessary and goes to class-wide issues." *Clark v. City of New York*, No. 18 Civ. 2334 (AT)(KHP) (S.D.N.Y. 2022) (granting defendant leave to take depositions of 50 class members in a 5,000-person class), *objections overruled*, 2023 WL 2429996 (Torres, J.); *see also LoCurto v. AT&T Mobility Services, LLC*, No. 13 Civ. 4303 (AT)(GWG) (S.D.N.Y. Feb. 13, 2019) (Gorenstein, J.), ECF No. 345 (permitting defendant to take 25 depositions of class members out of a class of more than 100 members). Such discovery is appropriate here, where one of the fundamental factual questions in this litigation is the similarity or lack thereof between Plaintiffs' roles and those of their alleged comparators. This comparison is a generalized one across the class population and the population of alleged comparators. It is vital that the Court permit the City to gather a reasonable sampling of the roles and responsibilities of members of this class beyond a limited, pre-selected group of named plaintiffs for the litigation. Furthermore, the City's request is exceedingly limited. The City has noticed 22 out of 6,500 class members, or roughly 0.3% of the class.

Plaintiffs' refusal to produce witnesses for depositions is particularly egregious given that they have noticed thirteen depositions – also in excess of the FRCP presumptive deposition limit – three of which were noticed *after* Plaintiffs objected to the City's noticed depositions on July 3, 2025. Plaintiffs have also noticed 20 additional Rule 30(b)(6) topics, many of which Plaintiffs know will require multiple witnesses. On July 2, Plaintiffs also served requests to inspect eight EMS Stations and Fire Houses. These requests include examination of premises and access to interview FDNY staff to ask questions about working conditions and job duties. Plaintiffs' one-sided view of discovery is prejudicial to the City and forecloses its ability to conduct appropriate and proportional discovery directly relevant to the claims and defenses in this litigation.

The Court should compel Plaintiffs to appear for the depositions noticed by the City.

### *Issue 3: Plaintiffs Must Either Supplement Their Searches For Documents Or Describe Their Searches In Response To The City's Second Set of RFPs.*

In response to the City's Second Set of RFPs, some Plaintiffs have produced, for example, pictures of certain degrees and certificates, resumes, online articles, and a handful of email blasts that were sent by a union to its general membership (other Plaintiffs produced nothing). In addition to their refusal to conduct a satisfactory ESI search discussed above, Plaintiffs' production raises significant concerns about their compliance with their obligation to perform a reasonable and diligent search for responsive documents.

As identified above in Issue 1 on pp. 3-4, the City propounded discovery requests in several categories relevant to this litigation. Union Plaintiff Local 3621 did not produce documents in response to *any* of these requests. Local 2507 produced a few documents in response to only a handful of requests (RFPs Nos. 10, 11, 13, 15, 17, 23). Plaintiff SOA produced documents in response to RFPs Nos. 1, 21, and 26 by producing not the labor union's own email communications, but rather emails from Local 2507 (which Local 2507 itself did not identify as responsive in its responses). The Individual Plaintiffs produced documents responsive to Requests Nos. 3, 10, 11, 13, 15, 16, 17, 18, 22, 26, and 27, including pictures of certificates and degrees, online articles, and a few email blasts from Local 2507, but did not produce any documents in response to requests for core issues, such as: (i) any documents and

communications between Plaintiffs and any other individual concerning their individual economic terms and conditions of employment, proposed or agreed upon by any of the Union Plaintiffs (RFP 1); (ii) any documents and communications regarding Local Law 19 of 2001 (RFP 4); or, (iii) any documents and communications concerning the similarities and differences between the experience, training, and education to be eligible for any of the EMS First Responder civil service titles and the experience, training, and education to be eligible for any of the Fire First Responder civil service titles (RFP 20).

Given the paucity of Plaintiffs' production in response to requests for documents that, at the very least, the Union Plaintiffs who represent EMS First Responders with respect to their employment with the City should possess, the City requests that the Court order Plaintiffs to supplement their searches for responsive documents or describe their search efforts for documents in response to each of the City's Second Set of RFPs.

### *Issue 4: Plaintiffs Must Produce Authorizations For Their NYCERS Records In Response To RFP No. 48 In The City's First Set Of RFPs.*

### Defendant's Position

Plaintiffs refuse to supplement their response to Request No. 48 in the City's First RFPs, which seeks authorizations to obtain the NYCERS pension records from the Individual Plaintiffs on grounds of relevance and because they claim that the records are in the City's possession. The documents sought are relevant, and Plaintiffs' refusal to produce them is without basis.

Plaintiffs placed their NYCERS records at issue by alleging that:[8]

1. Plaintiffs are discriminated against since they must "participate in the New York City Employees' retirement System ('NYCERS'), the civilian pension program, as opposed to Fire side personnel who have their own uniformed pension program." (Dkt. 16, Compl., ¶ 108);

2. Plaintiff Lizette Claro "was injured in the line of duty in November 2021 and has applied for a ¾ disability pension and retirement. However, she was told her application will not be reviewed by NYCERS until March 2023 after her retirement becomes effective on February 2, 2023. Further, since Defendant treats EMS First Responders as civilians, and not uniformed officers, they are required to participate in NYCERS, the civilian pension program and, in her experience, applications for disability pension are much less likely to be approved by NYCERS for EMS First Responders than they are for Fire First Responders by the Fire side retirement system. Firefighters injured in the line of duty will regularly receive disability pension benefits." (*Id.* at ¶ 115).

Moreover, in the context of a Title VII disparate impact claim, "'[t]o establish standing to challenge an allegedly discriminatory [] policy,' 'a plaintiff must submit to the challenged policy.'" *Do No Harm v. Pfizer Inc.*, 646 F. Supp. 3d 490, 2022 WL 17740157, at *10 (S.D.N.Y.

---

[8] This non-exhaustive list is illustrative.

Dec. 16, 2022) (quoting *Jackson-Bey v. Hanslmaier*, 115 F.3d 1091, 1096 (2d Cir. 1997)); s*ee Muldrow v. City of St. Louis,* 601 U.S. 346, 354-55 (2024) (holding that a plaintiff must show "some harm respecting an identifiable term or condition of employment" to make out a claim for discrimination under Title VII). Thus, the Individual Plaintiffs' NYCERS records are undoubtedly relevant to both Plaintiffs' claims and the City's defenses.

Plaintiffs' assertion concerning the City's access to NYCERS records is inaccurate. The City is unable to retrieve these records without Plaintiffs' authorizations. Indeed, the City has no control over NYCERS' records, as NYCERS is a separate legal entity from the City.

The Court should compel the Individual Plaintiffs to supplement their response to Request No. 48 by: (i) amending their response to state they will produce the responsive authorizations; and (ii) producing the responsive authorizations.

### *Issue 5: Plaintiffs Must Identify The Responding Plaintiff For Each Set Of Responses To The City's Second Sets Of Interrogatories And RFPs.*

Each of the Individual Plaintiffs and each of the Union Plaintiffs failed to identify which Plaintiff was responding to the City's Second Set of Interrogatories (in the case of the Union Plaintiffs) and Second Set of RFPs (as to all Plaintiffs). Each response served by the Plaintiffs bears the same caption—"Plaintiffs' Response to Defendant's Second Set of Interrogatories," and "Plaintiff's Objection to Defendants' Second Request for Production of Documents" or "Plaintiffs Objection to Defendants' Request for Production of Documents." Moreover, each document begins identically—"Plaintiffs respond and object to Defendant's Second Request for Documents as follows"[9] or "Plaintiff responds and objects to Defendant's Second Request for Documents as follows." Aside from the label of the .pdf (*e.g.*, "Plaintiff 3621 RO to Defendant's 2nd FRP"), which itself is not visible once the .pdf is opened or printed and is, in any event, insufficient, there is not a single identifier in any Plaintiff's respective written discovery responses. Plaintiffs have refused to remedy this deficiency, claiming that the labeling of an unopened PDF is sufficient. It is not. Without this identifying information in the document, Plaintiffs' responses are unusable at deposition or trial and unnecessarily confusing, as no witness can identify who is responding to the discovery requests at issue.

The Court should compel all Union Plaintiffs to supplement their responses to the City's Second Set of Interrogatories by appropriately identifying the responding entity, and all Plaintiffs to supplement their responses to the City's Second Set of RFPs by appropriately identifying the responding party.

    //s//

Rachel S. Philion
Proskauer Rose LLP
Attorneys for Defendant

---

[9] The Union Plaintiffs used this same introductory sentence in their responses to the City's Second Set of Interrogatories.