UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
                    Case No. 22-cv-10336 (AT) (GWG)
                    [Rel. 20-cv-3389]

LOCAL 2507, UNIFORMED EMTs, PARAMEDICS &      :
FIRE INSPECTORS, Individually and on          :
behalf of its current and former members;     :
LOCAL 3621, EMS OFFICERS UNION,               :
Individually and on behalf of its current    :
and former members; NYC EMS SUPERIOR          :
OFFICERS ASSOCIATION, Individually and on     :
behalf of its current and former members;     :
TONYA BOYD, CHRISTELL CADET, MARK             :
CARRASQUILLO, LIZETTE CLARO, BEVERLY          :
COBB, ALI COUTARD, SENCIA DATILUS,            :
LAITRICE EDWARDS, ALICIA ELKADI, RONALD       :
FLOYD, KAHLIA GRAHAM, RICHARD GUZMAN,         :
MAGGIE HOPE, JASMIN HOWARD, ANGELA JONES,     :
RAVIVARMAN KAILAYANATHAN, MELANIE MORENO-     :
KETCHUM, JENELLE PIERRE, SIMONE QUASHIE,      :
JASON SAFFON, ALLISON SHAUGHNESSY,            :
LAURA TORRES, ANDRE VALDEZ, LANCE             :
WINFIELD, RONALD WOLFE, MARYLOU
AURRICHIO on behalf of themselves and all
other similarly-situated individuals,
            Plaintiffs,
             vs.
CITY OF NEW YORK ON BEHALF OF THE FIRE
DEPARTMENT OF THE CITY OF NEW YORK,
            Defendants.


            ---------------------------------------
            DEPOSITION UNDER ORAL EXAMINATION OF:
                    RENEE CAMPION
                    May 23, 2023
                    -----------
    REPORTED BY:  JENNIFER L. WIELAGE, CCR, RPR, CRR
                    ------------




JOB #  007274

1              TRANSCRIPT of the remote deposition of the

2      above-named witness, called for Oral Examination in

3      the above-entitled matter, said deposition being

4      taken pursuant to Federal Court Rules, by and before

5      JENNIFER WIELAGE, Certified Shorthand Reporter and

6      Notary Public of the State of New York, License No.

7      XI01916, on Tuesday, May 23, 2023, commencing at

8      10:00 in the forenoon.

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Page 90

1    the law department, to assess whatever the claim is

2    and then figure out a path.

3              Q.      Okay.  And I just want to make sure

4    we're saying -- you're understanding what I'm saying

5    because I'm not saying that there's a claim for

6    improper pay.  I'm saying if there's a concern by the

7    FDNY.  So I understand if someone brings, let's say,

8    a lawsuit or they bring an allegation that the pay is

9    improper -- I'm not talking about allegations by

10   outside parties.  I'm saying if the agency itself

11   determines that there is an issue or a concern with

12   regards to improper pay practice, whether that's

13   violation of a law or otherwise, I hear you saying

14   that they don't have an obligation to do anything.

15   Who, if anyone, does have an obligation?  And if your

16   answer is OLR, OMB with City Hall with corporate

17   counsel to figure out a path, that's fine but I just

18   want to make sure we're clear -- clarifying, I'm not

19   saying an allegation from an outside party of

20   wrongdoing.  I'm saying if the agency finds that it

21   was paying a title in violation of the law, what, if

22   any, steps, is it required to take?

23              MS. MINICUCCI:  Objection; outside

24   the scope.  You can answer if you can.

25              A.      It's not up to the agency to

Page 91

1   determine the rate of pay.

2          Q.      So they have no obligation if they

3   find -- if they discover that there's an issue in

4   terms of payment, correct?

5               MS. MINICUCCI:  Objection.  You can

6   answer.

7          A.      It's not for them to determine their

8   rate of pay.

9   BY MS. KURLAND:

10         Q.      I'm so sorry.  I'm just trying to

11  make a clear record.  And I appreciate the testimony

12  you're giving me but I want you to answer the

13  question that I'm asking.  I understand you're saying

14  it's not for them to determine the rate of pay.  I'm

15  asking do they have an obligation to bring to

16  anyone's attention a concern, if they have one, with

17  regards to the pay process and the -- and the pay

18  practices of that agency if they believe it might be

19  in violation of a law or might be -- have some other

20  concern?

21              MS. MINICUCCI:  Objection.  Outside

22  the scope.  You can answer again.

23         A.      If an agency thinks they're not

24  paying someone correctly, they can bring it to

25  whatever oversight agencies are required in order to

Page 92

1    assess the question.

2    BY MS. KURLAND:

3         Q.    Okay.  They can.  Are they required

4    to?

5              MS. MINICUCCI:  Objection; outside

6    the scope.  You can answer.

7         A.    I have no idea.

8         Q.    And when you say the outside

9    oversight agencies, what are those outside oversight

10   agencies?

11             MS. MINICUCCI:  Objection; outside

12   the scope.  You can answer.

13        A.    OLR, OMB, law department, OPA FISA.

14        Q.    Anyone else?

15        A.    Ultimately City Hall.

16        Q.    And when you say City Hall, are you

17   talking about the mayor?

18             MS. MINICUCCI:  Objection.  You can

19   answer.

20        A.    I'm talking about staff that worked

21   for the mayor.

22        Q.    The mayor's office, let's say,

23   correct?

24             MS. MINICUCCI:  Objection.  You can

25   answer.

Page 93

```
 1          A.       Staff that worked for the mayor.
 2          Q.       Okay.  Any staff in particular?
 3                   MS. MINICUCCI:  Objection.  You can
 4     answer.
 5          A.       The mayor's counsel.
 6          Q.       Anyone else?
 7          A.       The mayor's counsel's office.
 8          Q.       Okay.  Anyone else?
 9          A.       No.
10          Q.       So is it your testimony that OLR,
11     OMB, OPA/FISA and corporation counsel have oversight
12     over the FDNY?
13                   MS. MINICUCCI:  Objection.  You can
14     answer.
15          A.       In regard to what?
16          Q.       Well, you had testified that if they
17     wanted to, an agency like the FDNY could bring to the
18     attention of those -- of those agencies concerns with
19     regards to pay practices?
20          A.       Yes.
21          Q.       I'm asking -- go ahead.
22          A.       No, what's the question?
23          Q.       Do those agencies have oversight over
24     the FDNY?
25                   MS. MINICUCCI:  Objection.  This is
```

Page 94

1    outside the scope.  You can answer.

2         A.        They have oversight in regard to

3    their specific areas.

4         Q.        Over the FDNY?

5         A.        In regards to their core functions of

6    what they do.

7         Q.        Okay.  But do they have oversight

8    over this issue of the FDNY's concerns with regards

9    to -- or the hypothetical concern with regards to

10   violating the law with regard to pay practices?

11             MS. MINICUCCI:  Objection; this is

12   outside the scope.  You can answer.

13        A.        I don't know if I would call it

14   oversight.  I don't believe -- I don't know that it's

15   oversight.  It's relevant agencies that would go to

16   discussing the issue.

17   BY MS. KURLAND:

18        Q.        Okay.  Other than -- and then what

19   would OLR's role be if an agency came to you and

20   said, "Hey, I think that we are paying employees

21   below the weekly allowable rate," what, if any,

22   remedies could OLR take to address that, if they

23   could?

24             MS. MINICUCCI:  Objection.  This is

25   outside the scope.  You could answer.

Page 95

1          A.      Can you repeat the question?

2     BY MS. KURLAND:

3          Q.      Let me rephrase it.  If an agency

4     came to you and said, "Hey, I'm concerned that we are

5     paying some of our employees below what we are

6     legally obligated to pay," what, if any, steps would

7     OLR take with regards to that?

8                  MS. MINICUCCI:  Objection.  This is

9     outside the scope.  You could answer.

10         A.      We would ask them what the basis of

11    their understanding is.

12    BY MS. KURLAND:

13         Q.      Okay.  Is OLR involved in resolving

14    issues with pay disparity claims for the titles in

15    the City's workforce?

16                 MS. MINICUCCI:  Objection.  This is

17    outside the scope.  You can answer.

18         A.      Oftentimes, yes.

19         Q.      Can you explain, for example, what --

20    how that would work?

21                 MS. MINICUCCI:  Objection.  This is

22    outside the scope.  You can answer.

23                 MS. KURLAND:  Let me withdraw that

24    and rephrase it.

25    BY MS. KURLAND:

Page 96

1          Q.          If there's a concern that there is a
2     discriminatory pay practice and that that pay
3     practice needs to be resolved, does OLR have the
4     authority to address and resolve those concerns?
5                    MS. MINICUCCI:  Objection.  This is
6     outside the scope.  You can answer.
7          A.          Not OLR, no.
8          Q.          What agency does?
9                    MS. MINICUCCI:  Objection.  This is
10    outside the scope.  You can answer.
11         A.          The law department.
12         Q.          Okay.  Other than the law department,
13    anyone else?
14         A.          No.
15         Q.          Any other agency?
16         A.          No.
17         Q.          Is it the FDNY's responsibility to
18    ensure that it's not discriminating in its employment
19    practices?
20                   MS. MINICUCCI:  Objection.  You can
21    answer.
22         A.          What's the question again?
23         Q.          Is it the FDNY's responsibility to
24    ensure that it is not discriminating in its
25    employment practices?

1           MS. MINICUCCI:  Objection; outside

2     the scope.  You can answer.

3           A.      Can you repeat it one more time?

4           Q.      Yes.  Is it the FDNY's responsibility

5     to ensure that it's not discriminating in its

6     employment practices?

7           MS. MINICUCCI:  Objection; you can

8     answer.  This is outside the scope.

9           A.      Yes.

10          Q.      And just going back to -- you had

11    said that the agency that could address issues with

12    pay disparity -- types of discriminatory pay

13    practices is corporation counsel, do you know how

14    corporation counsel would resolve those concerns?

15    Are you talking about litigation or something else?

16          MS. MINICUCCI:  Objection.  This is

17    outside the scope.  You can answer.

18          A.      They would do their own

19    investigation.

20          Q.      Okay.  So corporation counsel is

21    tasked with investigating claims of discriminatory

22    pay practices for the City of New York?

23          MS. MINICUCCI:  Objection; this is

24    outside the scope.  You can answer.

25          A.      I believe so, yes.

Page 98

1          Q.        Do you know if there's a specific

2     office or unit that does that within corporation

3     counsel?

4                    MS. MINICUCCI:  Objection; this is

5     outside the scope.  You can answer.

6          A.        I don't know.

7          Q.        Do -- are fire first responders

8     uniform?

9          A.        What does fire first responders mean

10    again?

11         Q.        It's the firefighters and their line

12    of promotions, so the officers on the fire side, the

13    battalion chiefs, deputy chiefs, so on, lieutenants?

14         A.        What was the question?

15         Q.        Are they uniform?

16         A.        Yes.

17         Q.        And are EMS first responders uniform?

18         A.        I don't know -- your question is

19    vague.  I don't know what you're referring to.

20         Q.        Well, you were able to answer it when

21    I asked you about fire first responders, so what is

22    vague about the question?

23         A.        I don't know in terms -- in what

24    terms you mean uniform.

25         Q.        In what terms did you mean "uniform,"